GREGORY J. CHARLES, ESQ. #208583
Law Offices of Gregory Charles
2131 The Alameda, Suite C-2
San Jose, CA 95126
P: 408.493.0363
F: 408.852.0233
greg@gregcharleslaw.com
Counsel for Patriot Scientific Corp.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>TECHNOLOGY PROPERTIES LIMITED, LLC<br><br>DEBTORS. | Case No. 13-51589 SLJ<br><br>Chapter 11<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S MOTIONS TO LIFT THE AUTOMATIC STAY AND ALLOW SETTLEMENT OF MATTERS PURSUANT TO RULE 9019(B)<br><br>DATE: APRIL 24, 2013<br>TIME: 2.00 P.M.<br>COURTROOM: 3099 |

## I. INTRODUCTION AND SUMMARY OF THE MOTIONS.

Patriot Scientific Corp. ("Patriot") is a publicly traded company (OTC: PTSC) with 16,000 shareholders and a member of the Unsecured Creditor's Committee. It supports the motions before the court and submits this Memorandum of Points and Authorities explaining the debtor's interest in a valuable patent licensing program and the need for the relief sought by Technology Properties Limited, LLC ("TPL").

Patriot and the TPL are co-owners of a valuable portfolio of multiple patents encompassing complicated aspects of microprocessor design. Known as the MMP™ Portfolio, it is the result of the work of two inventors, Russell Fish ("Fish") and Charles Moore ("Moore").

A patent is the exclusive right granted by the government to an inventor to

manufacture, use, or sell an invention for a certain number of years. An owner can monetize a patent by allowing use of the invention by others for a fee. The right is known as a license. Those who use or sell a patented invention without a license infringe the owner's rights. In those circumstances, a patent owner may seek injunctive relief and damages

Since 2005, over 100 companies have taken licenses to the MMP portfolio generating fees in excess of $300,000,000. Over a four and one-half year period concluding in 2011, the MMP Portfolio successfully withstood 17 reexaminations by the United States Patent and Trademark Office.

While the license fees are substantial, the program is a complicated endeavor. Value is based upon the nature of the technology and the program's enforcement activities. Here, the MMP Program must identify infringing microprocessor technology and demand licensing fees. If an infringer refuses, the program must enforce its rights through litigation. Since 2008, the MMP portfolio has been the subject of protracted infringement litigation in the Northern District of California to which both TPL and Patriot are parties. Additionally, on July 24, 2012 TPL and Patriot filed complaints with the International Trade Commission ("ITC") alleging infringement of the MMP portfolio against 13 respondents, with concurrent infringement actions in the Northern District of California.

In this case, the debtor's reorganization is contingent upon continued success of the program. In fact, the MMP Program is the debtor's predominate source of present revenue. There are two closely related matters before the court. First, the committee opposes lifting the stay. Second, the committee seeks oversight of the MMP Program.

As to the first matter, TPL seeks relief from the automatic stay in patent litigation regarding the MMP Portfolio. Obviously, the automatic stay does not apply to TPL's offensive claims, so the motion should be granted.

Patent litigation is often resolved through a license, and TPL seeks authority pursuant to Rule 9019(b) to settle disputes with infringers. While litigating

infringement and licensing fall within the debtor's ordinary course of business, the committee opposes the motion.

Further, the MMP Program involves non-bankrupt entities, but the committee seeks oversight of their business decisions. In this regard, the committee's objection to the motions is completely inappropriate. While creditors may have concerns regarding the operation of TPL, the instant motions actually address operation of the MMP Program.

## II. THE RELIEF REQUESTED IN THE MOTIONS IS ESSENTIAL TO THE DEBTOR'S OPERATIONS.

### A. THE MMP PROGRAM INVOLVES FOUR COMPANIES AND AN INDIVIDUAL.

As noted, the debtor's predominate source of revenue is the MMP Program. The program members include:

**TPL** shares a 50% interest in the MMP portfolio with co-inventor Moore.

**Moore** is a co-inventor, creditor and shares a 50% interest in the MMP portfolio with TPL.

**Patriot** owns 50% of the MMP portfolio. It acquired its interest from Fish.

**Phoenix Digital Solutions, LLC** ("PDS") is a joint venture formed in June 2005 between TPL and Patriot. The joint venture coordinates licensing and the administration of the MMP Portfolio and infringement litigation.

**Alliacense, LLC** – ("Alliacense") currently provides support in litigation matters and commercialization of the MMP portfolio.

### B. B. HISTORY OF THE PROGRAM

In the early 1990s, Fish and Moore departed company, each having an undivided interest in the patents. Patriot acquired Fish's interest in the early 90s. During that time, Moore and TPL entered into a commercialization agreement. Both Patriot and Moore/TPL could license the MMP portfolio to third parties. Since each could write licenses, the parties were essentially competitors, so an MMP License

commanded less value.

In 2005, Patriot and TPL resolved a lawsuit and formed PDS to manage the MMP Program. In the PDS joint venture Moore and TPL share Moore's original 50% interest, Patriot the other 50%. Originally, TPL managed the licensing program and litigation. Under PDS' distribution formula, TPL and Patriot would receive distributions of net (after expenses) license fees from PDS (which collected all patent license fees from third party licensees). TPL was responsible for paying Moore from its share of the joint venture distributions.

The MMP Program proved very successful, but TPL experienced financial difficulties. While Patriot is unaware of the specifics, TPL apparently acquired other portfolios and expanded its staff to monetize these assets. The effort did not produce income. During this time, TPL shifted most, if not all of its responsibilities regarding the MMP Program to Alliacense. Apparently, it operated as a subcontractor.

Given TPL's financial difficulties, PDS allowed advances to TPL against future licensing revenue. As a result Patriot became more involved in the licensing program. Further, it insisted that TPL resolve a dispute with Moore that questioned TPL's ability to write licenses.

In 2011, the remainder of 17 patent reexaminations concluded, but TPL experienced other problems including litigation with another party named Chet Brown who claimed a 3.5% share of MMP licensing revenue. The MMP program also incurred substantial attorney's fees in its patent litigation. The Townsend and Farella law firms are creditors.

In July 2012, negotiations between Patriot, TPL, and Alliacense led to new agreements involving commercialization of the MMP Program. Under the July agreements several changes took Place:

- TPL relinquished control over MMP licensing but retained responsibility for MMP litigation.
- The Agility law firm assumed responsibility for the patent litigation on a

hybrid (now full) contingency basis.

Alliacense would lead the licensing efforts and provide litigation support to Agility

Pursuant to the July agreements, Alliacense receives a 20% patent licensing fee and has specified litigation support obligations.[1]

Further, Agility initiated 13 ITC enforcement actions on July 24, 2012. This effort is aimed at enhancing licensing efforts placing infringers on notice that the MMP Program is aggressively enforcing the portfolio's rights. Trial is set to begin on June 3, 2013.

For the last nine months, Agility has also vigorously litigated the patent infringement cases in the Northern District of California with Acer and HTC. These protracted actions were initiated in 2008 with a long awaited trial set to begin on September 23, 2013. This action is the subject matter of the stay motion.

### C. THE MMP PROGRAM IS GENERATING SIGNIFICANT REVENUE

Since the petition date, PDS has received two license payments totaling $5,340,000.00 and is willing to provide its allocation of revenue and expenses to the committee with an appropriate confidentiality agreement.

### D. RELIEF FROM THE AUTOMATIC STAY AND RULE 9019(B) AUTHORIZATION IS APPROPRIATE.

As noted, the automatic stay does not apply to the debtor's offensive claims, and as a debtor in possession, TPL is allowed to prosecute litigation, as it deems appropriate. Relief is only necessary as it relates to counterclaims. If the counterclaims

---

[1] The agreement contains sensitive financial information regarding licensing efforts. Patriot offered to provide the document to the committee subject to a protective order. Counsel for the committee indicated that he was negotiating a confidentiality agreement with the debtor and would obtain the information from that source.

had any merit, then HTC and Acer would have sought relief to prosecute their claims.

As noted, Patriot owns the largest portion of the MMP portfolio, but it cannot settle disputes without the participation of the co-owners. Thus, TPL seeks authority to settle the pending litigation and ITC claims pursuant to Rule 9019(b).

Under Rule 9019(a), approval of a settlement turns on the question of whether the compromise is in the best interest of the estate. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986). The trustee and debtor in possession, as fiduciaries of the estate, have the obligation and are in the best position to negotiate settlements that will best serve the interests of all the creditors. *In re Guy F. Atkinson Company of California*, 242 B.R. 497 (9th Cir. BAP 1999).

The present matter, however, provides additional safeguards ensuring that any settlement serves the best interest of the estate. As noted, Patriot is a publicly traded company and owns the largest single portion of the MMP Portfolio. Patriot's three Board members have overseen the program for nine years. While patent disputes present difficult issues, the Patriot Board has continuously formulated litigation strategy and evaluated the contentions of adverse parties. This expertise fosters a close working relationship with the program's counsel.

Nearly a decade of experience allows evaluation of market conditions, enables effective settlement negotiations, and produces significant licensing fees. Finally, funds are distributed on a proportionate basis by PDS. Since there are no "preferred owners," as in classes of stock, each MMP owner enjoys the benefit of each dollar collected.

While creditors may be wary, their concerns relate to the operation of TPL. As it stands now, however, the creditors' only chance of payment relates to the success of the MMP program. Since all funds are collected by PDS, MMP funds will be distributed according to the agreements between the parties.

Further, Patriot owns the largest portion of the portfolio, and any settlement must involve TPL and Patriot. Since Patriot is obliged to maximize shareholder return, any settlement will be in the best interest of the estate. While a creditor may claim

that TPL and Patriot could have negotiated a better deal, the parties to the litigation are best able to evaluate the merits of the claims. Given the eminent trial dates in multiple proceedings, 11th hour negotiations and settlement opportunities will arise. Rule 9019(b) authority will allow prompt resolution of critical litigation on a favorable basis. Again, a case cannot be settled and a license cannot be written without approval of the Patriot Board. In fact, Carl Johnson, Patriot's representative on the PDS Management committee, signs every license.

Finally, the MMP program in many respects is based upon momentum. Successful outcomes of the 17 reexaminations and pending litigation have substantially increased the program's revenue prospects. Simply stated, an infringer is more likely to purchase a license if it sees other infringers defeated in litigation. Conversely, an impression that TPL's bankruptcy is hindering enforcement activities hurts licensing efforts. Thus, the pending motions simply reflect an effort to maintain the goodwill of the MMP Portfolio.

### III. CONCLUSION

For the foregoing reasons the motions should be granted.

Dated: April 18, 2013                    Law Offices of Gregory Charles


By: s/ Gregory Charles
Gregory Charles
Attorneys for the Patriot Scientific Corp.