JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone:  (650) 857-1717
Facsimile:  (650) 857-1288
Email:  murray.john@dorsey.com
Email:  franklin.robert@dorsey.com
Email:  hwang.thomas@dorsey.com

Attorneys for Official
Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**TECHNOLOGY PROPERTIES LIMITED LLC,<br>fka TECHNOLOGY PROPERTIES LIMITED<br>INC., A CALIFORNIA CORPORATION,<br>fka TECHNOLOGY PROPERTIES LIMITED,<br>A CALIFORNIA CORPORATION,**<br><br>Debtor. | Case No.  13-51589-SLJ-11<br><br>Chapter  11<br><br>Date:    February 26, 2014<br>Time:    2:00 p.m.<br>Place:   United States Bankruptcy Court<br>           280 S. First Street, Room 3099<br>           San Jose, CA  95113<br>Judge:   Honorable Stephen L. Johnson |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN OF REORGANIZATION
### (DATED FEBRUARY 14, 2014)

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | DEFINITIONS | 2 |
| II. | DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS | 15 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 17 |
| IV. | TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN | 18 |
| V. | TREATMENT OF CLASSES OF CLAIMS AND INTERESTS THAT ARE IMPAIRED UNDER THE PLAN | 19 |
| VI. | IMPAIRMENT OF CLASSES; VOTING OF CLAIMS | 24 |
| VII. | MEANS FOR EXECUTION OF THE PLAN | 25 |
| VIII. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 38 |
| IX. | PROOFS OF CLAIM; OBJECTIONS | 41 |
| X. | RETAINED CLAIMS | 43 |
| XI. | REQUEST FOR CONFIRMATION | 45 |
| XII. | RETENTION OF JURISDICTION | 46 |
| XIII. | EFFECT OF CONFIRMATION | 48 |
| XIV. | MISCELLANEOUS | 50 |
| XV. | DEFAULT PROVISIONS | 54 |
| XVI. | OVERRIDING PROTECTIONS FOR LICENSEE PARTIES | 55 |

# PRELIMINARY STATEMENT

The Official Committee of Unsecured Creditors (the "Committee") proposes this plan of reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

On March 20, 2013, Technology Properties Limited LLC (the "Debtor" or "TPL") filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code. Chapter 11 sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan of reorganization presented to Creditors and Interest Holders for consideration and approval. Confirmation (i.e., Bankruptcy Court approval) of the Plan is the culmination of that process.

This Plan sets forth the Committee's proposal for the restructuring of the Debtor's finances and for the satisfaction, discharge and/or cancellation of all Claims against the Debtor. Pursuant to the Plan, new management will be appointed to operate the Debtor's business, and TPL will pay its creditors the net proceeds of operations quarterly for a period of five years (subject to an extension of six months upon Steering Committee approval, and subject to further extension upon Bankruptcy Court approval, as provided in the Plan).

With the Plan, Creditors and Interest Holders will receive the DISCLOSURE STATEMENT FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN OF REORGANIZATION (DATED FEBRUARY 14, 2014) (the "Disclosure Statement"). With the Plan and Disclosure Statement, Creditors will receive a Ballot for voting on the Plan. Class 1 and Class 2 are not Impaired under the Plan and are therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to Class 1 and Class 2 are not being solicited and no Ballots need be returned by creditors in such Classes. Acceptances of the Plan are therefore being solicited only from Classes 3, 4, 5, 6, 7 and 8. Consequently, only holders of Claims in Classes 3, 4, 5, 6 and 7 and the holder of Interests in Class 8 need return their Ballots.

The Disclosure Statement includes a summary of the Debtor's history, a summary of significant events during the Chapter 11 case, a description of what Creditors and Interest Holders will receive under the Plan and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and the Disclosure Statement before deciding whether you will accept or reject the Plan. In the event and to the extent that any

provision of the Plan is inconsistent with or contrary to the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

**CREDITORS WISHING TO VOTE ON THE PLAN MUST COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN _____, 2014 TO:**

**Dorsey & Whitney LLP**
**Attn: Thomas T. Hwang**
**305 Lytton Avenue**
**Palo Alto, California 94301**
**Email:  thwang@murraylaw.com**

**IF YOUR BALLOT IS NOT RETURNED BY _____, 2014, IT MAY NOT BE CONSIDERED.  BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED.  BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.**

If any class of Claims does not accept the Plan, the Committee may elect to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.  Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the Plan by the holders of Claims and Interests.  If required, the Plan may be modified at or prior to the hearing on Confirmation to permit Bankruptcy Court approval under Section 1129(b).  If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Case dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code, or other parties in interest may propose a different plan.

## I.     <u>DEFINITIONS</u>

As used in the Plan, the following terms shall have the respective meanings specified below:

**"Administrative Claim"** means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including the Effective Date, (b) any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the

Bankruptcy Code, (c) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (d) compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

**"Administrative Claims Bar Date"** means that date which is thirty (30) days following the Effective Date.

**"Administrative Claims Objection Deadline"** means, for Administrative Claims other than Professional Fee Claims, thirty (30) days after the Administrative Claims Bar Date or such later date as may be established by the Bankruptcy Court.

**"Administrative Convenience Claims"** means Timely Filed Unsecured Claims of $5,000.00 or less whose holders elect on their Ballot to accept treatment pursuant to Class 5 under the Plan, and Timely Filed Unsecured Claims of greater than $5,000.00 whose holders elect on their Ballot to accept treatment pursuant to Class 5 under the Plan and agree to reduce their respective Allowed Claims to $5,000.00.

**"Alliacense"** means Alliacense Limited, LLC.

**"Alliacense Services Agreement"** means that certain Services Agreement as amended March 19, 2012, between TPL and Alliacense.

**"Allowed"** or **"Allowed Amount"** means the amount in which any Claim or Interest is allowed.

**"Allowed Administrative Claim"** means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or as to which there has been no objection within the time period established by the Plan or by an order of the Bankruptcy Court.

**"Allowed Claim"** means a Claim: (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed by the Claims Objection Deadline; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed by the Claims Objection Deadline; (c) which is Allowed by a Final Order; (d) settled, compromised or otherwise resolved by the Reorganized Company pursuant to its power granted under the Plan; or (e)

which is deemed Allowed by the Plan. Other than those Claims expressly Allowed by the Plan, no Claim shall be considered an Allowed Claim if: (x) an objection to the allowance thereof is interposed by a party in interest by the Claims Objection Deadline, and such objection has not been overruled by a Final Order; or (y) the Claim has been satisfied.

**"Allowed Interest"** means the Allowed Interest of an Interest Holder.

**"Allowed Unsecured Claim"** means any Allowed Claim that is an Unsecured Claim.

**"Avoidance Actions"** means causes of action under Chapter 5 of the Bankruptcy Code.

**"Ballot"** means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

**"Bankruptcy Case"** means the bankruptcy case styled *In re Technology Properties, Limited, LLC*, Chapter 11 Case No. 13-51589-SLJ, pending in the Bankruptcy Court.

**"Bankruptcy Code"** means title 11 of the United States Code and also includes Sections 157, 158, 1334, 1408, 1412, and 1452 of title 28 of the United States Code, and any amendments thereto to the extent applicable to this Bankruptcy Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of California, San Jose Division, or such other court exercising jurisdiction over the Bankruptcy Case.

**"Bankruptcy Estate"** or **"Estate"** means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in Section 541 of the Bankruptcy Code.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

**"Benefit Plans"** means all benefit plans of whatever type or nature provided by the Debtor as of the date of this Plan including all 401(k) plans, medical insurance plans, accidental death and dismemberment plans and disability plans and any rights of employees to extended coverage arising from any benefit plan whether under the terms of the benefit plans, under COBRA, or under applicable law. For the avoidance of doubt, Benefit Plans do not include any Insider Employee Compensation Contracts or any provisions thereunder for incentive compensation or otherwise.

**"Browns Claim"** means Proof of Claim Number 22-1 filed by Chester A. Brown, Jr. and Marcie Brown in the Bankruptcy Case, in connection with the Browns Judgment in the amount of

$10,021,511 plus post-judgment interest.

**"Browns Judgment"** means the Judgment dated June 5, 2013, entered in favor of Chester A. Brown, Jr. and Marcie Brown against TPL by the Santa Clara County Superior Court in the action entitled: *Brown v. TPL*, Case No. 1-09-CV -159452.

**"Browns/TPL Appeal"** means the appeal of the Judgment filed by TPL and currently pending in the in the Court Of Appeal Of The State Of California, Sixth Appellate District.

**"Business Day"** means a day, Monday through Friday, excluding all legal holidays (as defined in Bankruptcy Rule 9006(a)(6).

**"Cash"** means cash and cash equivalents, including but not limited to checks and similar forms of payment or exchange.

**"CCC"** means Cupertino City Center Buildings, a California Limited Partnership.

**"CCC Claim"** means proof of Claim number 7 filed by CCC, asserting a Secured Claim in the amount of $711,200.

**"Claim,"** as used herein, is defined in Section 101(5) of the Bankruptcy Code.

**"Claims Bar Date"** means: (a) with respect to Claims other than those held by governmental units, July 23, 2013; (b) with respect to Claims held by governmental units, September 16, 2013; and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

**"Claims Objection Deadline"** means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Deadline may be extended by the Bankruptcy Court for cause upon a noticed motion of the Reorganized Company or the Committee to all Notice Parties on not less than ten (10) days' written notice.

**"Claims Trust Account"** means the segregated interest-bearing bank account maintained for the purpose of holding the deposits of the Quarterly Payment, maintained for paying Distributions to Creditors holding Allowed Claims pursuant to the Plan.

**"Class"** means a category or group of holders of Claims or Interests as designated pursuant to the Plan.

**"Committee"** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on March 28, 2013 consisting of Chester A. Brown, Jr. and Marcie

Brown, Patriot Scientific Corp., Beresford & Co., the Former Chipscale Shareholders, Farella Braun & Martel, LLP, the Estate of James Kirkendall and Dr. Zlatan Ribic GmbH.

"**Committee Claims**" means the proofs of Claims filed by members of the Committee in the Bankruptcy Case and include the following: (A) proof of Claim number 19 filed by Beresford & Co.; (B) proof of Claim number 20 filed by the Estate of James V. Kirkendall; (C) proof of Claim number 21 filed by Dr. Ribic GmbH; (D) proof of Claim number 22 filed by Chester A. Brown, Jr. and Marcie Brown; (E) proof of Claim number 23 filed by Phil Marcoux, individually and as Seller's Rep. for Certain Former ChipScale, Inc. Shareholders; (F) proof of Claim number 28 filed by Farella Braun & Martel LLP; and (G) proofs of Claim numbers 33 and 34 filed by Patriot Scientific Corporation.

"**Committee's Professionals**" means, collectively, Dorsey & Whitney LLP and such other professionals whose employment by the Committee prior to the Confirmation Date is approved by order of the Bankruptcy Court, if any.

"**Confirmation**" means the entry by the Bankruptcy Court of the Confirmation Order.

"**Confirmation Date**" means the date on which the Bankruptcy Court enters the Order of Confirmation.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"**Confirmation Order**" means the Order confirming the Plan under Section 1129 of the Bankruptcy Code.

"**Creditor Trust**" means the trust to be established for the purpose of holding the Interests of the Interest Holder and for holding the Unsecured Claimants' Security Interest for the benefit of holders of Allowed Unsecured Claims, pursuant to the terms of the Plan.

"**Creditor Trust Trustee**" means the Entity appointed pursuant to the Plan to among other things, act as manager and administrator of the Creditor Trust, hold the Unsecured Creditors' Security Interest, prosecute objections to the Committee Claims and act as the Disbursing Agent.

"**Debtor**" means Technology Properties Limited LLC, a California Limited Liability Company.

**"Debtor's Professionals"** means, collectively, Binder &Malter, LLP, Agility IP Law, LLP, the Simon Law Firm, P.S., Bragalone Conroy, PC, Farnan LLP, Ropers Majeski Kohn & Bentley, Adelson, Hess & Kelly APS, Fulop Business Tax Services, Henneman & Associates, and such other professionals whose employment by the Debtor prior to the Confirmation Date is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Reorganized Company to represent or assist it in fulfilling its duties and obligations as the Reorganized Company under the Plan, including such accountant(s) as the Reorganized Company may select to complete the Debtor's tax returns and other required filings with governmental authorities having jurisdiction over the Reorganized Company, and such legal professionals as may be appropriate to assist in administering the Plan, the Bankruptcy Case and the Bankruptcy Estate.

**"Disbursing Agent"** means the Creditor Trust Trustee and any successor appointed pursuant to the Plan.

**"Disclosure Statement"** means the DISCLOSURE STATEMENT FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN OF REORGANIZATION (DATED DECEMBER 17, 2013), including any modification(s) thereof and/or amendment(s) thereto.

**"Disputed Claim"** means a Claim against the Debtor: (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent, unliquidated or unknown as to amount; or (b) as to which an objection or adversary proceeding has been filed by the Claims Objection Deadline and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

"**Disputed Claims Reserve Account**" means a segregated interest-bearing bank account maintained for the purpose of holding Cash attributable to Disputed Claims, including the Leckrone Claim Set Aside and the Insider Employee Compensation Set Aside, and administered by the Reorganized Company consistent with the provisions of Section 345 of the Bankruptcy Code.

**"Distribution"** means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash to Creditors pursuant to the Plan.

**"Distribution Date"** means any date on which a Distribution shall be made pursuant to the

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 9 of 60

Plan.

"**Effective Date**" means the later of (a) the first Business Day that is at least 30 days after the entry of the Confirmation Order and on which no stay of the Confirmation Order is in effect, including a stay pending appeal, or (b) the first Business Day on which the Reorganized Company has sufficient cash to make all payments required under the Plan on the Effective Date; provided, however, that the Effective Date shall be no later than February 1, 2014.

"**Entity**" has the meaning ascribed to it under Section 101(15) of the Bankruptcy Code.

"**Excluded Contract**" means an executory contract or unexpired lease that is neither designated for assumption nor for rejection under the Plan as of the conclusion of the Confirmation Hearing. For the avoidance of doubt, the Licensee Protected Contracts are not Excluded Contracts but rather ride through unimpaired, in accordance with Article XVI.

"**Final Decree**" means the final decree by the Bankruptcy Court closing the Bankruptcy Case pursuant to Bankruptcy Code Section 350 and Bankruptcy Rule 3022.

"**Final Order**" means an order entered on the docket by the Bankruptcy Court or other court of competent jurisdiction over the Bankruptcy Case, as applicable, which is no longer subject to appeal, certiorari or other proceedings for review or rehearing, and as to which no appeal, certiorari or other proceedings for review or rehearing are pending.

"**Gross Revenue**" means all present and future property, tangible and intangible, including, without limitation, any and all legal and equitable rights, in which the Reorganized Company possesses or receives any right, title and interest, and all proceeds, products, offspring or profits thereof, including, without limitation, (A) all Cash, (B) all non-Cash proceeds, (C) whatever is acquired upon the sale, lease, license, exchange, or other disposition of property; (D) whatever is collected on, or distributed on account of, property; (E) rights arising out of any property; (F) claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, property; (G) insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, property; (H) whatever is received from license payments, litigation settlements, judgments, damage awards and service fees; (I) whatever is received from distributions to owners of entities in which TPL has any ownership interest other than

the PDS interest; and (J) payments of interest, dividends and royalties.

"**Impaired**" shall have the meaning set forth at Section 1124 of the Bankruptcy Code.

"**Insider 13% Claims**" means the following: (A) the portion of proof of Claim number 25 filed in the Bankruptcy Case by Susan Anhalt, asserted in the estimated amount of $8,379,952 based on "Payments from Assignment;" (B) proof of Claim number 32 filed in the Bankruptcy Case by John C. Leckrone in the estimated amount of $8,491,090 based on "Payments from Assignment;" and (C) the portion of proof of Claim number 39 filed in the Bankruptcy Case by Mac Leckrone, asserted in the estimated amount of $8,478,590 based on "Payments from Assignment."

"**Interest**" means units or rights to units or any membership interest or other ownership interest held by any Person in the Debtor.

"**Interest Holder**" means Daniel E. Leckrone as the sole holder of all Interests in the Debtor.

"**Insider Employee Compensation Contracts**" means the agreements, whether written or oral, and all amendments, addenda, letter agreements, offer letters, schedules, exhibits, modifications attachments, supplements and other documents related thereto, between TPL, Alliacense and/or the TPL Group, on the one hand, and Daniel McNary Leckrone, Dwayne Hannah, Janet Neal, Michael Davis, Nick Antonopoulos, Robert Neilson and Susan Anhalt, on the other hand, on which the Insider Employee Compensation Claims are based.

"**Insider Employee Compensation Claims**" means the following: (A) proof of Claim number 4 filed in the Bankruptcy Case by Robert Neilson; (B) proof of Claim number 17 filed in the Bankruptcy Case by Dwayne Hannah; (C) the portion of proof of Claim number 25 filed in the Bankruptcy Case by Susan Anhalt, asserted in the estimated aggregate amount of $16,148.43 based on "Unpaid salary" and "Unpaid paid time off;" (D) proof of Claim number 27 filed in the Bankruptcy Case by Janet Neal; (E) proof of Claim number 30 filed in the Bankruptcy Case by Nick Antonopoulus; (F) proof of Claim number 35 filed in the Bankruptcy Case by Michael Davis; (G) the portion of proof of Claim number 39 filed in the Bankruptcy Case by Mac Leckrone, asserted in the estimated amount of $2,141,232 based on "Unpaid Incentive Compensation;" and (H) the portion of proof of Claim number 40 filed in the Bankruptcy Case by Leckrone, asserted in the estimated aggregate amount of $59,101.47 based on "Unpaid salary" and "Unpaid paid time off."

**"Insider Employee Compensation Set Aside"** means the aggregate sum of the Insider Employee Compensation Claims plus interest at 3% per annum, reserved and accrued by the Reorganized Company for payment upon resolution and determination of the Allowed Insider Employee Compensation Claims.

**"ITC"** means the United States International Trade Commission.

**"Kirkendall Estate Claim"** means proof of Claim number 20 filed by the Estate of James V. Kirkendall, in the amount of $455,000.00.

**"Leckrone"** means Daniel E. Leckrone.

**"Leckrone Claim"** means the portion of proof of Claim number 40 filed by Leckrone, asserting a Secured Claim in the amount of $4,872,284.00 based on "Loan Repayments, including interest."

**"Leckrone Set Aside"** means the sum of $4,872,284 plus interest at the contract rate of 10% per annum, reserved and accrued by the Reorganized Company for payment to Leckrone upon resolution and determination of the Allowed Leckrone Claim.

**"Licensee Objectors"** means the parties identified in **Exhibit "A"** hereto, together with any of their affiliates, sublicensees, successors or assigns. Licensee Parties may become Licensee Objectors at any time prior to the commencement of the Confirmation Hearing by notice to counsel for the Debtor and the Committee.

**"Licensee Parties"** means the Licensee Objectors, together with any other party granted a license by the Debtor on or before the Effective Date, as well as each party's respective affiliates, sublicensees, successors or assigns.

**"Licensee Protected Contracts"** includes but is not limited to those Licensee Protected Contracts listed on **Exhibit "B"** hereto, and means the Debtor's contracts with any or all of the Licensee Objectors identified in **Exhibit "A"** hereto, together with any intellectual property license and/or settlement agreements with any Licensee Parties, as amended, modified, or supplemented from time to time, as well as all commercialization agreements and other agreements related to the ownership of the licensed patent portfolios or the rights to such portfolios, including the right to license such portfolios. All of these contracts ride through pursuant to Article XVI as a separate

category and are not considered executory contracts or Excluded Contracts.

**"Local Rules"** means the Local Rules of the United States District Court for the Northern District of California, as amended, as applicable to this Bankruptcy Case.

**"Manager"** means the sole manager of the Reorganized Company as selected and appointed by the Steering Committee on the Effective Date.

**"Marsh Claim"** means Proof of Claim Number 46 filed by C. Alan Marsh, in the amount of $539,808.00.

**"MMP Portfolio"** means the Moore Microprocessor Portfolio.

**"Non-Insider 13% Claims"** means the Browns Claim, the Kirkendall Estate Claim, the Todd Kirkendall Claim and the Marsh Claim.

**"NOP"** means the net operating profit generated by TPL's business operations calculated as follows: the difference between collections from accounts receivable, lawsuit recoveries, license royalties, lump sum license fees and all other sources of revenue from operations during each calendar quarter, less all costs of operation including, but not limited to, salaries, wages, benefits, rent, utilities, taxes, the $1,000,000 WCR, amounts necessary to replenish the WCR to $1,000,000 as approved by the Steering Committee, and all Distributions as required under the Plan (including the Minimum Distribution).

**"Notice of Confirmation"** means the NOTICE OF ORDER CONFIRMING PLAN or similarly titled notice of like effect issued by the Clerk of the Bankruptcy Court following Confirmation.

**"Notice Parties"** means the Reorganized Company, counsel for the Reorganized Company, the United States Trustee, the Responsible Person, the Steering Committee, counsel for the Steering Committee, the Creditor Trust Trustee, the Licensee Objectors and any Creditor who, after the Confirmation Hearing, files with the Bankruptcy Court and serves on the Debtor or the Reorganized Company and its counsel at the addresses provided at Section XV-J of the Plan, a notice requesting to be added as a notice party; provided, however, that any creditor whose Claim has been paid in full shall no longer be a Notice Party.

**"Notice Procedure"** means the procedure for notice set forth at Section VII-P of the Plan.

**"Patent Actions"** means the ITC and District Court actions involving the MMP Portfolio,

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 13 of 60

the CORE Flash Portfolio, the Fast Logic Portfolio and any and all other actions involving other present and future patent portfolios.

"**Patriot**" means Patriot Scientific Corporation.

"**PDS**" means Phoenix Digital Solutions LLC.

"**PDS Revenue**" means the proportional distribution of revenue from the MMP Portfolio as determined by PDS to which TPL is entitled, which excludes expenses paid or reimbursed, if any, to TPL by PDS.

"**PDS Management Committee**" means the Management Committee of PDS.

"**Person**" shall have the meaning ascribed to it under Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means March 20, 2013, the date on which the Debtor filed its Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

"**Plan**" means this OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN OF REORGANIZATION (DATED FEBRUARY 14, 2014), including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

"**PTO**" means the U.S. Patent and Trademark Office.

"**Priority Claim**" means any Claim entitled to priority pursuant to Sections 507(a)(1) through (a)(7) of the Bankruptcy Code, but not including an Administrative Claim.

"**Priority Tax Claim**" means any Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any Person employed in the Bankruptcy Case prior to the Effective Date pursuant to Section 327 and 1103 of the Bankruptcy Code, and following the Effective Date as provided by the Plan.

"**Professional Fee Claim**" means an Administrative Claim for the compensation and reimbursement of expenses asserted by a Professional employed in the Bankruptcy Case pursuant to Section 327 or 1103 of the Bankruptcy Code or an expense reimbursement claim by a Committee

member, and incurred by such Professional or Committee member (to the extent Allowed under Section 328, 330, 331, or 503 of the Bankruptcy Code) through the Effective Date.

**"Quarterly Distribution Report"** means the report provided by the Reorganized Company to the Steering Committee on a quarterly basis as provided at Section VII-J-3 of the Plan, providing a list of all Claims held by Creditors in Classes 2, 3, 4, 6 and 7 and identifying each Claim as either an Allowed Claim, a Disputed Claim (in whole or in part), and if a Disputed Claim, any amount that is undisputed, and providing for each respective Claim, the Claim number (if applicable), the claimant name, and the Reorganized Company's calculations for each Claim, including: (i) the amount of the Allowed Claim, if applicable (ii) the undisputed portion of any Disputed Claim, (iii) the pro rata Distribution amount for the quarter, and (iv) the interest owing for the quarter calculated at the Plan Interest Rate. The Quarterly Distribution Report shall include the total payment due each holder of an Allowed Claim and the total of all such payments due for the quarter.

**"Quarterly Payment"** means (A) the payment deposited by the Reorganized Company into the Claims Trust Account after the close of each full calendar quarter following the Effective Date comprised of (i) 20% of Gross Revenue received during such quarter and (ii) NOP for such quarter, plus (ii) owner distributions deposited by PDS, if any, to the Claims Trust Account comprised of 100% of TPL's PDS Revenue for such quarter as determined by PDS in its sole discretion.

**"Rejection Claim"** means an Unsecured Claim arising from the Debtor's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

**"Rejection Claims Bar Date"** means, other than for an Excluded Contract, the earlier of: (a) thirty (30) days following the date of the Notice of Confirmation; or (b) thirty (30) days after the entry of a Final Order prior to Confirmation approving rejection of an executory contract or unexpired lease. With respect to an Excluded Contract that is rejected pursuant to Section IX-F of the Plan, the Rejection Claims Bar Date means thirty (30) days from the date notice of rejection and notice of the Rejection Claims Bar Date is provided to the affected party to the Excluded Contract.

**"Reorganized Company"** means the Debtor on and after the Effective Date.

**"Responsible Person"** means the Manager.

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 15 of 60

"**Retained Claims**" means any and all claims, defenses and rights of the Debtor and the Reorganized Company against any Person or Entity as of the Effective Date, including those Retained Claims referred to in Article X.

"**Schedules**" means the Debtor's schedules of assets and liabilities consisting of Schedules "**A**" through "**J**" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), and any amendments thereto.

"**Secured Claim**" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be. A Claim falling under this definition, but exceeding the value of the Claim's interest in the applicable collateral, or exceeding the amount subject to setoff, as applicable, shall be an Unsecured Claim to the extent of such excessive amount.

"**Steering Committee**" means the Steering Committee of the Reorganized Company to be appointed by the Committee on the Effective Date, comprised of three Committee members or their nominees who shall be identified prior to the Confirmation Hearing.

"**Todd Kirkendall Claim**" means proof of Claim number 24 filed by Todd Kirkendall, in the amount of $228,884.00.

"**TPL/Moore 'Roe' Litigation**" means the action entitled: *Charles H. Moore v. Technology Properties Limited, et al.*; Case No. 1-10-CV183613 proceeding in the Superior Court of California, Santa Clara County.

"**Unsecured Claim**" means a general unsecured Claim, but excluding Administrative Claims, Priority Claims and Priority Tax Claims, which is: (a) listed in the Debtor's Schedules (other than if listed as disputed, contingent, unliquidated or unknown as to amount); or (b) filed with the Claims Agent, including the Unsecured Claims of undersecured Creditors and Rejection Claims.

"**Unsecured Creditors' Security Interest**" means the lien and security interest granted by the Reorganized Company to the Creditor Trust Trustee, in its capacity as collateral agent for the

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 16 of 60

benefit of all holders of Allowed Unsecured Claims, in all of its right, title and interest in, to and under its present and future assets, which lien and security interest shall be junior to all existing, valid, perfected, unavoidable and unsubordinated liens against all assets of TPL, to secure the complete and timely performance of all of the Reorganized Company's obligations and payment of Allowed Claims in Class 6 and Class 7 under the Plan.

"**Venkidu**" means Arockiyaswamy Venkidu, as representative of the former shareholders of OnSpec Electronic Inc.

"**Venkidu Claim**" means proof of Claim number 7 filed by Venkidu asserting a Secured Claim in the amount of $5,344,331.00.

"**WCR**" means the Reorganized Company's $1.0 million working capital reserve as provided for under the Plan.

Any capitalized term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.

## II.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan.  The treatment of Claims described below applies only to Allowed Claims. Distributions to holders of Claims which are not Allowed Claims as of the Effective Date will be withheld in accordance with the Plan's provisions for the treatment of Disputed Claims. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one Class is classified in a particular Class only to the extent that it qualifies within the description of that Class, and is placed in a different Class to the extent it qualifies within the description of such different Class.

A.    Unclassified Claims:  Section 1123(a)(1) of the Bankruptcy Code provides that certain claims, including Administrative Claims and post-petition tax claims by governmental units entitled to priority under Section 507(a)(2) of the Bankruptcy Code, and pre-petition unsecured Priority Tax Claims entitled to priority under Section 507(a)(8) of the Bankruptcy Code are not classified under the Plan.  Unclassified Claims are expected to include Professional Fee Claims of

the Committee's Professionals and the Debtor's Professionals.

B.  Classified Claims:

    **1.**    **Class 1 (Priority Claims).**

Class 1 consists of all Priority Claims.

    **2.**    **Class 2 (CCC Claim).**

Class 2 consists of the CCC Claim.

    **3.**    **Class 3 (Leckrone Claim).**

Class 3 consists of the Leckrone Claim.

    **4.**    **Class 4 (Venkidu Claim).**

Class 4 consists of the Venkidu Claim.

    **5.**    **Class 5 (Administrative Convenience Claims).**

Class 5 consists of all Administrative Convenience Claims.

    **6.**    **Class 6.**

    **Class 6A (General Unsecured Claims, Together With 50% of Each of the Non-Insider 13% Claims).**

Class 6A consists of general Unsecured Claims not included or provided for in any other Class, including all Rejection Claims and all Unsecured Claims of vendors and trade Creditors for goods delivered or services provided to the Debtor prior to the Petition Date. Class 6A also consists of 50% of each of the Non-Insider 13% Claims.

    **Class 6B (Insider Employee Compensation Claims).**

Class 6B consists of all Insider Employee Compensation Claims.

    **7.**    **Class 7.**

    **Class 7A (50% of Each Of the Non-Insider 13% Claims).**

Class 7A consists of 50% of each of all Non-Insider 13% Claims.

    **Class 7B (Insider 13% Claims).**

Class 7B consists of all Insider 13% Claims.

    **8.**    **Class 8 (Interests).**

Class 8 consists of all Interests.

## III. TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

**Administrative Claims.**

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed Claim, if and when it becomes an Allowed Administrative Claim; and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court.

Any request for allowance of an Administrative Claim, other than Professional Fee Claims (discussed below), must be filed on or before the Administrative Claims Bar Date. If the holder of an Administrative Claim does not file and serve a request for payment of such Claim on or before the Administrative Claims Bar Date, the holder shall be forever barred from asserting such Claim or receiving any payment on account of such Claim. Any objection to the allowance of an Administrative Claim (excluding any Professional Fee Claims) shall be filed no later than the Administrative Claims Objection Deadline. If no objection to the applicable Administrative Claim is filed on or before that date, such Administrative Claim shall be deemed Allowed as of that date. The foregoing is in full and final satisfaction of all Administrative Claims.

**Professional Fee Claims.**

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on Reorganized Company, the Committee, the United States Trustee and other parties as designated by the Bankruptcy Court or applicable rules no later than forty (40) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Bankruptcy Case, if any, the Allowed Amounts of such Professional Fee Claims will be determined by the Bankruptcy Court and, once Allowed pursuant to entry of an order by the Bankruptcy Court, will be promptly paid by the Reorganized Company. Objections to Professional Fee Claims must be filed and served on the Reorganized Company and its counsel, if any, the Committee and its counsel, and the requesting

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 19 of 60

party no later than seven (7) days prior to the hearing on the applications for compensation by the Professionals.

**Priority Tax Claims.**

Except to the extent that the holder of a particular Priority Tax Claim has agreed to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; and (b) if such Claim is initially a Disputed Claim, if and when it becomes an Allowed Priority Tax Claim. The foregoing is in full and final satisfaction of all Priority Tax Claims.

## IV. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Holders of Claims in Classes 1 and 2 are not Impaired under the Plan and shall receive the treatment under the Plan as described below:

### A. Class 1 (Priority Claims)

Holders of Allowed Priority Claims in shall receive the following treatment under the Plan: Except to the extent that the holder of a particular Allowed Priority Claim has agreed to a less favorable treatment of such Claim, each holder of an Allowed Priority Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when and if it becomes an Allowed Claim. The foregoing is in full and final satisfaction of all Class 1 Claims. To the extent the holder of an Allowed Priority Claim also holds an Allowed Claim in excess of the amount of its Allowed Priority Claim, such excess shall be treated as an Unsecured Claim in Class 6A or Class 6B, as applicable.

### B. Class 2 (CCC Claim)

Pursuant to Section 1129(b)(2)(A)(i) of the Bankruptcy Code and the Cash Collateral Order, CCC shall retain all valid and perfected liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of CCC prior to the Effective Date, including those granted in the Cash Collateral Order, with respect to the CCC Claim to the extent of the Allowed Secured Claim of CCC.

CCC shall receive on account of its Class 2 Allowed Secured Claim payment in full with interest at the 5% interest rate set forth in that certain STIPULATION REGARDING USE OF CASH

COLLATERAL (CUPERTINO CITY CENTER) attached to the CCC Claim. Payment on account of the Allowed Secured Claim of CCC shall occur in in four equal payments over four months after the Effective Date. Upon full treatment of the Allowed CCC Claim accorded in this Class 2, all liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of CCC shall automatically be extinguished and terminated.

The foregoing is in full and final satisfaction of all Class 2 Claims.

## V. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS THAT ARE IMPAIRED UNDER THE PLAN

Holders of Claims in Class 3, Class 4, Class 5, Class 6 and Class 7 and the holder of Interests in Class 8 are Impaired under the Plan and shall receive the treatment under the Plan as described below:

### A. Class 3 (Leckrone Claim).

Unless otherwise provided by order of the Bankruptcy Court, pursuant to Section 1129(b)(2)(A)(i) of the Bankruptcy Code and the Cash Collateral Order, Leckrone shall retain all valid and perfected liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of Leckrone prior to the Effective Date, including those in granted in the Cash Collateral Order, with respect to the Leckrone Claim to the extent of the Secured Claim of Leckrone is an Allowed Claim.

The Class 3 Leckrone Claim is deemed a Disputed Claim by the Plan. Within 30 days of the Effective Date, the Reorganized Company or the Committee shall file an objection to the Leckrone Claim and/or commence an adversary proceeding to avoid, recharacterize and/or to subordinate such Secured Claim.

After payment in full of the Allowed Secured CCC Claim in Class 2, the Reorganized Company shall fund the Leckrone Claim Set Aside in the Disputed Reserve Account up to its full amount from the Quarterly Payment; provided, however, that the Reorganized Company may, after consultation with and obtaining written consent from the Steering Committee, fund the Leckrone Claim Set Aside on a more frequent schedule (i.e., more often than once during each calendar quarter) if the Reorganized Company in its business judgment, believes that such funding shall not

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 21 of 60

impair or affect the Reorganized Company's ability to satisfy its obligations under the Plan. The Leckrone Set Aside shall accrue and remain until there is a Final Order determining the amount of the Allowed Leckrone Claim; provided, however, that the Bankruptcy Court shall have the power to reduce the amount of the Leckrone Claim Set Aside upon motion of any party in interest. When a Final Order is entered determining the amount of the Allowed Leckrone Claim, the Leckrone Claim Set Aside shall be used for payment of the Allowed Leckrone Claim, and the Leckrone Claim Set Aside shall be terminated. To the extent there are funds in the Leckrone Claim Set Aside in excess of the Allowed Amount of the Leckrone Claim, such excess funds shall be returned to the Claims Trust Account for the funding of the next Quarterly Payment.

Subject to the immediately foregoing two paragraphs, Leckrone shall receive on account of his Class 3 Allowed Secured Claim payment in full with interest as follows: Leckrone will receive payment from the Leckrone Set Aside to the extent of the Allowed Amount of the Leckrone Claim, which Allowed Amount shall include interest as agreed on between the Committee, Leckrone and the Debtor, or as otherwise determined by the Bankruptcy Court. To the extent that the Allowed Amount of the Leckrone Claim exceeds the amount of funds in the Leckrone Set Aside at the time of final determination of such Allowed Amount, Leckrone shall then receive quarterly payments from the Quarterly Payment until the Allowed Leckrone Claim has been paid in full; provided, however, that the Reorganized Company may, after consultation with and obtaining written consent from, the Steering Committee, make Distributions to Leckrone on a more frequent schedule (i.e., more often than once during each calendar quarter) if the Reorganized Company, in its reasonable business judgment, believes that such funding will not impair or affect the Reorganized Company's ability to satisfy its obligations under the Plan. Upon full treatment of the Allowed Leckrone Claim accorded in this Class 3, all liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of Leckrone shall automatically be extinguished and terminated. The foregoing is in full and final satisfaction of all Class 3 Claims.

**B.      Class 4 (Venkidu Claim).**

Unless otherwise provided by order of the Bankruptcy Court, pursuant to Section 1129(b)(2)(A)(i) of the Bankruptcy Code and the Cash Collateral Order, Venkidu shall retain all

valid and perfected liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of Venkidu prior to the Effective Date, including those in granted in the Cash Collateral Order, with respect to the Venkidu Claim to the extent of the Secured Claim of Venkidu is an Allowed Claim.

After payment in full, or reservation for, the Allowed Secured Claims in Class 2 and Class 3, Venkidu shall receive on account of his Class 4 Allowed Secured Claim, 65% of the Quarterly Payment from the Claims Trust Account, until the Allowed Secured Venkidu Claim has been paid in full together with 7% simple interest per annum. By voting in favor of the Plan, Venkidu consents explicitly to the payment of the 35% of the Quarterly Payment to general unsecured Class 6A creditors before he has been paid in full. As a condition to voting in favor of the Plan, Venkidu shall receive a release of all claims against the Venkidu Claim, including any claims to challenge the extent, validity and priority, or to seek subordination of, such Claim. The foregoing is in full and final satisfaction of all Class 4 Claims.

**C.      Class 5 (Administrative Convenience Claims).**

On the Effective Date, each holder of a Class 5 Allowed Administrative Convenience Claim shall receive directly from the Reorganized Company a single cash payment in the amount its Allowed Claim, not to exceed $5,000.00, which payment shall be in full and final satisfaction of each respective Class 5 Claim. If at the time Distributions are made to Class 5, a holder of a Class 5 Claim is a Disputed Claim, payment on the Claim shall be deferred until such time and to the extent such Disputed Claim is Allowed.

**D.      Class 6A (General Unsecured Claims, Together With 50% of Each of the Non-Insider 13% Claims ).**

Holders of Class 6A Allowed Claims shall receive payment in full over time as follows: Holders of Allowed 6A Claims will receive quarterly *pro rata* (together with holders of Allowed 6B Claims subject to the treatment accorded in Class 6 below) payments of (i) 35% of the Quarterly Payment until Allowed Claims in Class 2 and Class 3 have been paid, or reserved for, in full and (ii) 100% of the Quarterly Payment following the payment in full of, or reservation for, the Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5, in accordance with the Schedule set forth at

Section VII-A-4 of the Plan. Holders of Class 6A Allowed Claims shall receive interest on their claims from the Petition Date calculated at five percent *per annum* or such other rate as the Bankruptcy Court may direct. The foregoing is in full and final satisfaction of all Class 6A Claims.

### E.   Class 6B (Insider Employee Compensation Claims).

The Class 6B Insider Employee Compensation Claims are each deemed a Disputed Claim by the Plan. Unless a resolution is reached with the holder of a particular Insider Employee Compensation Claim or unless a determination is otherwise made, subject to the terms of the Plan, that a particular Insider Employee Compensation Claim should not be disputed, in which instance such Insider Employee Compensation Claim shall be classified and accorded treatment in Class 6A, before the Claims Objection Deadline, the Reorganized Company or the Committee shall file an objection to each of the Insider Employee Compensation Claims and/or commence an adversary proceeding to avoid, recharacterize and/or to subordinate such Insider Employee Compensation Claim.

Holders of Class 6B Allowed Claims shall receive payment in full over time as follows: the Reorganized Company shall fund the Insider Employee Compensation Claims Set Aside in the Disputed Reserve Account from quarterly *pro rata* (together with payments to holders of Allowed 6A Claims) payments of (i) 35% of the Quarterly Payment until Allowed Claims in Class 2 and Class 3 have been paid, or reserved for, in full and (ii) 100% of the Quarterly Payment following the payment in full of, or reservation for, the Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 5, in accordance with the Schedule set forth at Section VII-A-4 of the Plan. Holders of Class 6B Allowed Claims shall receive interest on their claims from the Petition Date calculated at five percent *per annum* or such other rate as the Bankruptcy Court may direct.

The Insider Employee Compensation Claims Set Aside shall be funded up to the aggregate amounts of such Claims with interest pursuant to the Plan, and shall accrue and remain until and to the extent there is a Final Order determining the Allowed Amount of a particular Insider Employee Claim; provided, however, that the Bankruptcy Court shall have the power to reduce the amount of the Insider Employee Claim Set Aside upon motion of any party in interest. When a Final Order is entered determining the amount of a particular Allowed Insider Employee Compensation Claim, the

Insider Employee Compensation Claim Set Aside shall be used for payment of such Allowed Insider Employee Compensation Claim with the treatment accorded in Class 6A, and the Insider Employee Compensation Claim Set Aside shall be reduced accordingly until such time as all Insider Employee Compensation Claims are paid their full Allowed Amounts, plus interest.  To the extent there remain funds in the Insider Employee Compensation Claim Set Aside after payment of all Allowed Amounts of the Insider Employee Compensation Claims, such excess funds shall be returned to the Claims Trust Account for the funding of the next Quarterly Payment.  The foregoing is in full and final satisfaction of all Class 6B Claims.

**F.      Class 7A (50% of Non-Insider 13% Claims).**

Holders of Class 7A Allowed Claims shall receive payment in full over time as follows: Holders of Allowed 7A Claims shall, if they vote to accept the Plan, be deemed Allowed in an amount equal to 20% of their Claims, and following the payment in full of, or reservation for, Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6, shall receive *pro rata* (together with holders of Allowed 7B Claims) Distributions of 100% of the Quarterly Payment, up to the full Allowed Amounts, together with interest at three percent *per annum* or such other rate as the Bankruptcy Court may direct, in accordance with the timing and schedule set forth at Section VII-A-4 of the Plan.

If Holders of Claims in Class 7A do not vote to accept the Plan, then each holder of Claims in Class 7A shall be accorded treatment in Class 6A, subject to any Non-Insider 13% Claim in Class 7A being deemed a Disputed Claim. The foregoing is in full and final satisfaction of all Class 7A Claims.

**G.      Class 7B (Insider 13% Claims).**

Holders of Class 7B Allowed Claims shall receive payment in full over time as follows: Holders of Class 7B Claims shall, if they vote to accept the Plan, be deemed Allowed in an amount equal to 20% of their Claims, and following the payment in full with interest of, or reservation for, Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6, shall receive *pro rata* (together with holders of Allowed 7A Claims) Distributions of 100% of the Quarterly Payment, up to the full Allowed Amounts, together with interest at three percent *per annum* or such other rate as

the Bankruptcy Court may direct, in accordance with the timing and schedule set forth at Section VII-A-4 of the Plan.

If Holders of Claims in Class 7B do not vote to accept the Plan, then each holder of Claims in Class 7B shall be accorded treatment in Class 7A; provided, however, that each Insider 13% Claim in Class 7B shall be deemed a Disputed Claim under the Plan and shall not receive Distributions under the Plan until entry of a Final Order determining the Allowed Amount of each particular Insider 13% Claim. The foregoing is in full and final satisfaction of all Class 7B Claims.

### H.     Class 8 (Interests).

On the Effective Date, all Interests in TPL, and all rights and powers which relate to, arise from and are received and granted therefrom, shall be transferred to the Creditor Trust Trustee. At such time as Allowed Claims in Classes 1, 3, 4, 5, 6 and 7 are paid in full, the Creditor Trust Trustee shall, upon consultation with and after obtaining written approval from the Steering Committee, transfer all Interests back to the Interest Holder. The Interest Holder shall, upon the Effective Date, lose all rights to control the management and governance of the Debtor and such rights shall become vested in the Manager, subject to the terms of the Plan. The foregoing is in full and final satisfaction of all Class 8 Interests.

### VI.     IMPAIRMENT OF CLASSES; VOTING OF CLAIMS

Class 1 and Class 2 are unimpaired by the Plan and are deemed to accept the Plan. Class 3, Class 4, Class 5, Classes 6A and B, Classes 7A and 7B, and Class 8 are impaired by the Plan and are entitled to vote on the Plan.

Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan. For purposes of calculating the number of Allowed Claims in a Class that has voted to accept or reject the Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Person or Entity or its "affiliate" (as defined in the Securities Act of 1933 and the rules and regulations promulgated with respect to such Act) shall be aggregated and treated as one Allowed Claim in such Class; provided, however, that Claims acquired by a Person or Entity from unrelated Entities shall not be aggregated for purposes of voting.

/ / /

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 26 of 60

# VII. MEANS FOR EXECUTION OF THE PLAN

## A. Business Operations and Expenses of the Reorganized Company.

Under new management, the Reorganized Company will continue TPL's business operations including TPL's existing licensing and litigation activities and coordinating MMP activities with PDS.

The Reorganized Company shall reduce its annual operating budget for employee salaries, overhead, and all operating expenses to no greater than $1,000,000 until such time as holders of Allowed Claims in Classes 1, 2, 4, 5, 6 and 7A are paid in full. The Reorganized Company shall be permitted to establish the WCR, which shall be funded by withholding from revenue the Quarterly Payment up to $1,000,000 over no fewer than two full calendar quarters after the date of entry of the Confirmation Order. At any time in which the WCR is reduced from $1,000,000, the Reorganized Company may replenish the WCR up to $1,000,000. The Reorganized Company shall not withdraw any funds from the WCR and shall not replenish the WCR without first consulting with and obtaining written approval from the Steering Committee, or, absent such approval, an order from the Bankruptcy Court approving such withdrawal or replenishment, as applicable.

## B. New Management.

On the Effective Date and pursuant to the Confirmation Order, the Committee shall establish and appoint the Steering Committee. The Steering Committee shall be responsible for the management of the Reorganized Company's business and affairs and shall supervise the Manager and other officers. Except for the Committee Claims, the Steering Committee shall oversee and direct the Creditor Trust Trustee in administering the Creditor Trust. The Steering Committee shall be authorized and empowered to hire, supervise and, subject to the Notice Procedure and the terms of Section VII-I of the Plan, dismiss and replace the Manager without further Bankruptcy Court approval. The Steering Committee shall be authorized and empowered to select individuals to fill vacant seats on the PDS Management Committee, including the seat vacated by Leckrone pursuant to the Plan, subject to the applicable terms of the management agreement between TPL, Charles Moore, Patriot and PDS. The Steering Committee shall act as a fiduciary of the Reorganized Company and shall have the power and responsibility to approve major company actions, including

the settlement of Avoidance Actions and Retained Claims, disposing of major assets or altering the structure of the Reorganized Company.  In addition to the supervisory and approval powers and obligations set forth in the Plan, the Steering Committee shall also have the power and responsibility, in its discretion, to require the Manager to obtain Steering Committee approval for non-major company actions including, without limitation, entering into any acquisition, licensing, financing, employment, settlement or other contractual arrangement.  In the event a member of the Steering Committee resigns or his/her seat otherwise becomes vacant, the remaining members shall, subject to the Notice Period, appoint a replacement.

On the Effective Date, Leckrone shall be terminated as manager and Chairman of TPL, as a member of the PDS Management Committee, and in any other capacity in which he serves any supervisory, managerial, officer or decision making role for TPL, until such time as Allowed Claims in Classes 1, 2, 4, 5, 6 and 7A are paid in full pursuant to the Plan.  Subsequent to payment of all Allowed Claims in Classes 1, 2, 4, 5, 6 and 7A in full with interest pursuant to the Plan, Leckrone may be permitted by Bankruptcy Court order, to be restored to any such roles as they existed prior to the Effective Date.

On the Effective Date, or as soon as reasonably practicable thereafter, the Steering Committee shall appoint the Manager.  The Manager, under the supervision of the Steering Committee, shall have the duty and power to manage the day-to-day operations of the Reorganized Company.  Among other things, the Manager, in consultation with the Steering Committee, shall be authorized to evaluate the Reorganized Company's staffing needs, to dismiss any employees, consultants and officers that she/he deems unnecessary in her/his business judgment, and to retain, hire or contract with any employees, consultants she/he deems necessary in her/his business judgment; shall review and evaluate TPL's books and records; shall ensure all expenditures are properly accounted for and are "ordinary and necessary" pursuant to generally accepted accounting principles.

The Manager shall confer with and obtain written approval from the Steering Committee prior to pursuing any new business endeavors and prior to selling, transferring or licensing any TPL assets.  The Manager shall also confer with and obtain Steering Committee approval prior to

pursuing and consummating any other major company actions and any other actions for which the Steering Committee, in its discretion, may require approval.

The Manager and the Steering Committee shall remain in place and in control of the Reorganized Company, with all of the rights and powers provided to them under the Plan, until such time as Allowed Claims in Classes 1, 2, 4, 5, 6, and 7A are paid in full with interest under the Plan.

**C.    Creditor Trust and Creditor Trust Trustee.**

On the Effective Date, the Reorganized Company shall, in consultation with and after obtaining written approval from the Steering Committee, establish the Creditor Trust for the purpose of holding the Interests of the Interest Holder, holding the Unsecured Claimants' Security Interest for the benefit of holders of Allowed Unsecured Claims, disbursement of the Distributions and investigating and as appropriate file objections to the Committee Claims. The Creditor Trust Trustee shall manage the Creditor Trust and shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. With the exception of the Committee Claims, the Creditor Trust Trustee shall take direction from the Steering Committee in administering the Creditor Trust.

The Creditor Trust Trustee shall investigate and, if appropriate in her/his business judgment, object to the Committee Claims. The Creditor Trust Trustee shall act independently (i.e., without direction from the Steering Committee) in investigating and objecting to the Committee Claims. Other than the Debtor or the Reorganized Company whose rights to file objections to the Committee Claims are expressly preserved, the Creditor Trust Trustee shall have the sole authority to investigate and if appropriate file objections to the Committee Claims.

The Creditor Trust Trustee shall act as the Disbursing Agent responsible for disbursing payments to the holders of Allowed Claims pursuant to the terms of the Plan.

The Reorganized Company shall, in consultation with and after obtaining written approval from the Steering Committee, pay reasonable compensation to the Creditor Trust Trustee.

/ / /

/ / /

**D.** **Grant of Security Interest for the Benefit of Holders of Allowed Unsecured Claims.**

To secure the Reorganized Company's performance of the Plan, on or before the Effective Date, the Reorganized Company shall execute and file a security agreement and all other necessary documents to effect the grant of the Unsecured Claimants Security Interest to the Creditor Trust Trustee. Among other terms and conditions agreed to by TPL and the Committee, the security agreement shall provide the Creditor Trust Trustee with, in the event of a termination of the Plan (i.e., conversion to Chapter 7) or a breach of the Plan that is not cured pursuant to the cure procedures set forth below in Section XV of the Plan, the right to sell, foreclose, license, lease, hypothecate and transfer the Reorganized Company's property without need for further Court order, subject to applicable law.

The Unsecured Creditors' Security Interest shall be subordinate to all existing, valid, perfected, unavoidable and unsubordinated liens, and CCC, Venkidu and Leckrone shall retain their respective liens to the same extent and in the same priority existing as of the Effective Date unless otherwise agreed or ordered by the Court, or until such time as their Secured Claims are accorded treatment in full pursuant to the Plan.

The Creditor Trust Trustee shall be authorized to file a UCC-1 financing statement or other evidence of the Unsecured Creditors' Security Interest as may be reasonably requested by the Steering Committee. Upon the payment in full with interest under the Plan of all Allowed Claims in Class 6 and 7A, the Unsecured Creditors' Security Interest shall be deemed discharged, and the Reorganized Company shall be authorized to file one or more termination statements to evidence extinguishment of the lien.

**E.** **Creditors' Committee.**

Upon the appointment of the Steering Committee on the Effective Date, the Committee shall be dissolved.

**F.** **Distributions To Creditors.**

**1.** **Establishment of Claims Trust Account.**

On or before the Effective Date, the Reorganized Company shall establish a separate,

Case: 13-51589     Doc# 435     Filed: 02/14/14     Entered: 02/14/14 15:19:00     Page 30 of 60

segregated bank account for the benefit of holders of Allowed Claims, which shall be the Claims Trust Account. The Reorganized Company shall fund the Claims Trust Account with amounts adequate to make all payments due on the Effective Date.

### 2. Funding of Claims Trust Account.

No later than three Business Days after the close of each full calendar quarter following the Effective Date, the Reorganized Company shall deposit the portion of the Quarterly Payment for which it is responsible (i.e., the 20% of Gross Revenue and NOP, but not TPL's share of distributions from PDS which distributions, if any, shall be deposited directly by PDS into the Claims Trust Account) into the Claims Trust Account; provided, however, that in any quarter in which the deposit of the Quarterly Payment to the Claims Trust Account would, in the Reorganized Company's reasonable opinion, result in a reduction of the WCR, then, following consultation with and receipt of written approval of the Steering Committee as to such said reduction, the Quarterly Payment for that quarter shall be reduced accordingly. Such reduction shall not constitute a default under the Plan provided, however, that the Reorganized Company has deposited the aggregate of 20% of Gross Revenue during each calendar quarter. The Disbursing Agent shall distribute from the Claims Trust Account the sums specified in the Plan on the Distribution Dates specified in the Plan

### 3. Quarterly Distribution Report.

No later than five Business Days after the close of each full calendar quarter following the Effective Date, the Reorganized Company shall deliver the Quarterly Distribution Report to the Steering Committee. If the Steering Committee objects to payment on account of any particular Claim as proposed on the Quarterly Distribution Report, it shall provide written notification of such objection to the Reorganized Company within three Business Days of receipt of the Quarterly Distribution Report, and no Distributions shall be made on account of such Claim(s) until such time as the Steering Committee provides its written consent, or absent such consent, until entry of an order by the Bankruptcy Court. Upon receipt of written consent from the Steering Committee or entry of an order by the Bankruptcy Court, the Disbursing Agent shall pay the agreed on or ordered Distribution amount to the holder(s) of such affected Claim(s) as soon as reasonably practicable.

/ / /

### 4.    Timing of Distributions.

Except as otherwise provided in the Plan, the Disbursing Agent shall pay all Class 1 and Class 5 Allowed Claims on the Effective Date.  Failure to pay any Allowed Claim in Class 1 or Class 5 as required under the Plan shall constitute a Plan default unless the Disbursing Agent pays the amount due on account of such Allowed Claim as required under the Plan within thirty days of the Effective Date.

Except as otherwise provided in the Plan, the Disbursing Agent shall make Distributions of the Quarterly Payment from the Claims Trust Account no later than the tenth Business Day following the end of each calendar quarter, in the sums specified in the Quarterly Distribution Report.

The Reorganized Company shall continue to operate and the Disbursing Agent shall pay Allowed Claims in Classes 6 and 7 in full with interest, according to the terms of the Plan for a period of five years after the Effective Date, or, after consultation with and obtaining written approval from, the Steering Committee, an additional period of time not to exceed six months; provided, however, that such period may be extended further by entry of an order by the Bankruptcy Court.

### 5.    Distribution Addresses; Undeliverable Distributions.

Unless a Creditor has provided the Reorganized Company with written notice of a different address, Distributions shall be sent to Creditors at the address set forth in the proofs of Claim filed with the Claims Agent.  If no proof of Claim is filed with respect to a particular Claim, the Distribution shall be mailed to the address set forth in the Schedules filed by the Debtor.  If any Creditor's Distribution is returned as undeliverable, no further Distributions to such Creditor shall be made unless and until the Reorganized Company is notified of such Creditor's then current address, at which time all required Distributions shall be made to such Creditor.  Undeliverable Distributions shall be held by the Disbursing Agent until such Distributions are claimed; provided, however, that all claims for undeliverable Distributions must be made within ninety (90) days following a Distribution.  After such date, all unclaimed Distributions will revert to the Reorganized Company and deposited into the Claims Trust Account, and the Claim of any Creditor or successor to such

Creditor with respect to such Distribution shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

### 6. Withholding Taxes.

Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent shall deduct any federal, state or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate. The Disbursing Agent shall be permitted to withhold a Distribution to any Creditor who has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent shall comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

### 7. Fractional Amounts.

Notwithstanding anything contained herein to the contrary, the Reorganized Company shall not be required to make Distributions of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### 8. De Minimis Distributions.

Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim; provided, however, that Distributions that would otherwise be made but for this provision shall carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled to is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

### 9. Time Bar to Cash Payments.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from the date of issuance thereof. Requests for re-issuance of any check shall be made directly to the Reorganized Company by the holder of the Allowed Claim to whom such check was originally issued. Any request for re-issuance in respect of such voided check shall be made on or before ninety (90) days after the date of the issuance of such check. After such date, all Claims with respect to any voided checks shall be discharged and forever barred, and such funds shall revert to the Reorganized Company and deposited into the Claims Trust Account.

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 33 of 60

## 10. Modification of Payment Terms.

At any time after the Effective Date, (a) the Reorganized Company may modify the treatment of any Class of Allowed Claims in a manner that is more favorable than provided by the Plan (e.g., the Reorganized Company may make more frequent payments to a Class or pay or cause to be paid all Classes sooner than contemplated by the Plan), provided that such treatment does not adversely impact the ability of the Reorganized Company to perform its obligations under the Plan; and (b) the Reorganized Company may modify the treatment of any Allowed Claim in any manner adverse to the holder of such Claim with the prior written consent of the holder whose Allowed Claim is being adversely effected; provided, however, that any such modification shall be approved in writing by the Steering Committee. Notwithstanding the foregoing or anything in the Plan to the contrary, until such time as the holders of Allowed Claims in Class 6A and Class 7A, have been paid in full, with interest, as provided by the Plan, the Reorganized Company shall not, under any circumstance, modify or alter the treatment of any Person or Entity in Classes 2, 3, 4, 6B, 7B or 8, in any manner that is more favorable than provided by the Plan.

### G. Articles of Organization/Operating Agreement.

After the Effective Date, the Reorganized Company, in consultation with the Steering Committee, may amend and restate TPL's articles and operating agreement as permitted by applicable law without further Bankruptcy Court approval, including, among other things and if required, if required, amending such articles and operating agreement as of the Effective Date to comply with the requirements of Section 1123(a)(6) of the Bankruptcy Code which requires the inclusion in the Reorganized Company's charter of a prohibition of the issuance of non-voting securities and requires, among other things, the distribution of voting power equitably among the classes of voting securities.

### H. Authority Of Reorganized Company.

On and after the Effective Date, the Reorganized Company shall be appointed Estate representative pursuant to the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Except as otherwise provided by the Plan, the Reorganized Company, by and through its Manager and any designee(s) in consultation with and after obtaining written approval from the

Steering Committee as applicable, shall be responsible for and have authority to: (a) settle, resolve and object to Claims with the exception of the Committee Claims; (b) commence suit on the Retained Claims or refer any Retained Claims to the Creditor Trust Trustee; (c) pay all fees due under 28 U.S.C. § 1930; (d) file any post-confirmation reports required by the Plan or the Bankruptcy Court; (e) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; (f) sell or dispose of assets; (g) abandon property of the Estate that is determined to be burdensome or of inconsequential value; (h) do all things necessary and appropriate to fulfill the duties and obligations of the Reorganized Company under the Plan and to fully administer the Bankruptcy Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules; and (i) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Bankruptcy Case.

In addition, on the Effective Date, the Reorganized Company shall be substituted as successor to the Debtor and its Estate in all actions, contested matters and adversary proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims. The Reorganized Company shall have no obligation to pursue any affirmative claims on behalf of the Debtor or its Estate and any such claims may be abandoned or waived at the discretion of the Reorganized Company subject to the approval of the Steering Committee, if required.

### I.    Responsible Person.

Upon the Effective Date, the Manager shall serve as the Responsible Person for the Reorganized Company and shall be fully empowered to execute all documents, agreements and instruments implementing the Plan without further order of the Bankruptcy Court or further action by the managers or member(s) of the Reorganized Company, subject to the terms of the Plan and any other requirements for Steering Committee approval as required by the Steering Committee. Any such document, agreement or instrument executed and delivered by the Responsible Person shall be conclusively deemed duly executed by the Reorganized Company without need for further corporate action or order of the Bankruptcy Court. After the Effective Date, the Responsible Person shall be entitled to act as the Estate representative for purposes of implementing and administering the Plan

TTH:sb
H:\Client Matters\- F&R\Tech Properties\Pl\Plan & DS - CC\Plan\Feb 14\v3.docx
33
OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
PLAN OF REORGANIZATION (DATED FEBRUARY 14, 2014)

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 35 of 60

without need for further corporate action or order of the Bankruptcy Court.

Until the Bankruptcy Case is closed, the Responsible Person may resign at any time. In the event the Responsible Person voluntarily resigns prior to the date the Bankruptcy Case is closed, a new Responsible Person will be nominated by the Steering Committee with notice to be provided pursuant to the Notice Procedure.

Until the Bankruptcy Case is closed, the Steering Committee shall be authorized and empowered to hire, supervise and, subject to compliance with the Notice Procedure, dismiss and replace the Responsible Person without further Bankruptcy Court approval. In addition, any other party in interest may move to remove the Responsible Person for cause upon motion to the Bankruptcy Court on not less than twenty one (21) days' notice to the Notice Parties. If pursuant to a timely filed motion or a request for hearing pursuant to the Notice Procedure, the Bankruptcy Court enters a Final Order either (1) rejecting the Steering Committee's proposed successor to replace the Responsible Person or (2) removing the Responsible Person, a new Responsible Person shall be appointed by the Bankruptcy Court upon nomination by any party in interest, including the Reorganized Company and the Steering Committee, following not less than twenty one (21) days' notice to the Notice Parties.

If replaced as the Responsible Person, such former Responsible Person will turnover all of his or her books and records to the new Responsible Person. Any successor Responsible Person shall be entitled to receive reasonable compensation.

**J.     Disbursing Agent.**

The Disbursing Agent for all Distributions shall be the Creditor Trust Trustee. The Reorganized Company, in consultation with and after written approval from the Steering Committee, may relieve the Creditor Trust Trustee from its responsibilities as the Disbursing Agent and may appoint a successor Disbursing Agent at any time upon providing fifteen (15) days' notice to the Notice Parties pursuant to the Notice Procedure. In the absence of a timely objection by a Notice Party to the proposed Disbursing Agent within such fifteen (15) day period, the Reorganized Company may proceed with the appointment of the proposed Disbursing Agent. Any timely objection to the appointment of a Disbursing Agent shall be set for hearing before the Bankruptcy

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 36 of
60

Court on no less than twenty-one (21) days' notice to the Notice Parties. Any successor Disbursing Agent shall be entitled to receive reasonable compensation. Unless otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall serve without a guaranty or fiduciary bond.

### K.    Tax Returns, Payments and Refunds.

The Reorganized Company shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Company on a timely basis (other than taxes provided for under the Plan). The Reorganized Company reserves all rights to amend prior tax returns of the Debtor and to pursue and collect all potential tax refunds, to claim losses and to take such other actions to the fullest extent allowed by law to recover value.

### L.    Employee Benefit Plans.

All Benefit Plans in effect as of the Effective Date shall be continued by the Reorganized Company, subject to the rights of the Reorganized Company to modify its employee Benefit Plans from time to time pursuant to applicable nonbankruptcy law. Any obligations of the Debtor to indemnify any Person serving as a fiduciary of any Benefit Plan of the Debtor, under charter, by-laws, contract or applicable state law is deemed to be an executory contract and assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) and binding on the Reorganized Company. For the avoidance of doubt, Benefit Plans do not include any Insider Employee Compensation Contracts or any provisions thereunder for incentive compensation or otherwise.

### M.    Further Orders.

Upon motion by the Reorganized Company, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

### N.    Post-Confirmation Employment of Personnel.

The Steering Committee, Reorganized Company and any Creditor Trust Trustee may employ or contract with Persons and other Entities to perform, or advise and assist them in the performance of, their respective obligations under the Plan. The Reorganized Company, in consultation with and after written approval from the Steering Committee, may, but is not required to, continue to employ the Debtor's Professionals for the purposes for which they were employed before the Confirmation

Date, and for such additional purposes as the Reorganized Company may request, and the Reorganized Company, in consultation with and after obtaining written approval from the Steering Committee, may employ such other Professionals as may be necessary to perform its responsibilities under the Plan.

### O. Post-Confirmation Compensation and Reimbursement of Professionals.

The Steering Committee, the Reorganized Company and any Professionals employed by them after the Confirmation Date shall be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the following:

Until the Bankruptcy Case is closed, each party requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties.

Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses shall be in writing (and sufficiently detailed to allow the party whose compensation is subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the party whose compensation is subject to the objection. Such an objection must be served within fifteen (15) days after service of the detailed statement.

If there is no objection to a party's requested fees and expenses within such fifteen (15) day period, the Reorganized Company shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Reorganized Company shall promptly pay the undisputed portion of such fees and expenses.

To the extent that an objection is timely served, the Responsible Person shall reserve monies in the amount of the disputed fees and expenses pending resolution of said objection.

Any objection to a request shall be resolved by either: (a) written agreement between the party requesting such fees and expenses and the objecting party; or (b) resolution of the disputed amount by the Bankruptcy Court pursuant to a Final Order. Resolution by the Bankruptcy Court shall be requested by motion filed and served on the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty-one (21) days' notice. Such motion may be filed by either the requesting party or the objecting party. Any opposition to the motion shall

be filed and served no later than seven (7) days prior to the hearing.

The Steering Committee, the Reorganized Company and their Professionals shall not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

Following the closing of the Bankruptcy Case, the Professionals of the Steering Committee and the Reorganized Company shall be entitled to payment in the ordinary course upon the submission of an invoice to the Reorganized Company and subject to written approval by the Steering Committee; provided, however, that any disputes shall be determined by the Bankruptcy Court upon reopening the Bankruptcy Case.

### P.   Notice Procedure.

Whenever the Plan requires a Person to provide notice pursuant to the Notice Procedure, such Person seeking the particular relief shall be required to serve a written notice on the Notice Parties. Such Person shall be authorized to take the action proposed to be taken in such notice upon the expiration of the period specified in the Plan for such notice unless, before the expiration of the specified notice period, a recipient Notice Party, or a party in interest, has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection within thirty (30) days after the filing of such objection and upon not less than twenty-one (21) days' notice to all Notice Parties. If any such objection is filed, the Person seeking the particular relief shall not take the proposed action unless the Bankruptcy Court approves such action or the objecting party withdraws the objection. Service by electronic filing pursuant to Local Rule 9013-3 shall be adequate for all notices and other pleadings filed with the Bankruptcy Court.

### Q.   Post-Confirmation Fees, Reports, and Final Decree.

#### 1.   U.S. Trustee Fees.

Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any portion thereof), the Reorganized Company shall pay to the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6), the quarterly fee for such quarter until the Bankruptcy Case is converted or dismissed, or the Bankruptcy Court enters the Final Decree.

///

### 2. Post-Confirmation Reports.

Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Company shall file a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee and serve a copy of said report on the Steering Committee. Further reports shall be filed thirty (30) days after the end of each calendar quarter thereafter until the entry of the Final Decree, unless otherwise ordered by the Bankruptcy Court.

Failure to timely file the required reports may constitute a ground for the bringing of a motion to convert or dismiss the Bankruptcy Case, whichever is in the best interest of the creditors and the Estate, pursuant to Section 1112(b) of the Bankruptcy Code.

### R. Final Decree.

At such time as all motions, contested matters and adversary proceedings have been finally resolved and the Bankruptcy Case is in a condition to be closed, the Reorganized Company shall file an application for the entry of a Final Decree to close the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules. Entry of a Final Decree may be sought by the Reorganized Company notwithstanding that all payments required by the Plan have not been completed, provided, however, that the Bankruptcy Case is determined by the Bankruptcy Court to be fully administered; provided further, that the Bankruptcy Court retains jurisdiction to hear all matters involving the further administration of the Plan until all holders of Allowed Claims have been paid in full or as otherwise agreed to or provided for under the Plan. The Reorganized Company shall serve the application for entry of a Final Decree on the Notice Parties. Pursuant to Local Rule, such application shall be considered by the Bankruptcy Court without a hearing unless within fourteen (14) days after the date of service of the notice, a party in interest files and serves a request for hearing.

### VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption of Executory Contracts and Unexpired Leases

Each of the following executory contracts shall be assumed by the Reorganized Company on the Effective Date to the extent each such contract is executory in nature, and Confirmation of the

Plan shall effect such assumption: (1) the TPL/Moore/PTSC/PDS agreement dated January 23, 2013, (2) TPL's Agreements with Thunderbird Technologies, (3) the Marcoux-TPL Settlement Agreement, (4) TPL's GE Copier leases, (5) TPL's Service Agreement with TriNet Acquisition Corporation, and (6) TPL's Plan Service Agreement with Fidelity Management Trust Company.

All executory contracts assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan, shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Confirmation Order, and be binding on the parties thereto.

**B.    Defaults**.

Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor or the Reorganized Company, as applicable, shall, on or before the Effective Date: (a) cure, or provide adequate assurance that it will promptly cure, any such default; (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

**C.    Rejection of Executory Contracts and Unexpired Leases**.

Without admitting the validity of any other executory contracts and unexpired leases, the following executory contracts and unexpired leases of the Debtor are hereby rejected by the Debtor as of the Effective Date, and Confirmation of the Plan shall be deemed to constitute Bankruptcy Court approval of such rejection: (a) TPL's Service Agreement with Semiconductor Insights; (b) the PDS/Alliacense July 2012 Services Agreement relating to the MMP Portfolio; (c) the Alliacense Services Agreement, and (d) the Insider Employee Compensation Contracts.

**D.    Rejection Claims**

The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Company, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 41 of
60

payment or other Distribution on account of such Claim. With respect to any Rejection Claim that is timely filed after Confirmation, the holder of such Rejection Claim may elect treatment in Class 5 of the Plan by filing such election with the Bankruptcy Court with service on the Reorganized Company and its counsel at the addresses provided at Section XIV-J no later than the Rejection Claims Bar Date, unless such date is extended by written agreement of the Reorganized Company.

### E. Adding and Removing Executory Contracts and Unexpired Leases

The provisions of this Article VIII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan; provided, however, that no such amendments shall in any way impact the Licensee Protected Contracts or Licensee Parties' rights or defenses thereunder, which shall be fully preserved in all respects, as set forth in Article XVI of the Plan.

### F. Excluded Contracts

The Reorganized Company shall retain the right to reject any Excluded Contracts, but not any Licensee Protected Contracts or related commercialization agreements, at any time following the Effective Date. Following written notice to the affected party, the Reorganized Company may reject any Excluded Contracts without further order of the Bankruptcy Court (with the affected party to the Excluded Contract having 30 days after notice of rejection to file a Rejection Claim, if any).

Excluded Contracts which have not previously and expressly been assumed or rejected by TPL by final Order of the Court are deemed under such circumstances to have "passed through" the bankruptcy and will remain in effect without modification, unless subsequently rejected in accordance with this Section.

For the avoidance of doubt, the Licensee Protected Contracts are not susceptible to rejection by the Reorganized Company and are deemed to have "ridden through" the bankruptcy without prejudice or adverse effects of any kind in accordance with Article XVI of the Plan. All Licensee Protected Contracts are and shall remain in full force and effect and continue to be valid, binding, and enforceable in accordance with their terms against TPL, the Reorganized Company, and all applicable third-party patent owners and their successors and assigns. Furthermore, there shall be no

TTH:sb
H:\Client Matters\- F&R\Tech Properties\Pl\Plan & DS - CC\Plan\Feb 14\v3.docx
40
OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
PLAN OF REORGANIZATION (DATED FEBRUARY 14, 2014)

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 42 of 60

rejection, including no post-Effective Date rejection, of any commercialization agreement or other agreement relating to any of the Licensee Protected Contracts; all such agreements shall either be expressly assumed by the Debtor or shall ride through the Bankruptcy Case unimpaired. Nothing in the Plan, and no act or omission of TPL (such as rejection of or failure to assume any executory contract) shall change any right, interest, claim, license, or defense under the Licensee Protected Contracts.

## IX.    PROOFS OF CLAIM; OBJECTIONS

### A.    Time for Filing Proofs of Claim.

The applicable Claims Bar Date for most pre-petition Claims was July 23, 2013 and for governmental units was September 16, 2013.

### B.    Ownership and Transfers of Claims.

For purposes of any Distribution under the Plan, the Reorganized Company shall not have any obligation to recognize any transfer of Claims occurring thirty (30) days or more after the Effective Date. The Reorganized Company, the Disbursing Agent, the Manager, the Committee, and their Professionals (as applicable) shall be entitled to recognize and deal for all purposes with only those claimholders of record stated on the claims docket maintained by the Bankruptcy Court, and if none, on the Debtor's Schedules.

**ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE REORGANIZED COMPANY THIRTY (30) CALENDAR DAYS OR MORE AFTER THE EFFECTIVE DATE MUST ARRANGE WITH THE TRANSFEROR UPON ACQUISITION OF THE CLAIM, TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED. NONE OF THE REORGANIZED COMPANY, THE DISBURSING AGENT, OR THE COMMITTEE SHALL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF CLAIMS THIRTY (30) CALENDAR DAYS OR MORE AFTER THE EFFECTIVE DATE.**

### C.    Amendments to Claims.

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim may not be amended later than the applicable Claims Bar Date except for amendments to proofs of Claim to decrease the amount or priority

thereof; provided, however, that the foregoing deadline shall not afford a claimant a right to amend a Claim that, pursuant to applicable law, is not subject to amendment.

### D.    Claim Objections.

An objection to a Claim shall be filed no later than the Claims Objection Deadline. An objection to an Administrative Claim shall be filed no later than the Administrative Claims Objection Deadline. Except as otherwise provided in this Section, any party in interest may file an objection to a Claim or Administrative Claim. With the exception of the Committee Claims, the Reorganized Company shall have the responsibility to review all proofs of Claim filed against the Debtor, to file objections as appropriate and to resolve Disputed Claims. With respect to Claims asserted by current or former insiders, officers, directors and employees of the TPL, and any affiliated or related Persons and Entities thereto (including, without limitation, the Insider Employee Compensation Claims and the Insider 13% Claims), the Reorganized Company, in its sole discretion, may refer any objections to such Claims to the Creditor Trust Trustee.

As set forth above at Section VI. C., the Creditor Trust Trustee shall investigate and, if appropriate in her/his business judgment, object to any or all of the Committee Claims. The Creditor Trust Trustee shall act independently (i.e., without direction from the Steering Committee) in investigating and objecting to the Committee Claims. Other than the Debtor or the Reorganized Company whose rights to file objections to the Committee Claims are expressly preserved, the Creditor Trust Trustee shall have the sole authority to investigate and if appropriate file objections to the Committee Claims.

### E.    Disputed Claims.

Subject to the next sentence, any Cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder shall be set aside by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall distribute the Cash deposited into the Disputed Claims Reserve Account on account of the Allowed Amount of such Disputed Claim. To the extent that Cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim exceed the Cash

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 44 of
60

distributable with respect to the Allowed Amount of such Claim, such excess cash shall be returned to the Claims Trust Account for the funding of the next Quarterly Payment.

### F.    Distributions

Notwithstanding any provision of the Plan specifying a date for payments or Distributions of consideration, payments and Distributions with respect to any Claim that on such date is disputed, contingent, unliquidated or unknown as to amount, will not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, or an agreement is reached between the parties, whereupon appropriate Distributions shall be made promptly in accordance with the preceding paragraph.  Notwithstanding the foregoing, any undisputed portion of a Disputed Claim shall receive a Distribution on the undisputed portion of the Claim at the same time as Allowed Claims in the same Class pursuant to the Plan.

## X.    RETAINED CLAIMS

### A.    Prosecution of Retained Claims

Except as otherwise provided in this Section, the Reorganized Company shall collect and prosecute all of the Retained Claims.  In determining whether and how to collect and prosecute the Retained Claims on behalf of the Reorganized Company, the Manager shall consult with the Steering Committee and shall not compromise any Retained Claim, file suit to collect any Retained Claim, or make any other major decision with regard thereto without the written consent of the Steering Committee or an order of the Bankruptcy Court.

With respect to any Retained Claim against any member of the Committee, the Creditor Trust Trustee shall independently collect, investigate and prosecute all such Retained Claims.

In addition to the foregoing, the Steering Committee is hereby appointed as representative of the estate pursuant to Section 1123 of the Bankruptcy Code with respect to the prosecution and liquidation of any Retained Claim against current or former insiders, officers, directors and employees of the TPL, and any affiliated or related Persons and Entities thereto.  The terms of employment of any Professional retained by the Steering Committee relative to the Retained Claims shall be subject to the approval of the Reorganized Company, or absent such approval, order of the Bankruptcy Court.  The Reorganized Company shall have the right to be heard relative to all such

matters.

Approval of the Bankruptcy Court shall not be required for the settlement or other resolution of any Retained Claims; provided, however, that the Reorganized Company, the Steering Committee and the Creditor Trust Trustee, as applicable, shall comply with the Notice Procedure before settling or resolving any Retained Claim where the amount at issue exceeds $10,000.

**B.** **Preservation of Claims and Rights.**

As the process of investigating and evaluating the Debtor's transactions and records remains ongoing, such process may result in additional claims against Persons not yet identified herein and may also result in other claims against Persons identified herein in addition to those identified at this point in time.

The Bankruptcy Estate, the Committee and the Steering Committee, as applicable, and the Debtor and the Reorganized Company, as applicable, shall retain after Confirmation and after the Effective Date, all powers granted by the Bankruptcy Code and the Bankruptcy Rules for, without limitation, recovery of property, avoidance of liens, and objection to, and/or subordination of, Claims. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim, cause of action or claim for relief held by the Committee, the Steering Committee, the Bankruptcy Estate, the Debtor or the Reorganized Company unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and will not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and will continue to remain valid after the Effective Date.

Except as provided in the Plan or the Order of Confirmation, any and all of claims, Retained Claims, causes of action and rights against any and all third parties, whether such claims, Retained Claims, causes of action or rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or the date Distributions are made, held by the Committee, the Bankruptcy Estate, the Debtor and the Reorganized Company, as applicable, are reserved to the fullest extent allowable under applicable law, as such law may be extended or interpreted subsequent to the Effective Date. The entry of the Confirmation Order will not constitute *res judicata* as to any such

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 46 of
60

claims or otherwise bar, estop or inhibit any actions by the Committee, the Steering Committee, the Debtor, the Bankruptcy Estate or the Reorganized Company upon any claims they hold as identified herein or otherwise.

Subject to the Reorganized Company's business judgment, in consultation with the Steering Committee, regarding the pursuit of any particular Retained Claim (which may entail evaluation, among other things, of the cost of pursuing such Retained Claim), the Reorganized Company, the Steering Committee, and, with respect to any Retained Claims against any member of the Committee, the Creditor Trust Trustee shall be authorized to pursue all Retained Claims. Without limiting the generality of the scope of the previous paragraphs, the Retained Claims identified at this time include: (a) the Patent Actions which include, without limitation, any and all infringement claims before the ITC and various United States District Courts for the Eastern District of Texas, the District of Delaware and the Northern District of California involving the MMP Portfolio, the CORE Flash Portfolio and the Fast Logic Portfolio; (b) any and all claims and causes of action identified in the Debtor's Schedules and Statement of Financial Affairs; (c) the Browns/TPL Appeal; (d) the TPL/Moore 'Roe' Litigation; and (e) any and all actions against Venkidu, Onspec, Chipscale, and Indigita, and against all present and past insiders and senior management of TPL, including without limitation, Dwayne Hannah, Mike Davis, Susan Anhalt, Mac Leckrone, Leckrone, Janet Neal, Nick Antonopoulus, Interconnect Portfolio, John Leckrone, Alliacense, Eric Saunders, Michael Montvelishsky, William Martin and any and all entities wholly-owned or partially owned by Leckrone, which actions may include, without limitation, whether asserted directly or under an alter ego theory, actions to subordinate, recharacterize and/or avoid claims, to challenge the validity of liens, to recover preferences and fraudulent conveyances, for breach of fiduciary duty, for usurpation of corporate opportunity, for unfair business practices, for conversion, for misappropriation of funds, for fraud and for misrepresentation.

## XI.  <u>REQUEST FOR CONFIRMATION</u>

The Committee, as the proponent of the Plan, requests Confirmation of the Plan. In the event any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majorities provided in Section 1126(c) of the Bankruptcy Code, the Committee hereby requests that

TTH:sb
H:\Client Matters\- F&R\Tech Properties\Pl\Plan & DS - CC\Plan\Feb 14\v3.docx
45
OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN OF REORGANIZATION (DATED FEBRUARY 14, 2014)

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 47 of 60

the Bankruptcy Court confirm the Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## XII.    <u>RETENTION OF JURISDICTION</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of this Plan, including matters or proceedings that relate to:

(a)    Proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Committee, the Steering Committee, the Creditor Trust Trustee, the Bankruptcy Estate, the Debtor or the Reorganized Company against any Person, including the recovery of property and subordination of Claims;

(b)    Allowance, disallowance, determination, liquidation, classification, subordination, estimation, or establishment of the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(c)    Requests for the payment of Claims entitled to priority under Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses for Professionals to the extent Court approval therefore is required under the Plan or the Confirmation Order;

(d)    The title, rights or interests of the Debtor or the Reorganized Company in any property, including the recovery of all assets and property of the Bankruptcy Estate wherever located;

(e)    Any right, power, action, or duty of the Committee, the Steering Committee, the Creditor Trust Trustee, the Bankruptcy Estate, the Debtor or the Reorganized Company under the Plan;

(f)    Any determination or estimation necessary or appropriate under Section 505 of the Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor or the Reorganized Company for periods through the end of the fiscal year in which the

Effective Date occurs, including determination of the amount of taxes, net operating losses, tax attributes, tax benefits, tax refunds, and related matters of the Debtor or the Reorganized Company;

(g)     Any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor or the Reorganized Company is a party and to hear, determine and, if necessary, liquidate, any claims arising from, or cure amounts related to, such assumption or rejection;

(h)     Resolution of controversies and disputes, including the correction of any mistake, defect, or omission regarding consummation, interpretation or enforcement of the Plan, the Confirmation Order, and any agreements referred to in the Plan or executed in contemplation of or to implement the Plan;

(i)     Resolution of any motions, adversary proceedings (including Retained Claims), contested or litigated matters, and any other matters, and to grant or deny any applications or motions involving the Committee, the Steering Committee, the Creditor Trust Trustee, the Debtor or the Reorganized Company that may be pending on the Effective Date;

(j)     Entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(k)     Modification of or amendments to the Plan before or after the Effective Date under Section 1127 of the Bankruptcy Code or modification of the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(l)     The entry of an order including injunctions, necessary to enforce the title, rights, and powers of the Committee, the Steering Committee, the Creditor Trust Trustee, the Bankruptcy Estate, the Debtor or the Reorganized Company and the purposes and intent of the Plan, and to

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 49 of
60

impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(m)     Implementation of the provisions of the Plan and entry of such orders (i) in aid of Confirmation of the Plan or (ii) as are necessary or appropriate if the Order of Confirmation is for any reason modified, stayed, reversed, revoked, or vacated;

(n)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order except as otherwise provided in the Plan, or as otherwise provided under the Bankruptcy Code or other applicable law;

(o)     Determine any claim of any Person of any nature whatsoever against the Professionals arising in or related to the Bankruptcy Case; or

(p)     The entry of a Final Decree closing the Bankruptcy Case, including provisions for injunctive relief as may be equitable, consistent with Bankruptcy Rule 3022 and or retention of jurisdiction for the Bankruptcy Court for purposes of this Article XII.

If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article XII of the Plan.

## XIII.     EFFECT OF CONFIRMATION

As of the Confirmation Date, the effect of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

### A.    Binding Effect of Plan.

The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Company, any Entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is Impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

/ / /

## B.    Vesting Of Property.

Subject to the provisions of this Plan and the Order of Confirmation, the property of the Debtor and the Bankruptcy Estate shall vest in the Reorganized Company on the Effective Date.  As of the Effective Date, all such property shall be free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders except as otherwise provided in the Plan, including, without limitation, the Unsecured Creditors' Security Interest.  Revesting does not modify the nature of any contracts assumed pursuant to the Plan.

## C.    Discharge.

Except as otherwise provided in the Plan or the Order of Confirmation, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Company, the Bankruptcy Estate, or any assets or property of the Debtor, the Reorganized Company and the Bankruptcy Estate.  Except as provided in the Plan or the Order of Confirmation, pursuant to Bankruptcy Code § 1141(d), Confirmation forever discharges the Debtor and the Reorganized Company from any and all Claims and all debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.

## D.    Exculpation.

To the extent permitted under applicable law, none of the Bankruptcy Estate, the Reorganized Company, the Manager, the Committee, the members of the Committee (solely in their capacity as such), the Steering Committee, the members of the Steering Committee (solely in their capacity as such) and their respective officers, directors, members, managers, employees, advisors, attorneys, agents, or direct and indirect affiliates will have or will incur any liability to any holder of a Claim or Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representative, financial advisors, attorneys or affiliates or any of their

predecessors, successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the negotiation and pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan excluding the obligations of the Debtor, the Reorganized Company or the Steering Committee under the Plan and any acts or omissions of any Person covered by this Section constituting willful misconduct or gross negligence, and in all respects such Persons shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

**E.    Injunction**.

**As of the Confirmation Date, all Persons or Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim or debt as a liability of the Bankruptcy Estate or the Reorganized Company to the fullest extent permitted by Bankruptcy Code Section 524.**

**F.    Preservation of Insurance.**

The discharge and release from Claims as provided in the Plan, except as necessary to be consistent with the Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor, the Bankruptcy Estate, the Reorganized Company or any other Person.

**G.    Reservation of Powers.**

The Reorganized Company shall retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor in possession, including those with respect to the recovery of property and objections to, and/or subordination of, Claims and Interests.

## XIV.    <u>MISCELLANEOUS</u>

**A.    Injunctions and Stays.**

Unless otherwise provided, all injunctions or stays arising under or entered during the Bankruptcy Case under Section 105 or Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### B. No Admissions.

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Bankruptcy Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Bankruptcy Estate.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall: (a) be deemed to be an admission with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claim, Interest, or any claims held by the Bankruptcy Estate or the Committee; or (c) prejudice in any manner the rights of the Bankruptcy Estate or the Committee in any further proceedings.

### C. Revocation of the Plan.

The Committee reserves the right to revoke or withdraw the Plan before the Confirmation Date.

### D. Modification of Plan.

The Committee may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.

In the event that Classes entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Committee reserves the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a).

After the Confirmation Date, the Reorganized Company may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

### E. Saturday, Sunday and Legal Holiday.

If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### F.     Plan Interpretation.

The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.  All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  References to the Debtor shall also include the Reorganized Company (or vice versa) as the context requires.  All exhibits, if any, attached to the Plan are, by this reference, hereby incorporated into the Plan.  All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan.  Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

### G.     Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, the Reorganized Company, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to California's choice of law provisions.

### H.     Setoff/Recoupment.

The Reorganized Company may, but is not required to, setoff or recoup against any Claim or Interest and the payments or other Distribution to be made under the Plan in respect of such Claim or Interest, claims of any nature whatsoever that arose before the Petition Date that the Debtor may have against the holder of such Claim or Interest to the extent such claims may be setoff or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by the Bankruptcy Estate or the Reorganized Company of any claim that they may have against such Person.

### I.     Waiver.

After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived in writing only by the party or parties entitled to the benefit of the term to be waived.

/ / /

**J. Notices.**

Except for service by electronic filing as permitted by Section VII-P of the Plan, all notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by first class mail, subject to any changes of addresses, notices of which shall be filed with the Bankruptcy Court, the following:

If to the Debtor or the Reorganized Company:

> Technology Properties Limited LLC
> Attn: Manager
> 20883 Stevens Creek Blvd., Suite 100
> Cupertino, CA 95014

With a copy to:

> Robert G. Harris
> Binder & Malter, LLP
> 2775 Park Avenue
> Santa Clara, CA 95050

If to the Steering Committee:

> Steering Committee
> Attn:
> [ADDRESS TO BE PROVIDED]

With a copy to:

> John Walshe Murray
> Dorsey & Whitney LLP
> 305 Lytton Avenue
> Palo Alto, CA 95014

and if to a holder of an Allowed Claim, at the address set forth in its proof of Claim filed in the Bankruptcy Case, or if none, at its address set forth in the Schedules. Notices shall be deemed given when delivered or deposited in the United States mail. Any Person or Entity may change the address at which such Person or Entity is to receive notices under the Plan by filing its change of address with the Bankruptcy Court and serving the Debtor or the Reorganized Company and its counsel at the addresses provided in this Section.

**K. Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan,

shall: (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have: (i) against any other party in interest; or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor, except with respect to Confirmation of the Plan.

### L.    Severability

Should any term or provision of the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provisions of the Plan.

## XV.    DEFAULT PROVISIONS

If the Reorganized Company shall default in the performance of any of its obligations under the Plan, and shall not have cured such default within a period of 10 days after receipt of written notice of such default from any party in interest affected by the alleged default, then such party in interest may move the Bankruptcy Court, upon notice to the Notice Parties, for an order directing the Reorganized Company to perform such obligations.  If the Reorganized Company fails to perform such obligations within 21 days, any party in interest, including, but not limited to, the Office of the United States Trustee, may immediately (i) move to set aside the Confirmation Order; (ii) move for the appointment of a chapter 11 trustee; (iii) move to convert the case to a case under Chapter 7 of the Bankruptcy Code; or (iv) in the instance of the Creditor Trust Trustee, foreclose on the Unsecured Creditors' Security Interest in all TPL Assets.

In the event the Bankruptcy Court enters an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, the Plan shall terminate, and all property of the Reorganized Company shall vest in the Chapter 7 estate.  Such property shall be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code.  Any party in interest may oppose any such motion.

Case: 13-51589   Doc# 435   Filed: 02/14/14   Entered: 02/14/14 15:19:00   Page 56 of 60

# XVI.    OVERRIDING PROTECTIONS FOR LICENSEE PARTIES

## A.    Scope and Intent of This Article

As a settlement of the Licensee Objectors' concerns and objections, this Article is included to effectuate the parties' intent to eliminate any adverse effects or prejudice of the Plan or Confirmation Order on the Licensee Parties' licenses, claims, rights, interests and defenses.  This Article XVI shall apply comprehensively to preserve all Licensee Parties' rights, licenses, claims, rights, interests and defenses, as described herein, notwithstanding any other provision of the Plan or the Confirmation Order.  To the extent any direct or indirect conflict exists between this Article and any other provision of the Plan, this Article shall control.  That is, this Article shall create an exception to any conflicting provision or consequence of the Plan as if expressly cross-referenced therein.

## B.    Confirmation Order

The Confirmation Order shall incorporate and reaffirm this Article XVI in its entirety, together with the definitions used herein.

## C.    Amendments to Article XVI

This Article (and definitions used herein) shall not be amended, modified or otherwise adversely affected, directly or indirectly, from other Plan or Confirmation Order amendments, without the prior written consent of each Licensee Objector.

## D.    No Adverse Impact On Licensee Protected Contracts

Notwithstanding any other provision of the Plan or Confirmation Order, the Licensee Protected Contracts, and the rights, claims, including offsetting or recoupment claims, interests and defenses of each Licensee Party, shall ride through this Bankruptcy Case without prejudice or adverse effects of any kind.  All such Licensee Protected Contracts shall remain in full force and effect, and continue to be valid, binding, and enforceable in accordance with their terms, against TPL, the Reorganized Company, and all applicable third-party patent owners and their successors and assigns.

For the avoidance of doubt, nothing in the Plan, Disclosure Statement, or Confirmation Order, and no act or omission of the Committee, Debtor or Reorganized Company (such as rejection of or failure to assume any executory contract) changes or impairs in any way any rights, interests,

Case: 13-51589    Doc# 435    Filed: 02/14/14    Entered: 02/14/14 15:19:00    Page 57 of 60

claims, licenses, or defenses under the Licensee Protected Contracts. Without limiting the generality of the foregoing, nothing in Article XII of the Plan (entitled "Effect of Confirmation"), or elsewhere, shall have the effect of stripping or undermining any rights, interests, claims, licenses, or defenses under the Licensee Protected Contracts. Moreover, to the extent permissible by otherwise applicable law, the Confirmation Order shall estop, enjoin, and forever bar the Committee, the Debtor, Reorganized Company, and all applicable third-party patent owners and each of their successors and assigns from taking any action to disrupt or otherwise invalidate or challenge Licensee Parties' licenses, rights, offsetting or recoupment claims, interests, property or defenses.

Thus, for avoidance of doubt, each Licensee Party shall have the same unimpaired rights, claims, including offsetting or recoupment claims, interests, and defenses, as such party would have had there been no Bankruptcy Case or Plan. As used in this Article, the terms rights, claims, interests and defenses shall be used in their broadest and most comprehensive senses, including, without limitation, as such terms are used in the Bankruptcy Code. Moreover, the property and property rights of each Licensee Party shall not be directly or indirectly impaired, prejudiced, or otherwise adversely affected by the Plan or Confirmation Order, whether by Section 1141 or otherwise. Nothing in the Plan or in the Confirmation Order shall be deemed to restrain, enjoin, stay or otherwise obstruct the enforcement, exercise or defense by any Licensee Party after the Effective Date of any of their licenses, rights, offsetting or recoupment claims, interests, property or defenses. Without limiting the generality of the foregoing and notwithstanding any retained jurisdiction provisions in the Plan, the Licensee Parties may respond as law or equity permit with respect to any claim or cross-claim by the Committee, Debtor or Reorganized Company or its affiliates or any of their successors, assignees, or agents, by enforcing in any court or tribunal of competent jurisdiction (as if all bankruptcy jurisdiction with respect thereto ended on the Effective Date) any or all of the licenses, rights, offsetting or recouping claims, interests, property or defenses available or reserved in connection with this Article.

### E.    No Change For Patent Actions

Notwithstanding any other provision of the Plan or the Confirmation Order, to the extent any patent action or other litigation has been or may be filed or threatened by or for the Committee,

Debtor or Reorganized Company against any Licensee Objector, the position of the parties thereto after the Effective Date shall not be changed by or on account of the Plan or Confirmation Order, and Licensee Parties' rights and defenses shall remain fully preserved, as if there had been no Bankruptcy Case or Plan.

**F.     No Rejection or Section 1141 Impact On Licenses**

None of the Licensee Protected Contracts can or will be rejected pursuant to Section 365 or impaired or extinguished or discharged or prejudiced by Section 1141 or otherwise, but rather all Licensee Protected Contracts shall ride through unimpaired, as provided in this Article. Furthermore, there shall be no rejection, including no post-Effective Date rejection, of any of the Licensee Protected Contracts; all such agreements shall either be expressly assumed by the Debtor or shall ride through the Bankruptcy Case unimpaired.

**G.     No Limit On Licensee Transfers**

Notwithstanding Plan Article IX or any other provision of the Plan or Confirmation Order or, to the maximum extent permitted by applicable law, any Licensee Party may transfer, without restraint, all or any part of or interest in its preserved rights, property, claims, interests or defenses, including the Licensee Protected Contracts, whether before or after the Effective Date.

**H.     No Limit On Licensee Amendments To Claims, As Permitted By Law**

Notwithstanding Plan Article IX or other provisions of the Plan or Confirmation Order, applicable law shall determine whether and to what extent any Licensee Objector's proof of claim may be amended.

**I.     Reserved Objections**

If and to the extent that any challenge or dispute is made with respect to any licenses, rights, property, interests, claims or defenses or other benefits preserved for Licensee Objectors herein, such Licensee Objectors may not only defend on the basis of this Article XVI, but also on the basis of any or all of the prior objections and arguments of Licensee Objectors, all of which are reserved defensively to protect them from any such challenge or dispute.  Furthermore, nothing in the Plan or Confirmation Order shall constitute a waiver by any Licensee Objector of such party's rights under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), or *Bellingham Ins. Agency, Inc. v. Arkin (In re*

TTH:sb
H:\Client Matters\- F&R\Tech Properties\Pl\Plan & DS - CC\Plan\Feb 14\v3.docx

1 | *Bellingham Ins. Agency, Inc.*), 702 F.3d 553 (9th Cir. 2012), to challenge the jurisdiction of the

2 | Bankruptcy Court to issue a final judgment.

3 | Dated: February 14, 2014        **DORSEY & WHITNEY, LLP**

4 |

5 |         By: */s/ Robert A. Franklin*
           Robert A. Franklin

6 |            Attorneys for Official
           Committee of Unsecured Creditors

7 |

8 | Dated: February 14, 2014        Official Committee of Unsecured Creditors

9 |

10 |         By: */s/ Marcie Brown*
           Marcie Brown

11 |            Chairperson

TTH:sb
H:\Client Matters\- F&R\Tech Properties\Pl\Plan & DS - CC\Plan\Feb 14\v3.docx

OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
PLAN OF REORGANIZATION (DATED FEBRUARY 14, 2014)