1  STEPHEN T. O'NEILL (115132)
   ROBERT A. FRANKLIN (091653)
2  THOMAS T. HWANG (218678)
   DORSEY & WHITNEY LLP
3  305 Lytton Avenue
   Palo Alto, CA 94301
4  Telephone:  (650) 857-1717
   Facsimile:   (650) 857-1288
5  Email:  oneill.stephen@dorsey.com
   Email:  franklin.robert@dorsey.com
6  Email:  hwang.thomas@dorsey.com

7  Attorneys for Official
   Committee of Unsecured Creditors
8
   HEINZ BINDER (87908)
9  ROBERT G. HARRIS (124678)
   WENDY W. SMITH (133887)
10 BINDER & MALTER, LLP
   2775 Park Avenue
11 Santa Clara, CA 95050
   Telephone: (408) 295-1700
12 Facsimile: (408) 295-1531
   Email: Heinz@bindermalter.com
13 Email: Rob@bindermalter.com
   Email: Wendy@bindermalter.com
14

15
   Attorneys for Debtor and Debtor-in-Possession
16 TECHNOLOGY PROPERTIES LIMITED LLC

17            **UNITED STATES BANKRUPTCY COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA**

19                    **SAN JOSE DIVISION**

20 In re:                                    )
                                             )
21 **TECHNOLOGY PROPERTIES LIMITED LLC,**    )   Case No.  13-51589-SLJ-11
   **fka TECHNOLOGY PROPERTIES LIMITED**     )
22 **INC., A CALIFORNIA CORPORATION,**       )
   **fka TECHNOLOGY PROPERTIES LIMITED,**    )      Chapter  11
23 **A CALIFORNIA CORPORATION,**             )
                                             )   CONFIRMATION  HEARING:
24                              Debtor.       )
                                             )   Date:     February 11 , 2015
25                                           )   Time:     10:00 a.m.
                                             )   Place:    United States Bankruptcy Court
26                                           )            280 S. First Street, Room 3099
                                             )            San Jose, CA  95113
27 _____             Judge:    Honorable Stephen L. Johnson

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT PLAN OF REORGANIZATION BY**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND DEBTOR**
**(DATED JANUARY 8, 2015)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

DEFINITIONS.......................................................................................................2

I.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .....................................16

II.   TREATMENT OF UNCLASSIFIED CLAIMS................................................18

III.  TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN ...............................20

IV.   TREATMENT OF CLASSES OF CLAIMS AND INTERESTS
      THAT ARE IMPAIRED UNDER THE PLAN.........................................................20

V.    IMPAIRMENT OF CLASSES; VOTING OF CLAIMS ..............................................27

VI.   MEANS FOR EXECUTION OF THE PLAN............................................................27

VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................................42

VIII. PROOFS OF CLAIM; OBJECTIONS .................................................................45

IX.   RETAINED CLAIMS ...................................................................................48

X.    REQUEST FOR CONFIRMATION ....................................................................50

XI.   RETENTION OF JURISDICTION .....................................................................51

XII.  EFFECT OF CONFIRMATION .......................................................................53

XIII. MISCELLANEOUS ...................................................................................56

XIV.  DEFAULT PROVISIONS .............................................................................60

XV.   OVERRIDING PROTECTIONS FOR LICENSEE PARTIES...........................................62

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 3 of 67

**PRELIMINARY STATEMENT**

The Official Committee of Unsecured Creditors of Technology Properties Limited, LLC (the "Committee") and debtor and debtor in possession Technology Properties Limited, LLC (the "Debtor" or "TPL") propose this plan of reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

On March 20, 2013, TPL filed its Voluntary Petition under chapter 11 of the Bankruptcy Code. Chapter 11 sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan of reorganization presented to Creditors and Interest Holders for consideration and approval. Confirmation (i.e., Bankruptcy Court approval) of this Plan is the culmination of that process.

This Plan sets forth the joint proposal of the Committee and TPL for the restructuring of TPL's finances and for the satisfaction, discharge and/or cancellation of all Claims against TPL. Pursuant to the Plan, new management will be appointed to operate TPL's business, and TPL will pay its creditors certain proceeds of various portfolios quarterly for a period of up to seven years (subject to extension upon Committee approval). TPL will continue to commercialize its COREFlash and Fast Logic portfolios, but licenses will, after Confirmation, be written by the IP Owners of the portfolios to whom the licenses will be reconveyed as of the Effective Date.

With the Plan, Creditors and Interest Holders will receive the DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION (DATED JANUARY 8, 2015) (the "Disclosure Statement"). With the Plan and Disclosure Statement, Creditors will receive a Ballot for voting on the Plan. Class 1 is not Impaired under the Plan and is therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to Class 1 are not being solicited and no Ballots need be returned by creditors in such Class. Acceptances of the Plan are therefore being solicited only from Classes 2, 3, 4, 5, 6, 7 and 8. Consequently, only holders of Claims in Classes 2, 3, 4, 5, 6A, 6B, 6C, 7 and the holder of Interests in Class 8 need return their Ballots.

The Disclosure Statement includes a summary of the Debtor's history, a summary of significant events during the Chapter 11 case, a description of what Creditors and Interest Holders

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 4 of 67

will receive under the Plan and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and the Disclosure Statement before deciding whether you will accept or reject the Plan. In the event and to the extent that any provision of the Plan is inconsistent with or contrary to the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

**CREDITORS WISHING TO VOTE ON THE PLAN MUST COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN FEBRUARY 4, 2015 TO:**

**Binder & Malter**
**2775 Park Avenue**
**Santa Clara, CA 95050**
**Attention: Robert G. Harris**
**Email: Rob@bindermalter.com**

**IF YOUR BALLOT IS NOT RETURNED BY FEBRUARY 4, 2015, IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED. BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.**

If any class of Claims does not accept the Plan, the Committee may elect to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the Plan by the holders of Claims and Interests. If required, the Plan may be modified at or prior to the hearing on Confirmation to permit Bankruptcy Court approval under Section 1129(b). If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Case dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code, or other parties in interest may propose a different plan.

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

**"Accepting Non-Insider 13% Claims"** mean the Non-Insider 13% Claims in the instance the Browns accept the Plan and do not object to confirmation of the Plan.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 5 of 67

**"Adjusted Gross Revenue"** or **"AGR"** means Gross Revenue less amounts owing under patent litigation counsel contingency retainer agreements and agreements with inventors of the portfolios TPL commercializes.

**"Administrative Claim"** means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including the Effective Date, (b) any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, (c) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (d) compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

**"Administrative Claims Bar Date"** means that date which is sixty (60) days following the Effective Date.

"**Administrative Claims Contribution**" means the 50% of Adjusted Gross Revenue contributed each quarter (up to a maximum amount not to exceed the amount of Allowed Administrative Claims) to pay holders of Allowed Administrative Claims who agree to accept treatment other than payment in cash in full on the Effective Date.

**"Administrative Claims Objection Deadline"** means, for Administrative Claims other than Professional Fee Claims, thirty (30) days after the Administrative Claims Bar Date or such later date as may be established by the Bankruptcy Court.

**"Administrative Convenience Claims"** means Timely Filed Unsecured Claims of $5,000.00 or less whose holders elect on their Ballot to accept treatment pursuant to Class 5 under the Plan, and Timely Filed Unsecured Claims of greater than $5,000.00 whose holders elect on their Ballot to accept treatment pursuant to Class 5 under the Plan and agree to reduce their respective Allowed Claims to $5,000.00.

**"Agility"** means Agility IP Law, LLC.

**"Alliacense"** means Alliacense Limited, LLC.

**"Alliacense Services Agreement"** means that certain Services Agreement as amended

3

March 19, 2012, between TPL and Alliacense as amended by that certain Amended Alliacense Services and Novation Agreement dated July 23, 2014 (the latter of which is referred to separately as the "Novation").

**"Allowed" or "Allowed Amount"** means the amount in which any Claim or Interest is allowed. **"Allowed Administrative Claim"** means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or as to which there has been no objection within the time period established by the Plan or by an order of the Bankruptcy Court.

**"Allowed Claim"** means a Claim: (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed by the Claims Objection Deadline; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed by the Claims Objection Deadline; (c) which is Allowed by a Final Order; (d) settled, compromised or otherwise resolved by the Reorganized Company pursuant to its power granted under the Plan; or (e) which is deemed Allowed by the Plan. Other than those Claims expressly Allowed by the Plan, no Claim shall be considered an Allowed Claim if: (x) an objection to the allowance thereof is interposed by a party in interest by the Claims Objection Deadline, and such objection has not been overruled by a Final Order; or (y) the Claim has been satisfied.

**"Allowed Interest"** means the Allowed Interest of an Interest Holder.

**"Allowed Unsecured Claim"** means any Allowed Claim that is an Unsecured Claim.

**"Assignment Agreements"** means (a) the Assignment Agreement between TPL and Daniel (Mac) McNary Leckrone, dated January 5, 2003; (b) the Assignment Agreement between TPL and John C. Leckrone, dated January 5, 2003; (c); the Assignment Agreement between TPL and Susan L. Anhalt, dated January 5, 2003; (e) the Assignment Agreement between TPL and Chester A. Brown and Marcie Brown, dated August 4, 2003; (f) the Assignment Agreement between TPL and James Kirkendall, dated January 5, 2004 and (g) the Assignment Agreement between TPL and Tobacco Retailing USA, dated February 5, 2004.

**"Avoidance Actions"** means causes of action under Chapter 5 of the Bankruptcy Code.

4

**"Ballot"** means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

**"Bankruptcy Case"** means the bankruptcy case styled *In re Technology Properties, Limited, LLC*, Chapter 11 Case No. 13-51589-SLJ, pending in the Bankruptcy Court.

**"Bankruptcy Code"** means title 11 of the United States Code and also includes Sections 157, 158, 1334, 1408, 1412, and 1452 of title 28 of the United States Code, and any amendments thereto to the extent applicable to this Bankruptcy Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of California, San Jose Division, or such other court exercising jurisdiction over the Bankruptcy Case.

**"Bankruptcy Estate"** or **"Estate"** means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in Section 541 of the Bankruptcy Code.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

**"Benefit Plans"** means all benefit plans of whatever type or nature provided by the Debtor as of the date of this Plan including all 401(k) plans, medical insurance plans, accidental death and dismemberment plans and disability plans and any rights of employees to extended coverage arising from any benefit plan whether under the terms of the benefit plans, under COBRA, or under applicable law. For the avoidance of doubt, Benefit Plans do not include any Insider Employee Compensation Contracts or any provisions thereunder for incentive compensation or otherwise.

**"Browns"** means Chester A. Brown, Jr. and Marcie Brown.

**"Brown Claim"** means Proof of Claim Number 22-1 filed by the Browns in the Bankruptcy Case, in connection with the Browns Judgment in the amount of $10,021,511 plus post-judgment interest.

**"Brown Judgment"** means the Judgment dated June 5, 2013, entered in favor of Chester A. Brown, Jr. and Marcie Brown against TPL by the Santa Clara County Superior Court in the action entitled: *Brown v. TPL*, Case No. 1-09-CV -159452.

**"Brown/TPL Appeal"** means the appeal of the Brown Judgment filed by TPL and currently pending in the in the Court Of Appeal Of The State Of California, Sixth Appellate District.

5

"**Business Day**" means a day, Monday through Friday, excluding all legal holidays (as defined in Bankruptcy Rule 9006(a)(6).

"**Cash**" means cash and cash equivalents, including but not limited to checks and similar forms of payment or exchange.

"**CCC**" means Cupertino City Center Buildings, a California Limited Partnership.

"**CCC Claim**" means proof of Claim number 7 filed by CCC, asserting a Secured Claim in the amount of $711,200.

"**CEO**" means the Chief Executive Officer of the Reorganized Company as selected and appointed by the TPL Board.

"**Claim,**" as used herein, is defined in Section 101(5) of the Bankruptcy Code.

"**Claims Bar Date**" means: (a) with respect to Claims other than those held by governmental units, July 23, 2013; (b) with respect to Claims held by governmental units, September 16, 2013; and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"**Claims Objection Deadline**" means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Deadline may be extended by the Bankruptcy Court for cause upon a noticed motion of the Reorganized Company or the Committee to all Notice Parties on not less than ten (10) days' written notice.

"**Claims Trust Account**" means the segregated interest-bearing bank account maintained for the purpose of holding the deposits of the Quarterly Payment, maintained for paying Distributions to Creditors holding Allowed Claims pursuant to the Plan.

"**Class**" means a category or group of holders of Claims or Interests as designated pursuant to the Plan.

"**Committee**" means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on March 28, 2013 consisting of Chester A. Brown, Jr. and Marcie Brown, Patriot Scientific Corp., Beresford & Co., Farella Braun & Martel, LLP, the Estate of James Kirkendall and Dr. Zlatan Ribic GmbH.

"**Committee Claims**" means the proofs of Claims filed by members of the Committee in the Bankruptcy Case and include the following: (A) proof of Claim number 19 filed by Beresford &

6

Co.; (B) proof of Claim number 20 filed by the Estate of James V. Kirkendall; (C) proof of Claim number 21 filed by Dr. Ribic GmbH; (D) proof of Claim number 22 filed by Chester A. Brown, Jr. and Marcie Brown; (E) proof of Claim number 23 filed by Phil Marcoux, individually and as Seller's Rep. for Certain Former ChipScale, Inc. Shareholders; (F) proof of Claim number 28 filed by Farella Braun & Martel LLP; and (G) proofs of Claim numbers 33 and 34 filed by Patriot Scientific Corporation.

**"Committee's Professionals"** means, collectively, Dorsey & Whitney LLP and such other professionals whose employment by the Committee prior to the Confirmation Date is approved by order of the Bankruptcy Court, if any.

**"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Order of Confirmation.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

**"Confirmation Order"** means the Order confirming the Plan under Section 1129 of the Bankruptcy Code.

**"Debtor" or "TPL"** means Technology Properties Limited LLC, a California Limited Liability Company.

**"Debtor's Professionals"** means, collectively, Binder & Malter, LLP, Agility IP Law, LLP, the Simon Law Firm, P.S., Bragalone Conroy, PC, Farnan LLP, Ropers Majeski Kohn & Bentley, Adelson, Hess & Kelly APS, Fulop Business Tax Services, Henneman & Associates, and such other professionals whose employment by the Debtor prior to the Confirmation Date is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Reorganized Company to represent or assist it in fulfilling its duties and obligations as the Reorganized Company under the Plan, including such accountant(s) as the Reorganized Company may select to complete the Debtor's tax returns and other required filings with governmental authorities having jurisdiction over the Reorganized Company, and such legal professionals as may be appropriate to assist in administering the Plan, the Bankruptcy Case and the Bankruptcy Estate.

7

"**Disbursing Agent**" means the Plan Agent and any successor appointed pursuant to the Plan.

"**Disclosure Statement**" means the DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION (DATED JANUARY 8, 2015, including any modification(s) thereof and/or amendment(s) thereto.

"**Disputed Claim**" means a Claim against the Debtor: (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent, unliquidated or unknown as to amount; or (b) as to which an objection or adversary proceeding has been filed by the Claims Objection Deadline and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

"**Disputed Claims Reserve Account**" means a segregated interest-bearing bank account maintained for the purpose of holding Cash attributable to Disputed Claims and administered by the Reorganized Company consistent with the provisions of Section 345 of the Bankruptcy Code.

"**Distribution**" means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash to Creditors pursuant to the Plan.

"**Distribution Date**" means any date on which a Distribution shall be made pursuant to the Plan.

"**Effective Date**" means the later of (a) the first Business Day that is at least 30 days after the entry of the Confirmation Order and on which no stay of the Confirmation Order is in effect, including a stay pending appeal, or (b) the first Business Day on which the Reorganized Company has sufficient cash to make all payments required under the Plan on the Effective Date; provided, that notwithstanding any other provision of this Plan, the Effective Date shall not occur until and unless Plan proponents file with the Bankruptcy Court executed versions of the IP Owner Side Letters, referenced in Article XIV.G hereto and set forth on Exhibit "D", for the benefit of all Licensees.

"**Employee Incentive Compensation Claims**" mean the claims arising from the Employee Compensation Contracts between TPL and Mike Davis, Robert Neilson and Nick Antonopoulos.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

**"Employee Compensation Contracts"** means the agreements, whether written or oral, and all amendments, addenda, letter agreements, offer letters, schedules, exhibits, modifications attachments, supplements and other documents related thereto, between TPL, Alliacense and/or the TPL Group, on the one hand, and Daniel ("Mac") McNary Leckrone, Dwayne Hannah, Janet Neal, Michael Davis, Nick Antonopoulos and/or Robert Neilson, on the other hand, on which the Employee Compensation Claims and the Subordinated Employee Compensation Claims are based

**"Entity"** has the meaning ascribed to it under Section 101(15) of the Bankruptcy Code.

**"Excluded Contract"** means an executory contract or unexpired lease that is neither designated for assumption nor for rejection under the Plan as of the conclusion of the Confirmation Hearing. For the avoidance of doubt, the Licenses are not Excluded Contracts but rather ride through unimpaired, in accordance with Article XIV.

**"Final Decree"** means the final decree by the Bankruptcy Court closing the Bankruptcy Case pursuant to Bankruptcy Code Section 350 and Bankruptcy Rule 3022.

**"Final Order"** means an order entered on the docket by the Bankruptcy Court or other court of competent jurisdiction over the Bankruptcy Case, as applicable, which is no longer subject to appeal, certiorari or other proceedings for review or rehearing, and as to which no appeal, certiorari or other proceedings for review or rehearing are pending.

**"Gross Revenue"** means all present and future property of TPL, tangible and intangible, including, without limitation, any and all legal and equitable rights, in which the Reorganized Company possesses or receives any right, title and interest, and all proceeds, products, offspring or profits thereof, including, without limitation, (A) all Cash, (B) all non-Cash proceeds, (C) whatever is acquired upon the sale, lease, license, exchange, or other disposition of property; (D) whatever is collected on, or distributed on account of, property; (E) rights arising out of any property; (F) claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, property; (G) insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, property; (H) whatever is received from license payments, litigation settlements, judgments, damage awards and service fees; (I) whatever is received from distributions to owners of entities in which TPL has any ownership interest other than

9

the PDS interest; (J) payments of interest, dividends and royalties; and (K) tax refunds and credits.

**"Impaired"** shall have the meaning set forth at Section 1124 of the Bankruptcy Code.

**"Insider 13% Claims"** means the following: (A) the portion of proof of Claim number 25 filed in the Bankruptcy Case by Susan Anhalt, asserted in the estimated amount of $8,379,952 based on "Payments from Assignment;" (B) the portion of proof of Claim number 32 filed in the Bankruptcy Case by John C. Leckrone in the estimated amount of $8,491,090 based on "Payments from Assignment;" and (C) the portion of proof of Claim number 39 filed in the Bankruptcy Case by Daniel ("Mac") McNary Leckrone, asserted in the estimated amount of $8,478,590 based on "Payments from Assignment."

**"Insurance Policies"** means the schedule of past and present insurance policies attached hereto as Exhibit "A".

**"Interest"** means units or rights to units or any membership interest or other ownership interest held by any Person in the Debtor.

**"Interest Holder"** means the Daniel Leckrone Survivor's Trust U/D/T dated February 14, 2006, as the sole holder of all Interests in the Debtor.

**"IP Owners"** means the owners of the MMP Portfolio, CORE Flash Portfolio, Fast Logic Portfolio and Chipscale Portfolio licensed by TPL to Licensees, including without limitation PDS, Patriot, Charles H. Moore, and MCM Portfolio LLC.

**"IP Owners Commercialization Agreements"** means the agreements and licenses entered into between the IP Owners and TPL to license the respective portfolios.

**"ITC"** means the United States International Trade Commission.

**"Kirkendall Estate Claim"** means proof of Claim number 20 filed by the Estate of James V. Kirkendall, in the amount of $455,000.00.

**"Leckrone"** or **"Mr. Leckrone"** means Daniel E. Leckrone.

**"Leckrone Secured Claim"** means the portion of proof of Claim number 40 filed by Leckrone, asserting a Secured Claim in the amount of $4,872,284.00 based on "Loan Repayments, including interest."

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 13 of 67

"**Leckrone Priority Claim**" means the Class 1 Priority Claim of Leckrone.

"**License**" means each of the approximately 175 non-exclusive agreements granting licenses of patent portfolios that were executed by TPL, PDS, Patriot Scientific, HSM Portfolio LLC or MCM Portfolio LLC as licensor(s) prior to the filing of the Bankruptcy Case and any agreements granting licenses of patent portfolios that were executed by TPL, PDS, Patriot Scientific, MCM Portfolio LLC or HSM Portfolio LLC as licensor(s) prior to the Effective Date, in each case, as amended, modified, or supplemented from time to time whether by settlement agreement, side letter or otherwise.

"**Licensee Objectors**" means the parties identified in **Exhibit "B"** hereto, together with each party's successors and assigns.  Licensees may become Licensee Objectors at any time prior to the commencement of the Confirmation Hearing by notice to counsel for the Debtor and the Committee.

"**Licensees**" means the Licensee Objectors, together with any other party granted a License on or before the Effective Date including those identified on **Exhibit "B-2"** hereto.

"**Local Rules**" means the Local Rules of the United States District Court for the Northern District of California, as amended, as applicable to this Bankruptcy Case.

"**Marsh Claim**" means Proof of Claim Number 46 filed by C. Alan Marsh, in the amount of $539,808.00.

"**MMP Portfolio**" means the Moore Microprocessor Portfolio.

"**Non-Insider 13% Claims**" means the Brown Claim, the Kirkendall Estate Claim, the Todd Kirkendall Claim and the Marsh Claim.

"**Notice of Confirmation**" means the NOTICE OF ORDER CONFIRMING PLAN or similarly titled notice of like effect issued by the Clerk of the Bankruptcy Court following Confirmation.

"**Notice Parties**" means the Reorganized Company, counsel for the Reorganized Company, the United States Trustee, the Responsible Person, the TPL Board, the Committee, counsel for the Committee, the Plan Agent, counsel for the Plan Agent, if any, the Licensee Objectors if they serve notice on the Reorganized Company requesting to be a Notice Party following the Confirmation Hearing and any Creditor who, after the Confirmation Hearing, files with the Bankruptcy Court and

serves on the Debtor or the Reorganized Company and its counsel at the addresses provided at Section XV-J of the Plan, a notice requesting to be added as a notice party; provided, however, that any creditor whose Claim has been paid in full shall no longer be a Notice Party.

**"Notice Procedure"** means the procedure for notice set forth at Section VII-P of the Plan.

**"Patent Actions"** means the ITC and District Court actions involving the MMP Portfolio, the CORE Flash Portfolio, the Fast Logic Portfolio and any and all other actions involving other present and future patent portfolios.

**"Patriot"** means Patriot Scientific Corporation.

**"PDS"** means Phoenix Digital Solutions LLC.

**"PDS Revenue"** means the distribution of revenue from the MMP Portfolio as determined by the PDS Operating Agreement and that certain Settlement Agreement dated January 23, 2013, by and among TPL, PDS, Patriot, Moore and others to which TPL is entitled.

**"PDS Management Committee"** means the Management Committee of PDS.

**"Person"** shall have the meaning ascribed to it under Section 101(41) of the Bankruptcy Code.

**"Petition Date"** means March 20, 2013, the date on which the Debtor filed its Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

**"Plan"** means this JOINT PLAN OF REORGANIZATION by OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND DEBTOR (DATED JANUARY 8, 2015 ) including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**"Plan Agent"** means the Entity appointed pursuant to the Plan to, among other things, act as administrator of the Claims Trust Account, prosecute objections to the Committee Claims and act as the Disbursing Agent.

**"PTO"** means the U.S. Patent and Trademark Office.

**"Priority Claim"** means any Claim entitled to priority pursuant to Sections 507(a)(1) through (a)(7) of the Bankruptcy Code, but not including an Administrative Claim.

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 15 of 67

"**Priority Tax Claim**" means any Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any Person employed in the Bankruptcy Case prior to the Effective Date pursuant to Section 327 and 1103 of the Bankruptcy Code, and following the Effective Date as provided by the Plan.

"**Professional Fee Claim**" means an Administrative Claim for the compensation and reimbursement of expenses asserted by a Professional employed in the Bankruptcy Case pursuant to Section 327 or 1103 of the Bankruptcy Code or an expense reimbursement claim by a Committee member, and incurred by such Professional or Committee member (to the extent Allowed under Section 328, 330, 331, or 503 of the Bankruptcy Code) through the Effective Date.

"**Quarterly Distribution Report**" means the report provided by the Reorganized Company to the Plan Agent and the TPL Board on a quarterly basis as provided at Section VII.E.3.of the Plan, providing a list of all Claims held by Creditors in Classes 2, 3, 4, 6 and 7 and identifying each Claim as either an Allowed Claim, a Disputed Claim (in whole or in part), and if a Disputed Claim, any amount that is undisputed, and providing for each respective Claim, the Claim number (if applicable), the claimant name, and the Reorganized Company's calculations for each Claim, including: (i) the amount of the Allowed Claim, if applicable (ii) the undisputed portion of any Disputed Claim, (iii) the pro rata Distribution amount for the quarter, and (iv) the interest owing for the quarter calculated at the applicable interest rate as provided in the Plan. The Quarterly Distribution Report shall include the total payment due each holder of an Allowed Claim and the total of all such payments due for the quarter.

"**Quarterly Payment**" means (A) the payment deposited by the Reorganized Company into the Claims Trust Account after the close of each full calendar quarter following the Effective Date comprised of (i) that portion of revenue to which TPL is entitled plus (ii) distributions deposited by PDS, if any, to the Claims Trust Account comprised of 100% of TPL's PDS Revenue for such quarter, less the Administrative Claims Contribution, the necessary operating expenses of the Reorganized Company, and the amounts necessary to fund and maintain the WCR.

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 16 of 67

**"Rejection Claim"** means an Unsecured Claim arising from the Debtor's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

**"Rejection Claims Bar Date"** means, other than for an Excluded Contract, the earlier of: (a) thirty (30) days following the date of the Notice of Confirmation; or (b) thirty (30) days after the entry of a Final Order prior to Confirmation approving rejection of an executory contract or unexpired lease. With respect to an Excluded Contract that is rejected pursuant to Section IX-F of the Plan, the Rejection Claims Bar Date means thirty (30) days from the date notice of rejection and notice of the Rejection Claims Bar Date is provided to the affected party to the Excluded Contract.

**"Release"** means the release releasing all Released Parties from all Retained Claims or other claims or causes of action without limitation, in substantially the form attached hereto as **Exhibit "E"**.

**"Released Claims"** means any claims or causes of actions against the Released Parties by the Debtor, the estate, and all persons and entities that vote to accept the Plan and execute the Release, and any claims or causes of actions against the Reorganized Company except as provided herein.

**"Released Parties"** means the following persons: Dwayne Hannah, Mike Davis, Robert Neilson, Susan Anhalt, Daniel ("Mac") McNary Leckrone, Leckrone, Janet Neal, Nick Antonopoulos, Interconnect Portfolio, John Leckrone, Alliacense, Eric Saunders, Michael Montvelishsky, William Martin, and any and all entities wholly-owned or partially owned by Leckrone, the Daniel Leckrone Survivor's Trust U/D/T dated February 14, 2006, including HSM, MCM, VNS Portfolio LLC, and any predecessor or successor thereto but excluding Patriot Scientific.

**"Reorganized Company"** means the Debtor on and after the Effective Date.

**"Responsible Person"** means the CEO.

**"Retained Claims"** means any and all claims, defenses and rights of the Debtor and the Reorganized Company against any Person or Entity as of the Effective Date, including those Retained Claims referred to in Article X. Retained Claims include, without limitation, all rights to

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

bring Avoidance Actions against the IP Owners by any of TPL, the Reorganized Company, the Plan Agent, or a subsequent Chapter 7 trustee.

**"Schedules"** means the Debtor's schedules of assets and liabilities consisting of Schedules **"A"** through **"J"** filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), and any amendments thereto.

**"Secured Claim"** means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be. A Claim falling under this definition, but exceeding the value of the Claim's interest in the applicable collateral, or exceeding the amount subject to setoff, as applicable, shall be an Unsecured Claim to the extent of such excessive amount.

**"Subordinated Employee Incentive Compensation Claims"** mean: (A) that portion of proof of Claim number 17 filed in the Bankruptcy Case by Dwayne Hannah based on his Employee Compensation Contra ct; (B) that portion of proof of Claim number 27 filed in the Bankruptcy Case by Janet Neal based on her Employee Compensation Contract; (C) that portion of proof of Claim number 39 filed in the Bankruptcy Case by Daniel ("Mac") McNary Leckrone based on his Employee Compensation Contract.

**"TPL Board"** means the board of the Reorganized Company to be appointed by the Committee on the Effective Date, comprised of at least two Committee members or their nominees who shall be identified prior to the Confirmation Hearing.

**"Todd Kirkendall Claim"** means proof of Claim number 24 filed by Todd Kirkendall, in the amount of $228,884.00.

**"TPL Member"** means Daniel E. Leckrone or his successor, assigns, estate or heirs.

**"TPL/Moore 'Roe' Litigation"** means the action entitled: *Charles H. Moore v. Technology Properties Limited, et al.*; Case No. 1-10-CV183613 proceeding in the Superior Court of California, Santa Clara County.

15

**"Unsecured Claim"** means a general unsecured Claim, but excluding Administrative Claims, Priority Claims and Priority Tax Claims, which is: (a) listed in the Debtor's Schedules (other than if listed as disputed, contingent, unliquidated or unknown as to amount); or (b) filed with the Claims Agent, including the Unsecured Claims of undersecured Creditors and Rejection Claims.

**"Venkidu"** or **"Mr. Venkidu"** means Arockiyaswamy Venkidu, as representative of the former shareholders of OnSpec Electronic Inc.

**"Venkidu Claim"** means proof of Claim number 7 filed by Venkidu asserting a Secured Claim in the amount of $5,344,331.00.

**"WCR"** means the Reorganized Company's $500,000 working capital reserve as provided for under the Plan and as determined to be necessary by the CEO with the advice and consent of the TPL Board.

Any capitalized term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.

## I.   DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan.  The treatment of Claims described below applies only to Allowed Claims. Distributions to holders of Claims which are not Allowed Claims as of the Effective Date will be withheld in accordance with the Plan's provisions for the treatment of Disputed Claims. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one Class is classified in a particular Class only to the extent that it qualifies within the description of that Class, and is placed in a different Class to the extent it qualifies within the description of such different Class.

A.    Unclassified Claims:  Section 1123(a)(1) of the Bankruptcy Code provides that certain claims, including Administrative Claims and post-petition tax claims by governmental units entitled to priority under Section 507(a)(2) of the Bankruptcy Code, and pre-petition unsecured Priority Tax Claims entitled to priority under Section 507(a)(8) of the Bankruptcy Code are not classified under the Plan.  Unclassified Claims are expected to include Professional Fee Claims of

16

the Committee's Professionals and the Debtor's Professionals.

    B.    <u>Classified Claims</u>:

        **1.**    **Class 1 (Priority Claims).**

Class 1 consists of all Priority Claims.

        **2.**    **Class 2 (CCC Claim).**

Class 2 consists of the CCC Claim.

        **3.**    **Class 3 (Leckrone Secured).**

Class 3 consists of the Leckrone Secured Claim.

        **4.**    **Class 4 (Venkidu Secured).**

Class 4 consists of the Venkidu Claim.

        **5.**    **Class 5 (Administrative Convenience Claims).**

Class 5 consists of all Administrative Convenience Claims.

        **6.**    **Class 6.**

        **Class 6A (General Unsecured Claims, Together With 50% of Each of the Non-Insider 13% Claims, 75% of Each of the Employee Compensation Claims and 25% of Each of the Insider Compensation Claims).**

Class 6A includes general Unsecured Claims not included or provided for in any other Class, including all Rejection Claims and all Unsecured Claims of vendors and trade Creditors for goods delivered or services provided to the Debtor prior to the Petition Date.

Class 6A also includes 50% of each of the Accepting Non-Insider 13% Claims solely in the event the Browns vote in favor of the Plan and do not object to the confirmation of the Plan. If the Browns do not vote in favor of the Plan or if they object to the confirmation of the Plan, then all Non-Insider 13% Claims and Insider 13% Claims shall be classified together in Class 6C.

Class 6A also includes 75% of the Employee Incentive Compensation Claims and 25% of the Subordinated Employee Incentive Compensation Claims.

        **Class 6B (25% of Each of the Accepting Non-Insider 13% Claims, 25% of Each of the Employee Compensation Claims and 75% of Each of the Insider Employee Compensation Claims).**

Class 6B includes 25% of each of the Accepting Non-Insider 13% Claims solely in the event the Browns vote in favor of the Plan and do not object to confirmation of the Plan. If the Browns do

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

not vote in favor of the Plan or if they object to confirmation of the Plan, then all Non-Insider 13%

Claims and Insider 13% Claims shall be classified together in Class 6C. Class 6B also includes 25%

of the Employee Incentive Compensation Claims and 75% of the Subordinated Employee Incentive

Compensation Claims.

**Class 6C (Either of (i) 25% of Each the Accepting Non-Insider 13%
Claims or (ii) 100% of the Non-Insider 13% Claims and 100% of the
Insider 13% Claims).**

Class 6C consists of either (i) 25% of each of the Accepting Non-Insider 13%er Claims, or

(ii) in the instance that there are no Accepting Non-Insider 13%er Claims (i.e., if the Browns do not

accept the Plan and/or if they object to confirmation of the Plan), all Non-Insider 13% Claims and all

Insider 13% Claims.

**7.     Class 7 (Claims of Leckrone, Alliacense and Interconnect Portfolio LLC,
and Insider 13% Claims to the Extent Not Classified in Class 6C).**

Class 7 includes 100% of the Leckrone Secured Claim (for purposes of the timing payment

under this Plan only) and any general unsecured claim held by Leckrone plus the unsecured claims

held by each and every one of his affiliates, related entities, and Entities under his control, but does

not include the Leckrone Priority Claim. Class 7 also includes claims numbers 41 and 44 of

Alliacense and Interconnect Portfolio LLC, respectively. Class 7 shall in no event be construed to

include priority or non-priority wage claims.

Class 7 also includes the Insider 13% Claims to the extent that the Insider 13% Claims are

not classified in Class 6C above (i.e., in the instance the Browns do not accept the Plan or if they

object to confirmation of the Plan).

**8.     Class 8 (Interests).**

Class 8 consists of all Interests.

## II.     TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

**Administrative Claims – Non-Professional**

Except to the extent that the holder of a particular Administrative Claim has agreed to

deferral or other treatment of such Claim, each holder of an Allowed Administrative Claim shall be

paid in cash, in full upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed

18

Claim, if and when it becomes an Allowed Administrative Claim; and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court.

Any request for allowance of an Administrative Claim, other than Professional Fee Claims (discussed below), must be filed on or before the Administrative Claims Bar Date. If the holder of an Administrative Claim does not file and serve a request for payment of such Claim on or before the Administrative Claims Bar Date, the holder shall be forever barred from asserting such Claim or receiving any payment on account of such Claim. Any objection to the allowance of an Administrative Claim (excluding any Professional Fee Claims) shall be filed no later than the Administrative Claims Objection Deadline. If no objection to the applicable Administrative Claim is filed on or before that date, such Administrative Claim shall be deemed Allowed as of that date. The foregoing is in full and final satisfaction of all Administrative Claims.

Except as otherwise provided in the Plan in the event that the Bankruptcy Case is converted to Chapter 7, Allowed Administrative Claims, if any, of all of the Released Parties shall be subordinated to Claims in Classes 1 through 6C such that payments on any such Allowed Administrative Claims shall be deferred until payment of, or reservation in full of, Claims in Classes 1 through 6C.

**Administrative Claims - Professional Fee Claims.**

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on Reorganized Company, the Committee, the United States Trustee and other parties as designated by the Bankruptcy Court or applicable rules no later than sixty (60) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Bankruptcy Case, if any, the Allowed Amounts of such Professional Fee Claims will be determined by the Bankruptcy Court and, once Allowed pursuant to entry of an order by the Bankruptcy Court, will be promptly paid by the Reorganized Company from the Administrative Claims Contribution. Objections to Professional Fee Claims must be filed and served on the Reorganized Company and its counsel, if any, the

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 22 of
67

Committee and its counsel, and the requesting party no later than seven (7) days prior to the hearing on the applications for compensation by the Professionals.

**Priority Tax Claims.**

Except to the extent that the holder of a particular Priority Tax Claim has agreed to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; and (b) if such Claim is initially a Disputed Claim, if and when it becomes an Allowed Priority Tax Claim. The foregoing is in full and final satisfaction of all Priority Tax Claims.

## III. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Holders of Claims in Class 1 are not Impaired under the Plan and shall receive the treatment under the Plan as described below:

### A. Class 1 (Priority Claims)

Holders of Allowed Priority Claims in shall receive the following treatment under the Plan: Except to the extent that the holder of a particular Allowed Priority Claim has agreed to a less favorable treatment of such Claim, each holder of an Allowed Priority Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when and if it becomes an Allowed Claim. The foregoing is in full and final satisfaction of all Class 1 Claims. To the extent the holder of an Allowed Priority Claim also holds an Allowed Claim in excess of the amount of its Allowed Priority Claim, such excess shall be treated as an Unsecured Claim in Class 6A.

## IV. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS THAT ARE IMPAIRED UNDER THE PLAN

Holders of Claims in Class 2, Class 3, Class 4, Class 5, Class 6 and Class 7 and the holder of Interests in Class 8 are Impaired under the Plan and shall be entitled to vote and shall receive the treatment under the Plan as described below:

### A. Class 2 (CCC Claim)

Pursuant to Section 1129(b)(2)(A)(i) of the Bankruptcy Code and the Cash Collateral Order, CCC shall retain all valid and perfected liens, security interests and other encumbrances affecting

property of the Debtor or the Reorganized Company granted in favor of CCC prior to the Effective Date, including those granted in the Cash Collateral Order, with respect to the CCC Claim to the extent of the Allowed Secured Claim of CCC.

CCC shall receive on account of its Class 2 Allowed Secured Claim payment in full over time with interest as follows: CCC shall receive 75% of the Quarterly Payment until the Allowed Secured Claim of CCC is paid in full with 10% per annum simple interest. Payments shall commence on the first day of the first calendar quarter after the Effective Date. The remaining portion of the Quarterly Payment shall be deposited into the Claims Trust Account and reserved to pay interest on the Allowed Class 4 Claim as set forth below and the Allowed Claims of Class 6A as set forth below. CCC's lien shall remain on said funds until it has been paid in full. CCC will accept $180,000 in full satisfaction of its indebtedness under the CCC Settlement Agreement, which amounts to a waiver of approximately $340,000 of its current balance of $520,000. Consistent with the provisions of the Plan, TPL expects CCC to be paid in one installment on the Effective Date. By voting in favor of the Plan, CCC consents explicitly to the reservation and payment of the aforementioned 25% of the Quarterly Payment before it is paid in full.

Upon full treatment of the Allowed CCC Claim accorded in this Class 2, all liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of CCC shall automatically be extinguished and terminated. The Reorganized Company shall be authorized to prepare and file all documents as are necessary, including, but not limited to, the filing of a UCC-3 Termination Statement.

The foregoing is in full and final satisfaction of all Class 2 Claims.

**B.        Class 3.**

Unless otherwise provided by order of the Bankruptcy Court, pursuant to Section 1129(b)(2)(A)(i) of the Bankruptcy Code and the Cash Collateral Order, Leckrone shall retain all valid and perfected liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of Leckrone prior to the Effective Date, including those in granted under all Cash Collateral Orders. The Leckrone Secured Claim will be treated as a Class 7 claim under this Plan for purposes of the timing of payment only. By voting in favor of the

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Plan, Leckrone consents to the subordination of his payments and shall receive a release of all claims and causes of action against the Leckrone Claim, including any claims to challenge the extent, validity and priority, or to seek further subordination of such Claim. If the Bankruptcy Case is converted to Chapter 7 after Confirmation, the aforementioned release of claims shall be undone automatically, as shall any subordination of Claims or liens by Mr. Leckrone, without further order of the Bankruptcy Court. The Chapter 7 trustee shall have the ability to pursue all claims against Mr. Leckrone. As a condition of Confirmation Mr. Leckrone shall execute a tolling agreement to extend the two-year statute of limitations of 11 U.S.C. section 546(a)(1) for the term of the Plan, such that a chapter 7 trustee will have one year from the date of his or her appointment to file any Avoidance Actions against Mr. Leckrone.

**C.      Class 4 (Venkidu Claim).**

Unless otherwise provided by order of the Bankruptcy Court, pursuant to Section 1129(b)(2)(A)(i) of the Bankruptcy Code and the Cash Collateral Order, Venkidu shall retain all valid and perfected liens, security interests and other encumbrances affecting property of the Debtor or the Reorganized Company granted in favor of Venkidu prior to the Effective Date, including those in granted in the Cash Collateral Order, with respect to the Venkidu Claim to the extent of the Allowed Secured Claim of Venkidu.

Venkidu shall receive on account of his Class 4 Allowed Secured Claim payment in full over time with interest as follows: (i) Venkidu shall receive payments of 7% simple interest on the Allowed Class 4 Claim from 25% of the Quarterly Payment until payment in full of, or reservation for, Allowed Claims in Class 2; and then (ii) Venkidu shall receive on account of his Class 4 Allowed Secured Claim, 75% of the Quarterly Payment until the Allowed Secured Venkidu Claim has been paid in full together with 7% simple interest per annum.

By voting in favor of the Plan, Venkidu consents explicitly to the payment of the 25% of the Quarterly Payment to general unsecured Creditors in Class 6A before he has been paid in full. As a condition to voting in favor of the Plan, Venkidu shall receive a release of all claims against the Venkidu Claim, including any claims to challenge the extent, validity and priority, or to seek subordination of, such Claim. The foregoing is in full and final satisfaction of all Class 4 Claims.

22

**D.    Class 5 (Administrative Convenience Claims).**

On the Effective Date, each holder of a Class 5 Allowed Administrative Convenience Claim shall receive directly from the Reorganized Company a single cash payment in the amount its Allowed Claim, not to exceed $5,000.00, which payment shall be in full and final satisfaction of each respective Class 5 Claim.  If at the time Distributions are made to Class 5, a holder of a Class 5 Claim is a Disputed Claim, payment on the Claim shall be deferred until such time and to the extent such Disputed Claim is Allowed.

**E.    Class 6A (General Unsecured Claims, Together With 50% of Each of the Accepting Non-Insider 13% Claims, 75% of Each of the Employee Compensation Claims and 25% of Each of the Insider Employee Compensation Claims).**

Holders of (i) Class 6A Accepting Non-Insider 13% Claims who provide releases to the Released Parties (ii) Employee Incentive Compensation Claims and (iii) Subordinated Insider Employee Incentive Compensation Claims  who vote in favor of the Plan and do not object to approval of the Plan shall be deemed to be Allowed Claims which are not subject to dispute with the following exceptions notwithstanding these two claimants being Released Persons: (a) the difference between the amount asserted in the Employee Incentive Compensation Claim of Robert Neilson (Claim No. 4) and the amount scheduled in the Debtor's Schedules attributable to Robert Neilson and (b) the difference between the amount asserted in the Employee Incentive Compensation Claim of Mike Davis (Claim No. 35)  and the amount scheduled in the Debtor's Schedules attributable to Mike Davis. Claims of holders of Class 6A Accepting Non-Insider 13% Claims who do not provide releases shall not be deemed to be Allowed Claims, but instead shall be deemed Disputed Claims, subject to the outcome of the Brown Appeal

Employee Incentive Compensation Claims and Subordinated Employee Incentive Compensation Claims of Claimants who do not vote in favor of the Plan or object to approval of the Plan are subject to objection to the extent the holders of these Claims do not vote affirmatively in favor of the Plan and/or object to the Plan.  Confirmation of the Plan shall also constitute an agreement by the Accepting Non-Insider 13% Claimants that any payment representing satisfaction of any post-petition obligations of the Debtor or future obligations of the Reorganized Company under the Assignment Agreements, to the extent that any such obligations still exist, shall be

deferred until such time as all Allowed Claims in Classes 1, 2, 4, 5, 6A, 6B, 6C and 7 have been paid with interest.

Holders of Class 6A Allowed Claims shall receive payment in full over time as follows: Holders of Allowed 6A Claims will receive quarterly *pro rata* payments of (i) the balance of the 25% of the Quarterly Payment after payment of, or reservation for, 7% simple interest on the Allowed Class 4 Claim, until Allowed Claims in Classes 1, 2 and 5 have been paid, or reserved for, in full; then (ii) 25% of the Quarterly Payment until Allowed Claims in classes 1, 2, 4, and 5 have been paid, or reserved for, in full; and then (iii) 100% of the Quarterly Payment following the payment in full of, or reservation for, the Allowed Claims in Class 1, Class 2, Class 4 and Class 5, in accordance with the Plan. Holders of Class 6A Allowed Claims shall receive interest on their claims from the Petition Date calculated at five percent *per annum* or such other rate as the Bankruptcy Court may direct. The foregoing is in full and final satisfaction of all Class 6A Claims.

**F.      Class 6B (25% of Each of the Accepting Non-Insider 13% Claims, 25% of Each of the Employee Compensation Claims and 75% of Each of the Insider Employee Compensation Claims).**

Claims in Class 6B are subordinated by the Plan to Claims in Class 6A.

Class 6B Accepting Non-Insider 13% who provide releases to the Released Persons, (ii) Employee Incentive Compensation Claims and (iii) Subordinated Employee Incentive Compensation Claims of claimants who vote in favor of the Plan and do not object to approval of the Plan shall be deemed to be Allowed Claims which are not subject to dispute with the following exceptions: (a) the difference between the amount asserted in the Employee Incentive Compensation Claim of Robert Neilson and the amount scheduled in the Debtor's Schedules attributable to Robert Neilson and () the difference between the amount asserted in the Employee Incentive Compensation Claim of Mike Davis and the amount scheduled in the Debtor's Schedules attributable to Mike Davis. Claims of holders of Class 6A Accepting Non-Insider 13% Claims who do not provide releases shall not be deemed to be Allowed Claims, but instead shall be deemed Disputed Claims, subject to the outcome of the Brown Appeal.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Holders of Class 6B Allowed Claims shall receive payment in full over time as follows: Holders of Allowed 6B Claims will receive quarterly *pro rata* payments of 100% of the Quarterly Payment following the payment in full of, or reservation for, the Allowed Claims in Class 1, Class 2, Class 4, Class 5 and Class 6A. Holders of Class 6B Allowed Claims shall receive interest on their claims from the Petition Date calculated at five percent *per annum* or such other rate as the Bankruptcy Court may direct. The foregoing is in full and final satisfaction of all Class 6B Claims.

**G.    Class 6C (Either of (i) 25% of Each the Accepting Non-Insider 13% Claims or (ii) 100% of the Non-Insider 13% Claims and 100% of the Insider 13% Claims).**

Claims in Class 6C are subordinated by the Plan to Claims in Classes 6A and 6B.

Class 6C Accepting Non-Insider 13% Claims who affirmatively vote to accept the plan and do not object to confirmation of the Plan and who provide releases to the Released Parties shall be deemed to be Allowed Claims which are not subject to dispute.

Subject to the following paragraph, Holders of Allowed Class 6C Accepting Non-Insider 13% Claims, if any, shall receive payment in full over time as follows: Holders of Accepting Non-Insider 13% Claims, if any shall receive quarterly *pro rata* payments of 100% of the Quarterly Payment following the payment in full of, or reservation for Disputed Claims, the Allowed Claims in Class 1, Class 2, Class 4, Class 5, Class 6A and Class 6B in accordance. Holders of Allowed Class 6C Accepting Non-Insider 13% Claims shall receive interest on their claims from the Petition Date calculated at five percent *per annum* or such other rate as the Bankruptcy Court may direct.

Alternatively in the instance that there are no Accepting Non-Insider 13%er Claims (i.e., if the Browns do not accept the plan and/or object to approval of the plan), 100% of all Non-Insider 13% Claims and all Insider 13% Claims shall be classified in Class 6C and holders of Allowed Class 6C Claims shall receive payment of 20% of the Allowed Amount of their Claims over time as follows: Holders of Allowed Claims in Class 6C shall receive quarterly *pro rata* payments of 100% of the Quarterly Payment following the payment in full of, or reservation for Disputed Claims, the Allowed Claims in Class 1, Class 2, Class 4, Class 5, Class 6A and Class 6B

The foregoing is in full and final satisfaction of all Class 6C Claims.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

**H.    Class 7 (Claims of Leckrone, Alliacense and Interconnect Portfolio LLC, and Insider 13% Claims to the Extent Not Classified in Class 6C).**

Claims in Class 7 are subordinated by the Plan to all Claims, including without limitation, unclassified Claims and the Claims of creditors in Classes 1, 2 and 4 through 6.

Holders of Class 7 Allowed Claims shall receive payment in full over time as follows: Holders of Class 7 Claims shall, if they vote to accept the Plan, be deemed Allowed in an amount equal to 100% of their Claims, and following the payment in full with interest of, or reservation for, Allowed Claims in Class 1, Class 2, Class 4, Class 5, and Class 6, shall receive *pro rata* Distributions of 100% of the Quarterly Payment, up to the full Allowed Amounts, together with interest at five percent *per annum* or such other rate as the Bankruptcy Court may direct, in accordance with the Plan.

If holders of Claims in Class 7 do not vote to accept the Plan, then each of Claims in Class 7 shall be deemed a Disputed Claim under the Plan and shall not receive Distributions under the Plan until entry of a Final Order determining the Allowed Amount of each particular Insider 13% Claim. The foregoing is in full and final satisfaction of all Class 7 Claims.  Confirmation of the Plan shall also constitute an agreement by the Insider 13% Claimants that any payment representing satisfaction of any post-petition obligations of the Debtor or future obligations of the Reorganized Company under the Assignment Agreements, to the extent that any such obligations still exist, shall be deferred until such time as all Allowed Claims in Classes 1, 2, 4, 5, 6A, 6B, 6C and 7 have been paid with interest.

**I.    Class 8 (Interests).**

The Class 8 Interest holder shall retain his Interests in the Debtor.  The Interest Holder shall, upon the Effective Date, cede all rights to control the management and governance of the Reorganized Company as an Interest holder, and such rights shall become vested in the CEO, subject to the terms of the Plan.  Once all unclassified Claims and the Allowed Claims of creditors in Classes 1, 2, 4, 5, 6A, 6B and 6C are paid in full, all rights to control the management and governance of the Reorganized Company will automatically revert to the holder of the Class 8 Interests, and the Committee and the TPL Board will immediately and automatically lose all

26

authority with respect to the Reorganized Company. The foregoing is in full and final satisfaction of all Class 8 Interests.

## V. IMPAIRMENT OF CLASSES; VOTING OF CLAIMS

Class 1 is unimpaired by the Plan and deemed to accept the Plan. Class 2, Class 3, Class 4, Class 5, Classes 6A, 6B, and 6C, Class 7 and Class 8 are impaired by the Plan and are entitled to vote on the Plan.

Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan. For purposes of calculating the number of Allowed Claims in a Class that has voted to accept or reject the Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Person or Entity or its "affiliate" (as defined in the Securities Act of 1933 and the rules and regulations promulgated with respect to such Act) shall be aggregated and treated as one Allowed Claim in such Class; provided, however, that Claims acquired by a Person or Entity from unrelated Entities shall not be aggregated for purposes of voting.

## VI. MEANS FOR EXECUTION OF THE PLAN

### A. Business Operations and Expenses of the Reorganized Company.

Under new management, the Reorganized Company will continue TPL's existing commercialization activities and specifically, continue to exercise and enforce TPL's rights to manage litigation relating to the various patent portfolios. PDS shall remain responsible for monitoring licensing and settlements relating to the MMP Portfolio; provided, however, that nothing herein shall change existing agreements among the Debtor, Patriot, PDS and Moore.

The Reorganized Company shall be permitted to establish the WCR in an amount determined as necessary by the CEO with the advice and consent of the TPL Board, which shall be funded as set forth in the definition of the Quarterly Payment. At any time in which the WCR is reduced from $500,000, the Reorganized Company may replenish the WCR up to $500,000. The Reorganized Company shall not withdraw any funds from the WCR and shall not replenish the WCR without first consulting with and obtaining written approval from the TPL Board.

### B. New Management.

The TPL Member shall have executed an amendment (the "Amendment") to the TPL Operating Agreement implementing the provisions of the Plan as set forth in this Article VII. In the event of a difference between the terms of the Amendment and the Plan, the terms of the Plan will control. To the extent not already completed, Venkidu will replace Leckrone as the CEO of TPL to exercise the duties and responsibilities of a manager as specified in the TPL Operating Agreement and Amendment to run the business operations of the Reorganized Company, including, but not limited to, the commercialization of all portfolios, subject to the direction of the TPL Board appointed by the Committee. The CEO shall not be entitled to privileged communications dated prior to July 18, 2014, between the Debtor or the Reorganized Company and (1) Binder & Malter LLP and (2) Dorsey & Whitney LLP, and shall not assert or waive any privilege belonging to the Debtor or the Reorganized Company with respect to any such communications with Binder & Malter LLP and/or Dorsey & Whitney LLP.

Leckrone shall retain the power and right to direct counsel to seek to modify the terms of the Plan and the Disclosure Statement until voting on the Plan has been completed and to direct Insurance Coverage Counsel, Ropers Majeski, Kohn Bentley P.C. as counsel for the litigation against Brown, provided that such litigation is funded by insurance and shall not be at any cost to the Estate or deplete funds of the Reorganized Company. In no event shall the TPL Member be able to initiate, direct or prosecute any other litigation on behalf of the Reorganized Company or the Bankruptcy Estate until Classes 1, 2, 4, 5, 6A, 6B and 6C have been paid in full.

On the Effective Date and pursuant to the Confirmation Order, the Committee shall appoint the TPL Board of the Reorganized Company. The CEO shall be responsible for the management of the Reorganized Company's business and affairs subject to the advice, consent and direction of the TPL Board. Except for any matters relating to the prosecution of objections to the Committee Claims, the TPL Board shall oversee the Plan Agent, including monitoring the expenditures of the Plan Agent's and his or her professionals up an annual cap of $75,000 unless increased by agreement of the TPL Board and CEO including with respect to administering the Claims Trust Account. The TPL Board shall be authorized and empowered to hire, supervise and, subject to the

28

Notice Procedure and the terms of the Plan, dismiss and replace the CEO without further Bankruptcy Court approval. The TPL Board shall be authorized and required to fulfill TPL's obligations under the PDS Operating Agreement together with TPL's representative on the PDS management committee, as well as all existing commercialization and other agreements to which TPL is a party.

The TPL Board shall act as a fiduciary of the Reorganized Company and shall have the power and responsibility to approve major company actions, disposing of major assets provided that it complies with the procedures set forth in section VII.J. below and subject to consent of the TPL Member as is otherwise required by the TPL Operating Agreement, Amendment and applicable California law. In no event may the Reorganized Company, the CEO, or the TPL Board as a result of the rights granted under this Plan take any out of the ordinary course of business action without consent of the TPL Member that would otherwise require such approval under applicable State law or the TPL Operating Agreement and Amendment. Any disputes between the Reorganized Company and the TPL Member under this paragraph and Section VII. J. below shall be submitted to the Bankruptcy Court for resolution upon notice of at least 28 days.

Other than as provided for in this Plan, the Reorganized Company shall not dispute Claims that have been voluntarily subordinated. In the event a member of the TPL Board resigns or his/her seat otherwise becomes vacant, the Committee shall, subject to the Notice Procedure, appoint a replacement.

To the extent not already terminated, on the Effective Date, Leckrone shall be terminated as manager and Chairman of TPL, as a member of the PDS Management Committee, and shall not exercise any supervisory, managerial, officer or decision making role for TPL, until such time as Allowed Claims in Classes 1, 2, 3, 4, 5 and 6 have been paid in full pursuant to the Plan. Subsequent to payment of all Allowed Claims in Classes 1, 2, 3, 4, 5 and 6 in full with interest pursuant to the Plan, Leckrone shall be automatically restored to any such roles as they existed prior to the Effective Date.

The CEO, under the supervision of the TPL Board, shall have the duty and power to manage the day-to-day operations of the Reorganized Company, including the commercialization of the portfolios which the Debtor is obligated to commercialize. Among other things, the CEO, in

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 32 of
67

consultation with the TPL Board, and subject to the cap on WCR, shall be authorized to evaluate the Reorganized Company's staffing needs, to retain, hire or contract with any employees, and consultants she/he deems necessary in her/his business judgment; shall review and evaluate TPL's books and records; shall ensure all expenditures are properly accounted for and are "ordinary and necessary" pursuant to generally accepted accounting principles; and shall fulfill the obligations in the commercialization agreements for the several portfolios which the Debtor is obligated to commercialize. The CEO and the TPL Board shall be required to keep TPL books and records in accordance with GAAP, maintain all corporate formalities and ensure the timely filing of all tax returns.

After appointment of the CEO and the TPL Board, approval of settlements and licensing for TPL is and shall be the responsibility of the CEO, subject to the advice, direction and consent of the TPL Board.

The CEO shall confer with and obtain written approval from the TPL Board prior to pursuing any new business endeavors and prior to selling, transferring or licensing any TPL assets. The CEO shall also confer with and obtain TPL Board approval prior to pursuing and consummating any other major company actions and any other actions for which the TPL Board, in its discretion, may require approval provided that the Reorganized Company complies with the procedures set forth in section VII.J. below.

In the event of any deadlock in voting between TPL Board members, the vote shall be referred to and resolved by vote of the Committee.

On, or as soon as practicable after, the Effective Date, the Reorganized Company shall obtain, subject to the cap on WCR, liability insurance to provide comprehensive insurance coverage for losses of or advancement of defense costs to the CEO, the TPL Board and to the extent permissible under applicable law, the Committee related to any legal action brought against such Entities and Persons in their capacity as directors and officers.

The CEO and the TPL Board shall remain in place and in control of the Reorganized Company, with all of the rights and powers provided to them under the Plan, until such time as Allowed Claims in Classes 1, 2, 3, 4, 5 and 6 are paid in full with interest under the Plan. After such

payment occurs, the Committee shall be immediately dissolved and all members of the Committee on the TPL Board shall be deemed to have resigned therefrom without further order or notice.

**C.    Plan Agent.**

On or before the Effective Date, the Committee shall appoint the Plan Agent.  The Plan Agent shall manage the Claims Trust Account.  The Plan Agent shall act as the Disbursing Agent responsible for disbursing Distributions to the holders of Allowed Claims pursuant to the terms of the Plan.

The Plan Agent shall investigate and, if appropriate in her/his business judgment, object to the Committee Claims.  The Plan Agent shall act independently (i.e., without direction from the TPL Board or the Committee) in investigating and objecting to the Committee Claims.  Other than the Debtor or the Reorganized Company whose rights to file objections to the Committee Claims are expressly preserved, the Plan Agent shall have exclusive authority to investigate and if appropriate file objections to all creditor Claims.

The Reorganized Company shall, in consultation with and after obtaining written approval from the TPL Board, pay reasonable compensation to the Plan Agent and his or her professionals not to exceed $75,000 per year, subject to increase as provided for in the Plan.

**D.    Creditors' Committee.**

The Committee shall remain in existence following the Effective Date and shall have the duties and responsibilities set forth in the Plan.

**E.    Distributions To Creditors.**

**1.    Establishment of Claims Trust Account.**

On or before the Effective Date, the Reorganized Company shall establish a separate, segregated bank account for the benefit of holders of Allowed Claims, which shall be the Claims Trust Account.  The Reorganized Company shall fund the Claims Trust Account with amounts adequate to make all payments due on the Effective Date.

**2.    Funding of Claims Trust Account.**

No later than three Business Days after the close of each full calendar quarter following the Effective Date, the Reorganized Company shall deposit the portion of the Quarterly Payment for

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

which it is responsible into the Claims Trust Account; provided, however, that in any quarter in which the deposit of the Quarterly Payment to the Claims Trust Account would, in the Reorganized Company's reasonable opinion, result in a reduction of the WCR, then, following consultation with and receipt of written approval of the TPL Board as to such said reduction, the Quarterly Payment for that quarter shall be reduced accordingly. Such reduction shall not constitute a default under the Plan; provided, however, that the Reorganized Company has deposited the aggregate of at least 20% of Adjusted Gross Revenue during each calendar quarter. The Disbursing Agent shall distribute from the Claims Trust Account the sums specified on the Quarterly Distribution Report on the Distribution dates specified in the Plan.

Distribution of proceeds, if any, received from portfolios other than the MMP Portfolio, CORE Flash Portfolio, Fast Logic Portfolio and Chipscale Portfolio, shall be subject to the commercialization agreements and inventor agreements applicable to such portfolio, and shall be distributed in accordance with the schedule on **Exhibit "C"** attached hereto. TPL shall retain 80% of net proceeds received from such other portfolios; provided that doing so does not breach of any agreement with respect to such portfolio.

### 3. Quarterly Distribution Report.

No later than five Business Days after the close of each full calendar quarter following the Effective Date, the Reorganized Company shall deliver the Quarterly Distribution Report to the TPL Board and the Plan Agent and any creditor who has requested a copy of such Quarterly Distribution Report. The Plan Agent, in its capacity as Disbursing Agent, shall make Distributions from the Claims Trust Account in the sums and to the addresses specified on the Quarterly Distribution Report.

### 4. Timing of Distributions.

Except as otherwise provided in the Plan, the Disbursing Agent shall pay all Class 1 and Class 5 Allowed Claims on the Effective Date, or as otherwise agreed by a particular Class 1 or Class 5 creditor with the Reorganized Company. Failure to pay any Allowed Claim in Class 1 or Class 5 as required under the Plan shall constitute a Plan default unless the Disbursing Agent pays the amount due on account of such Allowed Claim as required under the Plan within thirty days of

the Effective Date, unless otherwise agreed by a particular Class 1 or Class 5 creditor with the Reorganized Company.

Except as otherwise provided in the Plan, the Disbursing Agent shall make Distributions of the Quarterly Payment from the Claims Trust Account no later than the tenth Business Day following the end of each calendar quarter, in the sums specified in the Quarterly Distribution Report.

The Reorganized Company shall continue to operate and the Disbursing Agent shall pay Allowed Claims in Classes 6 and 7 in full with interest, according to the terms of the Plan for a period of seven years after the Effective Date, or, after consultation with and obtaining written approval from the TPL Board, an additional period of time not to exceed six months; provided, however, that such period may be extended further by order by the Bankruptcy Court.

### 5. Distribution Addresses; Undeliverable Distributions.

Unless a Creditor has provided the Reorganized Company with written notice of a different address, Distributions shall be sent to Creditors at the address set forth in the proofs of Claim filed with the Claims Agent. If no proof of Claim is filed with respect to a particular Claim, the Distribution shall be mailed to the address set forth in the Schedules filed by the Debtor. If any Creditor's Distribution is returned as undeliverable, no further Distributions to such Creditor shall be made unless and until the Reorganized Company is notified of such Creditor's then current address, at which time all required Distributions shall be made to such Creditor; provided however that the Disbursing Agent shall make reasonable efforts to locate any Creditor whose distribution is returned as undeliverable . Undeliverable Distributions shall be held by the Disbursing Agent until such Distributions are claimed; provided, however, that all claims for undeliverable Distributions must be made within ninety (90) days following a Distribution. After such date, all unclaimed Distributions will revert to the Reorganized Company and deposited into the Claims Trust Account, and the Claim of any Creditor or successor to such Creditor with respect to such Distribution shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 36 of
67

### 6. Withholding Taxes.

Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent shall deduct any federal, state or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate. The Disbursing Agent shall be permitted to withhold a Distribution to any Creditor who has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent shall comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

### 7. Fractional Amounts.

Notwithstanding anything contained herein to the contrary, the Reorganized Company shall not be required to make Distributions of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### 8. De Minimis Distributions.

Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim; provided, however, that Distributions that would otherwise be made but for this provision shall carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled to is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

### 9. Time Bar to Cash Payments.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from the date of issuance thereof. Requests for re-issuance of any check shall be made directly to the Reorganized Company by the holder of the Allowed Claim to whom such check was originally issued. Any request for re-issuance in respect of such voided check shall be made on or before ninety (90) days after the date of the issuance of such check. After such date, all Claims with respect to any voided checks shall be discharged and forever barred, and such funds shall revert to the Reorganized Company and deposited into the Claims Trust Account.

### 10. Modification of Payment Terms.

At any time after the Effective Date, (a) the Reorganized Company may modify the treatment of any Class of Allowed Claims in a manner that is more favorable than provided by the Plan (e.g., the Reorganized Company may make more frequent payments to a Class or pay or cause to be paid all Classes sooner than contemplated by the Plan), provided that such treatment does not adversely impact any subordinate class or the ability of the Reorganized Company to perform its obligations under the Plan; and (b) the Reorganized Company may modify the treatment of any Allowed Claim in any manner adverse to the holder of such Claim with the prior written consent of the holder whose Allowed Claim is being adversely affected; provided, however, that any such modification shall be approved in writing by the affected claimant and the Reorganized Company.

### F. Articles of Organization/Operating Agreement.

After the Effective Date, the Reorganized Company, in consultation with the TPL Board, may amend and restate TPL's operating agreement as permitted by applicable law and in accordance with the terms of the Plan without further Bankruptcy Court approval, including, among other things and if required, amending such articles and operating agreement as of the Effective Date to comply with the requirements of Section 1123(a)(6) of the Bankruptcy Code which requires the inclusion in the Reorganized Company's charter a prohibition of the issuance of non-voting securities and requires, among other things, the distribution of voting power equitably among the classes of voting securities.

### G. Authority Of Reorganized Company.

On and after the Effective Date, the CEO shall be appointed Estate representative pursuant to the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Except as otherwise provided by the Plan, the Reorganized Company, by and through its CEO and any designee(s) in consultation with and after obtaining written approval from the TPL Board and the Committee as applicable, shall be responsible for and have authority to: (a) settle, resolve and object to Claims; (b) commence suit on the Retained Claims or refer any Retained Claims to the Plan Agent; (c) pay all fees due under 28 U.S.C. § 1930; (d) file any post-Confirmation reports required by the Plan or the Bankruptcy Court; (e) retain, employ and utilize such Professionals as may be necessary without

further approval of the Bankruptcy Court; (f) sell or dispose of assets; (g) abandon property of the Estate that is determined to be burdensome or of inconsequential value; (h) do all things necessary and appropriate to fulfill the duties and obligations of the Reorganized Company under the Plan and to fully administer the Bankruptcy Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules; and (i) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Bankruptcy Case.

In addition, on the Effective Date, the Reorganized Company shall be substituted as successor to the Debtor and its Estate in all actions, contested matters and adversary proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims. The Reorganized Company shall have no obligation to pursue any affirmative claims on behalf of the Debtor or its Estate other than the Brown Appeal and any resulting trial, and any such claims may be abandoned or waived at the discretion of the Reorganized Company subject to the approval of the TPL Board if required other than the Brown Appeal; provided that if Browns sign the Release, the Brown Appeal will be dismissed.

### H.    Responsible Person.

From and after the Effective Date, the CEO shall be the Responsible Person for the Reorganized Company and shall be fully empowered to execute all documents, agreements and instruments implementing the Plan without further order of the Bankruptcy Court or further action by the managers or member(s) of the Reorganized Company, subject to the terms of the Plan and any other requirements for TPL Board approval as required by the TPL Board. Any such document, agreement or instrument executed and delivered by the Responsible Person shall be conclusively deemed duly executed by the Reorganized Company without need for further corporate action or order of the Bankruptcy Court. After the Effective Date, the Responsible Person shall be entitled to act as the Estate representative for purposes of implementing and administering the Plan without need for further corporate action or order of the Bankruptcy Court.

The Reorganized Company shall, in consultation with and after obtaining written approval from the TPL Board, pay reasonable compensation to the CEO subject to the cap on WCR.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

## I.    Disbursing Agent.

The Disbursing Agent for all Distributions shall be the Plan Agent.  The Reorganized Company, in consultation with and after written approval from the TPL Board, may relieve the Plan Agent from its responsibilities as the Disbursing Agent and may appoint a successor Disbursing Agent at any time upon providing fifteen (15) days' notice to the Notice Parties pursuant to the Notice Procedure.  In the absence of a timely objection by a Notice Party to the proposed Disbursing Agent within such fifteen (15) day period, the Reorganized Company may proceed with the appointment of the proposed Disbursing Agent.  Any timely objection to the appointment of a Disbursing Agent shall be set for hearing before the Bankruptcy Court on no less than twenty-one (21) days' notice to the Notice Parties.  Any successor Disbursing Agent shall be entitled to receive reasonable compensation.  Unless otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall serve without a guaranty or fiduciary bond.

## J.    Taxes.

The Reorganized Company shall file or cause to be filed in a timely manner any and all tax returns and pay in a timely manner any and all taxes (including, but not limited to, income, payroll, property and business) arising out of the operations of the Debtor and/or the Reorganized Company except with respect to distributions made by the Reorganized Company to the Member.  Except with respect to taxes assessed against Leckrone as TPL's Member for pre-petition activity by TPL which are unrelated to any action taken by TPL as the Debtor, the Reorganized Company shall pay as and when due all taxes attributable to any  action taken by TPL as the Debtor or the Reorganized Company which are attributed to or assessed against the TPL Member including, but not limited to, taxes arising from out of the ordinary course of business sales of assets, changes in entity form, amendments of prior tax returns and/or the recharacterization of  transactions and shall indemnify and hold the TPL Member harmless with respect thereto.  The Reorganized Company shall not be liable for taxes assessed against Leckrone as TPL's Member for pre-petition activity by TPL which are unrelated to any action taken by the Reorganized Company, the TPL Board, the CEO, the

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 40 of
67

Committee or the Plan Agent. Leckrone shall be responsible for such taxes that and shall indemnify and hold harmless the Reorganized Company with respect thereto. The Reorganized Company shall, prior to taking any action that may result in any such tax liability, supply the TPL Member with an analysis of the anticipated tax effect of any such action as well as the ability of the Reorganized Company to pay the tax liability as and when due.

The TPL Member shall notify the Reorganized Company within two business days of the delivery of the analysis if there is any disagreement on the amount of taxes or ability of the Reorganized Company to pay them as and when due. In the event of a timely notification, the Reorganized Company may set a hearing in the Court on no less than three (3) days' notice. An order of the Bankruptcy Court shall be required prior to the Reorganized Company taking the proposed action unless the tax liability in question is less than $15,000 and funded by the Reorganized Company in advance. Each of the Reorganized Company or TPL and Leckrone or the TPL member shall submit its position in writing to the Court on or before the hearing date, and the foregoing persons and entities agree to an accelerated hearing upon three ~~seven~~ days' notice subject to the Court's availability.

K.      **Employee Benefit Plans.**

All Benefit Plans in effect as of the Effective Date shall be continued by the Reorganized Company, subject to the rights of the Reorganized Company to modify its employee Benefit Plans from time to time pursuant to applicable non-bankruptcy law. Any obligations of the Debtor to indemnify any Person serving as a fiduciary of any Benefit Plan of the Debtor, under charter, by-laws, contract or applicable state law is deemed to be an executory contract and assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) and binding on the Reorganized Company. For the avoidance of doubt, Benefit Plans do not include any Insider Employee Compensation Contracts or any provisions thereunder for incentive compensation or otherwise.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

## L. Further Orders.

Upon motion by the Reorganized Company, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

## M. Post-Confirmation Employment of Personnel.

The Committee, the Reorganized Company and Plan Agent (the latter subject to an annual cap of $75,000 (subject to increase pursuant to the Plan)) may employ or contract with Persons and other Entities to perform, or advise and assist them in the performance of, their respective obligations under the Plan subject to the cap on WCR. The Reorganized Company, in consultation with and after written approval from the TPL Board, may, but is not required to, continue to employ the Debtor's Professionals for the purposes for which they were employed before the Confirmation Date, and for such additional purposes as the Reorganized Company may request, and the Reorganized Company, in consultation with and after obtaining written approval from the TPL Board, may employ such other Professionals as may be necessary to perform its responsibilities under the Plan.

## N. Post-Confirmation Compensation and Reimbursement of Professionals.

Any Professionals employed by the Reorganized Company, the Committee, or the Plan Agent (the latter subject to the annual cap of $75,000 and subject to CEO and TPL Board approval) after the Confirmation Date shall be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the cap on WCR and subject to the following:

Until the Bankruptcy Case is closed, each party requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties.

Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses shall be in writing (and sufficiently detailed to allow the party whose compensation is subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the party whose compensation is subject to the objection. Such an objection must be served within fifteen (15) days after service of the detailed statement.

If there is no objection to a party's requested fees and expenses within such fifteen (15) day period, the Reorganized Company shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Reorganized Company shall promptly pay the undisputed portion of such fees and expenses.

To the extent that an objection is timely served, the Responsible Person shall reserve monies in the amount of the disputed fees and expenses pending resolution of said objection.

Any objection to a request shall be resolved by either: (a) written agreement between the party requesting such fees and expenses and the objecting party; or (b) resolution of the disputed amount by the Bankruptcy Court pursuant to a Final Order. Resolution by the Bankruptcy Court shall be requested by motion filed and served on the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty-one (21) days' notice. Such motion may be filed by either the requesting party or the objecting party. Any opposition to the motion shall be filed and served no later than seven (7) days prior to the hearing.

Professionals employed by the Reorganized Company, the Committee or the Plan Agent shall not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

Following the closing of the Bankruptcy Case, the Professionals of the Reorganized Company, the Committee and the Plan Agent shall be entitled to payment in the ordinary course upon the submission of an invoice to the Reorganized Company and subject to written approval by the Committee; provided, however, that any disputes with respect thereto shall be resolved by the Bankruptcy Court upon reopening the Bankruptcy Case.

**O.    Notice Procedure.**

Whenever the Plan requires a Person to provide notice pursuant to the Notice Procedure, such Person seeking the particular relief shall be required to serve a written notice on the Notice Parties. Such Person shall be authorized to take the action proposed to be taken in such notice upon the expiration of the period specified in the Plan for such notice unless, before the expiration of the specified notice period, a recipient Notice Party, or a party in interest, has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection within thirty

40

(30) days after the filing of such objection and upon not less than twenty-one (21) days' notice to all Notice Parties. If any such objection is filed, the Person seeking the particular relief shall not take the proposed action unless the Bankruptcy Court approves such action or the objecting party withdraws the objection. Service by electronic filing pursuant to Local Rule 9013-3 shall be adequate for all notices and other pleadings filed with the Bankruptcy Court.

### P. Post-Confirmation Fees, Reports, and Final Decree.

#### 1. U.S. Trustee Fees.

Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any portion thereof), the Reorganized Company shall pay to the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6), the quarterly fee for such quarter plus any applicable interest until the Bankruptcy Case is converted or dismissed, or the Bankruptcy Court enters the Final Decree.

#### 2. Post-Confirmation Reports.

Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Company shall file a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee and serve a copy of said report on the Committee. Further reports shall be filed thirty (30) days after the end of each calendar quarter thereafter until the entry of the Final Decree, unless otherwise ordered by the Bankruptcy Court.

Failure to timely file the required reports may constitute a ground for the bringing of a motion to convert or dismiss the Bankruptcy Case, whichever is in the best interest of the creditors and the Estate, pursuant to Section 1112(b) of the Bankruptcy Code.

### Q. Final Decree.

At such time as all motions, contested matters and adversary proceedings have been finally resolved and the Bankruptcy Case is in a condition to be closed, the Reorganized Company shall file an application for the entry of a Final Decree to close the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules. Entry of a Final Decree may be sought by the Reorganized Company notwithstanding that all payments required by the Plan have not been completed, provided, however, that the Bankruptcy Case is determined by the Bankruptcy

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Court to be fully administered; provided further, that the Bankruptcy Court retains jurisdiction to hear all matters involving the further administration of the Plan until all holders of Allowed Claims have been paid in full or as otherwise agreed to or provided for under the Plan. The Reorganized Company shall serve the application for entry of a Final Decree on the Notice Parties. Pursuant to Local Rule, such application shall be considered by the Bankruptcy Court without a hearing unless within fourteen (14) days after the date of service of the notice, a party in interest files and serves a request for hearing.

## VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption of Executory Contracts and Unexpired Leases

Each of the following executory contracts shall be assumed by the Reorganized Company on the Effective Date to the extent each such contract is executory in nature, and Confirmation of the Plan shall effect such assumption: (1) the TPL/Moore/PTSC/PDS agreement dated January 23, 2013; (2) all agreements related to the MMP Portfolio to which TPL is a party, based on the resolution of all controversies existing between (i) PDS, TPL and Patriot and (ii) Alliacense, PDS and Agility have been resolved; (3) the IP Owners Commercialization Agreements, subject to the agreement of the IP Owners other than PDS to modify the IP Owners Commercialization Agreements to conform with the provisions of this Plan and the waterfall distribution set forth in **Exhibit "C"** hereto and to defer payment of all cure amounts, if any, to after all Allowed Claims have been paid in Classes 1, 3, 4, 5, 6A, 6B and 6C have been paid in full and as further set forth in the following four paragraphs; (4) the Alliacense Services Agreement, as amended by that certain Amended Alliacense Services and Novation Agreement dated July 23, 2014, subject to the agreement of Alliacense to defer payment of all cure amounts, if any, to after all Allowed Claims have been paid in Classes 1, 3, 4, 5, 6A, 6B and 6C have been paid in full; (5) agreements between TPL and Thunderbird; and (6) the Debtor's Insurance Policies.

The MCM Commercialization Agreement shall be modified as follows: as a condition of assumption, TPL shall, at the Effective Date, reconvey all right, title and interest in the CORE Flash portfolio on account of its license back to MCM. TPL will continue to commercialize and

42

negotiate licenses of CORE Flash patents and technology without change. It will earn precisely the same revenue it does under the current arrangement. MCM shall execute license agreements at the direction of TPL, and MCM will have no discretion to refuse to do so.

The reassignment of the CORE Flash Portfolio is conditioned upon MCM's subordination of any claims for cure to all Unclassfied Claims and Allowed Claims in Classes 1-6C herein without regard to whether the Bankruptcy Case remains in Chapter 11 or is converted to Chapter 7.

The TPL-HSM Commercialization Agreement shall be modified as follows: as a condition of assumption, TPL shall, at the Effective Date, reconvey all right, title and interest in the Fast Logic portfolio on account of its license back to HSM. TPL will continue to commercialize and negotiate licenses of Fast Logic patents and technology without change. It will earn precisely the same revenue it does under the current arrangement. HSM shall execute license agreements at the direction of TPL, and HSM will have no discretion to refuse to do so.

The reassignment of the Fast Logic Flash Portfolio is conditioned upon MCM's subordination of any claims for cure to all Unclassfied Claims and Allowed Claims in Classes 1-6C herein without regard to whether the Bankruptcy Case remains in Chapter 11 or is converted to Chapter 7.

All executory contracts assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan, shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Confirmation Order, and be binding on the parties thereto.

### B.    Defaults.

Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor or the Reorganized Company, as

applicable, shall, on or before the Effective Date: (a) cure, or provide adequate assurance that it will promptly cure, any such default; (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

C.    **Rejection of Executory Contracts and Unexpired Leases**.

Without admitting the validity of any other executory contracts and unexpired leases, the following executory contracts and unexpired leases of the Debtor are hereby rejected by the Debtor as of the Effective Date, and Confirmation of the Plan shall be deemed to constitute Bankruptcy Court approval of such rejection: (a) TPL's Service Agreement with Semiconductor Insights and (b) the Employee Compensation Contracts.

D.    **Rejection Claims**

The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Company, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.  With respect to any Rejection Claim that is timely filed after Confirmation, the holder of such Rejection Claim may elect treatment in Class 5 of the Plan by filing such election with the Bankruptcy Court with service on the Reorganized Company and its counsel at the addresses in the caption of the Plan no later than the Rejection Claims Bar Date, unless such date is extended by written agreement of the Reorganized Company.

E.    **Adding and Removing Executory Contracts and Unexpired Leases**

The provisions of this Article VIII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan; provided, however, that no such amendments shall in any way impact the Licenses or Licensees' rights or defenses thereunder, which shall be fully preserved in all respects, as set forth in this Plan.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

#### F.     Excluded Contracts

The Reorganized Company shall retain the right to reject any Excluded Contracts, but not any Licenses or related commercialization agreements, prior to the Confirmation Hearing. Following written notice to the affected party, the Reorganized Company may reject any Excluded Contracts without further order of the Bankruptcy Court (with the affected party to the Excluded Contract having 30 days after notice of rejection to file a Rejection Claim, if any).

Excluded Contracts which have not previously and expressly been assumed or rejected by TPL by final Order of the Court are deemed under such circumstances to have "passed through" the bankruptcy and will remain in effect without modification, unless subsequently rejected in accordance with this Section.

**FOR THE AVOIDANCE OF DOUBT, THE LICENSES ARE DEEMED TO NOT BE EXECUTORY CONTRACTS AND ARE THEREFORE NOT SUSCEPTIBLE TO REJECTION BY THE REORGANIZED COMPANY AND ARE DEEMED TO HAVE "RIDDEN THROUGH" THE BANKRUPTCY WITHOUT PREJUDICE OR ADVERSE EFFECTS OF ANY KIND IN ACCORDANCE WITH ARTICLE XIV OF THE PLAN.  EACH LICENSEE SHALL HAVE THE SAME UNIMPAIRED RIGHTS, CLAIMS, INCLUDING OFFSETTING OR RECOUPMENT CLAIMS, INTERESTS, AND DEFENSES, AS SUCH PARTY WOULD HAVE HAD THERE BEEN NO BANKRUPTCY CASE OR PLAN. NOTWITHSTANDING ANY PROVISION OF THE PLAN OR CONFIRMATION ORDER, APPLICABLE LAW SHALL DETERMINE WHETHER AND TO WHAT EXTENT ANY LICENSEE'S PROOF OF CLAIM MAY BE AMENDED.PROOFS OF CLAIM; OBJECTIONS**

#### A.     Time for Filing Proofs of Claim.

The applicable Claims Bar Date for most pre-petition Claims was July 23, 2013, and for governmental units was September 16, 2013.

#### B.     Ownership and Transfers of Claims.

For purposes of any Distribution under the Plan, the Reorganized Company shall not have any obligation to recognize any transfer of Claims occurring thirty (30) days or more after the Effective Date.  The Reorganized Company, the Disbursing Agent, the Plan Agent, the CEO, the Committee, and their Professionals (as applicable) shall be entitled to recognize and deal for all purposes with only those claimholders of record stated on the claims docket maintained by the Bankruptcy Court, and if none, on the Debtor's Schedules.

ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE REORGANIZED
COMPANY THIRTY (30) CALENDAR DAYS OR MORE AFTER THE EFFECTIVE DATE
MUST ARRANGE WITH THE TRANSFEROR UPON ACQUISITION OF THE CLAIM,
TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED.
NONE OF THE REORGANIZED COMPANY, THE DISBURSING AGENT, OR THE
COMMITTEE SHALL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF
CLAIMS THIRTY (30) CALENDAR DAYS OR MORE AFTER THE EFFECTIVE DATE.

**C.    Amendments to Claims.**

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim may not be amended later than the applicable Claims Bar Date except for amendments to proofs of Claim to decrease the amount or priority thereof; provided, however, that the foregoing deadline shall not afford a claimant a right to amend a Claim that, pursuant to applicable law, is not subject to amendment.

**D.    Claim Objections.**

An objection to a Claim shall be filed no later than the Claims Objection Deadline. An objection to an Administrative Claim shall be filed no later than the Administrative Claims Objection Deadline. Except as otherwise provided in this Section, any party in interest may file an objection to a Claim or an Administrative Claim. The Reorganized Company shall have the responsibility to review all proofs of Claim filed against the Debtor, to file objections as appropriate and to resolve Disputed Claims. With respect to Claims asserted by current or former Insiders, officers, directors and employees of the TPL, and any affiliated or related Persons and Entities thereto (including, without limitation, the Insider Employee Compensation Claims and the Insider 13% Claims), the Reorganized Company may refer any objections to such Claims to the Plan Agent; provided, however, that any claimant who has agreed to subordinate its Claim pursuant to the Plan and accepted the Plan shall not be deemed disputed or subject to any objection, except as otherwise provided in the Plan with respect to the Employee Compensation Claims of Robert Neilson and Mike Davis.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

As set forth above at Section VII-C, the Plan Agent shall investigate and, if appropriate in her/his business judgment, object to any or all of the Committee Claims. The Plan Agent shall act independently (i.e., without direction from the Reorganized Company or the Committee) in investigating and objecting to the Committee Claims. Other than the Debtor or the Reorganized Company whose rights to file objections to the Committee Claims are expressly preserved, the Plan Agent shall have the sole authority to investigate and if appropriate file objections to the Committee Claims.

### E. Disputed Claims.

Subject to the next sentence, any Cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder shall be set aside by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall distribute the Cash deposited into the Disputed Claims Reserve Account on account of the Allowed Amount of such Disputed Claim. To the extent that Cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim exceed the Cash distributable with respect to the Allowed Amount of such Claim, such excess cash shall be returned to the Claims Trust Account for the funding of the next Quarterly Payment.

### F. Distributions

Notwithstanding any provision of the Plan specifying a date for payments or Distributions of consideration, payments and Distributions with respect to any Claim that on such date is disputed, contingent, unliquidated or unknown as to amount, will not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, or an agreement is reached between the parties, whereupon appropriate Distributions shall be made promptly in accordance with the preceding paragraph. Notwithstanding the foregoing, any undisputed portion of a Disputed Claim shall receive a Distribution on the undisputed portion of the Claim at the same time as Allowed Claims in the same Class pursuant to the Plan.

47

# VIII.     RETAINED CLAIMS

## A.     Prosecution of Retained Claims

Except as otherwise provided herein, the Reorganized Company shall collect and prosecute all of the Retained Claims.  In determining whether and how to collect and prosecute the Retained Claims on behalf of the Reorganized Company, the CEO shall consult with the TPL Board and shall not compromise any Retained Claim, file suit to collect any Retained Claim, or make any other major decision with regard thereto without the written consent of the TPL Board or an order of the Bankruptcy Court.

With respect to any Retained Claim against any member of the Committee, the Plan Agent shall independently collect, investigate and prosecute all such Retained Claims.

In addition to the foregoing, the Plan Agent is hereby appointed as representative of the Estate pursuant to Section 1123 of the Bankruptcy Code with respect to the prosecution and liquidation of any Retained Claim against current or former insiders, officers, directors and employees of the TPL, and any affiliated or related Persons and Entities thereto unless released by the terms of this Plan as a result of an affirmative vote and agreement to subordinate to Class 1-6C by this Claimant.  The terms of employment of any Professional retained by the Plan Agent relative to the Retained Claims shall be subject to the approval of the Reorganized Company, or absent such approval, order of the Bankruptcy Court.  The Reorganized Company shall have the right to be heard relative to all such matters.

Approval of the Bankruptcy Court shall not be required for the settlement or other resolution of any Retained Claims; provided, however, that the Reorganized Company, the Committee and the Plan Agent, as applicable, shall comply with the Notice Procedure before settling or resolving any Retained Claim where the amount at issue exceeds $10,000.

In the event that the Bankruptcy Case is converted to Chapter 7, the release to the IP Owners is binding on the Chapter 7 trustee and continues without regard to the conversion, as is the subordination of the Released Parties.

48

**B.    Preservation of Claims and Rights.**

As the process of investigating and evaluating the Debtor's transactions and records remains ongoing, such process may result in additional claims against persons not yet identified herein and may also result in other claims against Persons identified herein in addition to those identified at this point in time.

The Bankruptcy Estate, the Committee, the Plan Agent, the Debtor and the Reorganized Company, as applicable, shall retain after Confirmation and after the Effective Date, all powers granted by the Bankruptcy Code and the Bankruptcy Rules for, without limitation, recovery of property, avoidance of liens, and objection to, and/or subordination of, Claims.  Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim, cause of action or claim for relief held by the Committee, the Plan Agent, the Bankruptcy Estate, the Debtor or the Reorganized Company unless the Plan or Order of Confirmation specifically and unambiguously so provides.  The failure of the Plan to refer to any particular Retained Claim is not and will not be construed as a settlement, compromise, waiver, or release of any such Retained Claim.  Except as otherwise provided in this Plan. all Retained Claims are hereby preserved and will continue to remain valid after the Effective Date.

Except as provided in the Plan or the Order of Confirmation, any and all of claims, Retained Claims, causes of action and rights against any and all third parties, whether such claims, Retained Claims, causes of action or rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or the date Distributions are made, held by the Committee, the Bankruptcy Estate, the Plan Agent, the Debtor and the Reorganized Company, as applicable, are reserved to the fullest extent allowable under applicable law, as such law may be extended or interpreted subsequent to the Effective Date.  Except as otherwise provided in the Plan, including, without limitation, in Section XIII-E below, the entry of the Confirmation Order will not constitute *res judicata* as to any such claims or otherwise bar, estop or inhibit any actions by the Committee, the Plan Agent, the Debtor, the Bankruptcy Estate or the Reorganized Company upon any claims they hold as identified herein or otherwise.

49

Subject to the Reorganized Company's business judgment, in consultation with the TPL Board, regarding the pursuit of any particular Retained Claim (which may entail evaluation, among other things, of the cost of pursuing such Retained Claim), the Reorganized Company, the TPL Board, and, with respect to any Retained Claims against any member of the Committee, the Plan Agent shall be authorized to pursue all Retained Claims. Without limiting the generality of the scope of the previous paragraphs, the Retained Claims identified at this time include: (a) the Patent Actions which include, without limitation, any and all infringement claims before the ITC and various United States District Courts for the Eastern District of Texas, the District of Delaware and the Northern District of California involving the MMP Portfolio, the CORE Flash Portfolio and the Fast Logic Portfolio; (b) any and all claims and causes of action identified in the Debtor's Schedules and Statement of Financial Affairs; (c) the Browns/TPL Appeal; (d) the TPL/Moore 'Roe' Litigation; (e) any and all actions against Venkidu, Onspec, Chipscale and Indigita, (f) any and all actions against all present and past insiders and senior management of TPL, including without limitation, Dwayne Hannah, Mike Davis, Susan Anhalt, Mac Leckrone, Leckrone, Janet Neal, Nick Antonopoulus, Interconnect Portfolio, John Leckrone, Alliacense, Eric Saunders, Michael Montvelishsky, William Martin and any and all entities wholly-owned or partially owned by Leckrone, and (g) any and all actions set forth on Exhibit "F" to the Disclosure Statement. Actions may include, without limitation, whether asserted directly or under an alter ego theory, actions to subordinate, recharacterize and/or avoid claims, to challenge the validity of liens, to recover preferences and fraudulent conveyances, for breach of fiduciary duty, for usurpation of corporate opportunity, for unfair business practices, for conversion, for misappropriation of funds, for fraud and for misrepresentation.[1]

## IX.     **REQUEST FOR CONFIRMATION**

Based and conditioned upon the resolution of all controversies between and among (i) Alliacense, PDS and Agility and (ii) TPL, Patriot and PDS by prior written agreement, the Debtor

---

[1] Retained Claims against the Entities listed in sub-section (f) are released claims under the Plan to the extent such Entities voluntarily subordinate their Claims (other than wage Priority Claims) pursuant to the provisions of the Plan and vote in favor of of the Plan if they are eligible to vote.

50

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

and the Committee, as the proponents of the Plan, request Confirmation of the Plan. In the event any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majorities provided in Section 1126(c) of the Bankruptcy Code, the Debtor and the Committee hereby request that the Bankruptcy Court confirm the Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## X.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of this Plan, including matters or proceedings that relate to:

(a)    Proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Committee, the Plan Agent, the Bankruptcy Estate, the Debtor or the Reorganized Company against any Person, including the recovery of property and subordination of Claims;

(b)    Allowance, disallowance, determination, liquidation, classification, subordination, estimation, or establishment of the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(c)    Requests for the payment of Claims entitled to priority under Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses for Professionals to the extent Court approval therefore is required under the Plan or the Confirmation Order;

(d)    The title, rights or interests of the Debtor or the Reorganized Company in any property, including the recovery of all assets and property of the Bankruptcy Estate wherever located;

(e)    Any right, power, action, or duty of the Committee, the Plan Agent, the Bankruptcy Estate, the TPL Board, the Debtor or the Reorganized Company under the Plan;

(f)    Any determination or estimation necessary or appropriate under Section 505 of the

51

Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor or the Reorganized Company for periods through the end of the fiscal year in which the Effective Date occurs, including determination of the amount of taxes, net operating losses, tax attributes, tax benefits, tax refunds, and related matters of the Debtor or the Reorganized Company;

(g)     Any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor or the Reorganized Company is a party and to hear, determine and, if necessary, liquidate, any claims arising from, or cure amounts related to, such assumption or rejection;

(h)     Resolution of controversies and disputes, including the correction of any mistake, defect, or omission regarding consummation, interpretation or enforcement of the Plan, the Confirmation Order, and any agreements referred to in the Plan or executed in contemplation of or to implement the Plan;

(i)     Resolution of any motions, adversary proceedings (including Retained Claims), contested or litigated matters, and any other matters, and to grant or deny any applications or motions involving the Committee, the TPL Board, the Plan Agent, the Debtor or the Reorganized Company that may be pending on the Effective Date;

(j)     Entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(k)     Modification of or amendments to the Plan before or after the Effective Date under Section 1127 of the Bankruptcy Code or modification of the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(l)     The entry of an order including injunctions, necessary to enforce the title, rights, and

powers of the Committee, the Committee, the Plan Agent, the TPL Board, the Bankruptcy Estate, the Debtor or the Reorganized Company and the purposes and intent of the Plan, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(m)     Implementation of the provisions of the Plan and entry of such orders (i) in aid of Confirmation of the Plan or (ii) as are necessary or appropriate if the Order of Confirmation is for any reason modified, stayed, reversed, revoked, or vacated;

(n)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order except as otherwise provided in the Plan, or as otherwise provided under the Bankruptcy Code or other applicable law;

(o)     Determine any claim of any Person of any nature whatsoever against the Professionals arising in or related to the Bankruptcy Case; or

(p)     The entry of a Final Decree closing the Bankruptcy Case, including provisions for injunctive relief as may be equitable, consistent with Bankruptcy Rule 3022 and or retention of jurisdiction for the Bankruptcy Court for purposes of this Article XII.

If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article XII of the Plan.

## XI.     EFFECT OF CONFIRMATION

As of the Confirmation Date, the effect of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

### A.     Binding Effect of Plan.

The confirmed Plan shall bind the Debtor, the Reorganized Company, any Entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is Impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Case: 13-51589     Doc# 637     Filed: 01/08/15     Entered: 01/08/15 17:57:24     Page 56 of 67

rejected the Plan.

**B.    Vesting Of Property.**

Subject to the provisions of this Plan and the Order of Confirmation, the property of the Debtor and the Bankruptcy Estate shall vest in the Reorganized Company on the Effective Date.  As of the Effective Date, all such property shall be free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders except as otherwise provided in the Plan. Revesting does not modify the nature of any contracts assumed pursuant to the Plan.

**C.    Discharge.**

Except as otherwise provided in the Plan or the Order of Confirmation, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Company, the Bankruptcy Estate, or any assets or property of the Debtor, the Reorganized Company and the Bankruptcy Estate.  Except as provided in the Plan or the Order of Confirmation, pursuant to Bankruptcy Code § 1141(d), Confirmation forever discharges the Debtor and the Reorganized Company from any and all Claims and all debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.

**D.    Exculpation.**

To the fullest extent permitted under applicable law, none of the Bankruptcy Estate, the Reorganized Company, the Manager, the Committee, the members of the Committee (solely in their capacity as such), the TPL Board, the members of the TPL Board (solely in their capacity as such) and their respective officers, directors, members, managers, employees, advisors, attorneys, agents, or direct and indirect affiliates will have or will incur any liability to any holder of a Claim or

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 57 of
67

Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representative, financial advisors, attorneys or affiliates or any of their predecessors, successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the negotiation and pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan excluding the obligations of the Debtor, the Reorganized Company, the Committee or the TPL Board under the Plan and any acts or omissions of any Person covered by this Section constituting willful misconduct, gross negligence, fraud or bad faith, and in all respects such Persons shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

### E. Release of Claims and Compromise of Controversy

Confirmation of the Plan shall constitute and effect a full release of all Avoidance Actions, claims, causes of action and claims for relief against the Released Parties who vote to accept the Plan which, among other things, provides for subordination of the Claims of the Released Parties, whether or not any of the Released Parties execute the Release except that, as to Daniel E. Leckrone if the Bankruptcy Case is converted to Chapter 7 after Confirmation, the release of claims shall be undone automatically, as shall any subordination of Claims or liens held by Leckrone, without further order of the Bankruptcy Court. The Chapter 7 trustee shall have the ability to pursue and all claims against Leckrone. Confirmation also effects a mutual release of the Released Claims of the Estate and Reorganized Company as to all parties who execute the Release in substantially the form attached hereto as **Exhibit "E."**

The release of the Released Parties effectuated by Confirmation of the Plan is a compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019. **The consideration for the compromise is the subordination of Claims and liens by all of the Released Parties who vote in favor of the Plan to all unclassified Claims and Allowed Claims in Classes 1-6C.**

Case: 13-51589    Doc# 637    Filed: 01/08/15    Entered: 01/08/15 17:57:24    Page 58 of 67

### F. Injunction.

As of the Confirmation Date, all Persons or Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim or debt as a liability of the Bankruptcy Estate or the Reorganized Company to the fullest extent permitted by Bankruptcy Code Section 524.

### G. Preservation of Insurance.

The discharge and release from Claims as provided in the Plan, except as necessary to be consistent with the Plan, and Confirmation of the Plan do not diminish or impair the enforceability of any insurance policy that may cover claims against the Debtor, the Bankruptcy Estate, the Reorganized Company or any other Person.

The Reorganized Company shall assume the Debtor's Insurance Policies on the Effective Date. To the extent permitted under applicable law, and except as otherwise provided in the Plan, all insurance policies in full force and effect prior to the Effective Date shall remain in full force and effect and shall continue to cover claims against, without limitation, the Debtor, the Bankruptcy Estate, the Reorganized Company, the CEO, the TPL Board or any other Person, as applicable.

### H. Reservation of Powers.

The Reorganized Company shall retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor in possession, including those with respect to the recovery of property and objections to, and/or subordination of, Claims and Interests.

///

## XII. MISCELLANEOUS

### A. Injunctions and Stays.

Unless otherwise provided, all injunctions or stays arising under or entered during the Bankruptcy Case under Section 105 or Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### B. No Admissions.

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Bankruptcy Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Bankruptcy Estate.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall: (a) be deemed to be an admission with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claim, Interest, or any claims held by the Bankruptcy Estate, Creditors, or the Committee; or (c) prejudice in any manner the rights of the Bankruptcy Estate, Creditors, or the Committee in any further proceedings.

### C. Revocation of the Plan.

The Committee and the Debtor reserve the right to revoke or withdraw the Plan before the Confirmation Date.

### D. Modification of Plan.

The Committee and the Debtor may jointly propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.

In the event that Classes entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Committee and the Debtor reserve the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a).

After the Confirmation Date, the Reorganized Company may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

### E. Saturday, Sunday and Legal Holiday.

If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

## F.    Plan Interpretation.

The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular shall be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders. References to the Debtor shall also include the Reorganized Company (or vice versa) as the context requires. All exhibits, if any, attached to the Plan are, by this reference, hereby incorporated into the Plan. All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

## G.    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, the Reorganized Company, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to California's choice of law provisions.

## H.    Setoff/Recoupment.

The Reorganized Company may, but is not required to, setoff or recoup against any Claim or Interest with the consent of the affected claimant and the payments or other Distribution to be made under the Plan in respect of such Claim or Interest, claims of any nature whatsoever that arose before the Petition Date that the Debtor may have against the holder of such Claim or Interest to the extent such claims may be setoff or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by the Bankruptcy Estate or the Reorganized Company of any claim that they may have against such Person.

## I.    Waiver.

After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived in writing only by the party or parties entitled to the benefit of the term to be waived.

58

## J.     Notices.

Except for service by electronic filing as permitted by Section VII-P of the Plan, all notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by first class mail, subject to any changes of addresses, notices of which shall be filed with the Bankruptcy Court, the following:

If to the Debtor or the Reorganized Company:

      Technology Properties Limited LLC
      Attn: CEO
      3000 Scott Blvd., #109
      Santa Clara, CA 95054

With a copy to:

      Robert G. Harris
      Binder & Malter, LLP
      2775 Park Avenue
      Santa Clara, CA 95050

If to the Committee:

      Committee
      Attn: Marcie Brown
      4290 Manuela Way
      Palo Alto, CA  94306

With a copy to:

      Robert A. Franklin
      Dorsey & Whitney LLP
      305 Lytton Avenue
      Palo Alto, CA 95014

and if to a holder of an Allowed Claim, at the address set forth in its proof of Claim filed in the Bankruptcy Case, or if none, at its address set forth in the Schedules.  Notices shall be deemed given when delivered or deposited in the United States mail.  Any Person or Entity may change the address at which such Person or Entity is to receive notices under the Plan by filing its change of address with the Bankruptcy Court and serving the Debtor or the Reorganized Company and its counsel at the addresses provided in this Section.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

**K.     Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have: (i) against any other party in interest; or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor, except with respect to Confirmation of the Plan.

**L.     Severability**

Should any term or provision of the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provisions of the Plan.

**XIII.     DEFAULT PROVISIONS**

The Reorganized Company and Plan Agent shall produce an annual report listing the Reorganized Company's income, expenses, and dividends paid to creditors under the Plan.   The report may be obtained by submitting a written request to the Plan Agent and shall be available solely to any creditor holding an Allowed Claim at the time of the request.  The first report shall be produced each year, 30 days after the one-year anniversary of the Effective Date.

If the Reorganized Company defaults in the performance of any of its material obligations under the Plan, and does not cure such default within a period of 30 days after receipt of written notice of such default from any party in interest affected by the alleged default, then such party in interest may move the Bankruptcy Court, upon notice to the Notice Parties and after opportunity for a hearing, for an order directing the Reorganized Company to perform such material obligations.  If

60

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

the Reorganized Company fails to perform any such material obligations within 21 days, any party in interest, including, but not limited to, the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the executory provisions of the Plan shall terminate excluding Article XIV which shall survive notwithstanding any default or associated conversion to Chapter 7, and all property of the Reorganized Company shall vest in the Chapter 7 estate. Such property shall be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Reorganized Company, may oppose any such motion.

In the event that: the Plan fails because the Effective Date fails to occur by the deadline; the Plan is revoked; the Plan is modified (without the consent of the IP Owners); the Bankruptcy Case is dismissed or converted, or a second voluntary or involuntary case is filed then the following provisions of the Plan terminate upon the failure of the Plan:

a. The subordination of the Claims of Daniel E. Leckrone and interest related thereto as well as any release provided to Mr. Leckrone under the Plan; Section IV B, F, G and H;

b. Control of the Debtor by the Committee-appointed CEO and TPL Board instead of the TPL Member appointed Manager; Section VI B and H; and,

c. The modification under or in connection with the Plan of any IP Owners Commercialization Agreements; Section VII A.

In addition, without prejudice due to the passage of the Administrative Claim Bar Date, upon failure of the Plan, the IP Owners may assert Chapter 11 Administrative Claims; provided, however, that all such Claims shall be subordinate to the allowed fees and costs awarded to Estate Professionals for pre- and post-confirmation services rendered.

61

# XIV.    OVERRIDING PROTECTIONS FOR LICENSEE PARTIES

**A.    Scope and Intent of This Article.** As a means of addressing the Licensee Objectors' concerns and objections, this Article is included to effectuate the parties' intent to eliminate any adverse effects or prejudice of the Plan or Confirmation Order on the Licensees' Licenses, claims, rights, interests and defenses. This Article XIV shall apply comprehensively to preserve all Licensees' rights, licenses, claims, interests and defenses, as described herein, notwithstanding any other provision of the Plan or the Confirmation Order or the operation of the Bankruptcy Code. To the extent any direct or indirect conflict exists between this Article and any other provision of the Plan or Confirmation Order, this Article shall control. As used in this Article, the terms "rights," "claims," "interests" and "defenses" shall be used in their broadest and most comprehensive senses. Nothing herein shall expand or change the terms or scope of any License or allow any transfer of any right or interest under any License beyond what is permitted under such License.

**B.    Confirmation Order.** The Confirmation Order shall incorporate and reaffirm this Article XIV in its entirety, together with the definitions used herein. Whether or not any IP Owner objects to or supports the Plan, or votes for or against the Plan, the Confirmation Order shall prevent such IP Owner from defeating, violating or disputing any of the Licensees' rights, licenses, interests, defenses or other benefits under such parties' respective Licenses or this Article XIV.

**C.    Amendments to Article XIV.** This Article (and definitions used herein) shall not be amended, modified or otherwise adversely affected, directly or indirectly, from other Plan or Confirmation Order amendments, without the prior written consent of each affected Licensee Objector and the IP Owners.

**D.    No Adverse Impact On Licenses.** Notwithstanding any other provision of the Plan or Confirmation Order, the Licenses, and the rights, claims, including offsetting or recoupment claims, interests and defenses of each Licensee thereunder, shall ride through this Bankruptcy Case without rejection, prejudice or adverse effects of any kind, including on account of Section 1141. All Licenses shall remain in full force and effect, and continue to be valid, binding, and enforceable in accordance with their terms, against TPL, the Reorganized Company, and all applicable IP Owners and their successors and assigns as if there had been no Bankruptcy Case or Plan or

62

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

Confirmation Order, and neither TPL's reorganization nor exit from bankruptcy shall affect such validity and enforceability of the Licenses.

No act or omission of the Committee, TPL, estate representative, other proponent of any confirmed plan of reorganization, or Reorganized Company (such as rejection of or failure to assume any executory contract) changes, impairs, or has the effect of stripping or undermining, whether by Section 1141 or otherwise, any rights, interests, claims, licenses, or defenses under the Licenses that existed before or independent of the Bankruptcy Case, or that were executed prior to the Effective Date. To the extent permissible by otherwise applicable law, the Confirmation Order shall estop, enjoin, and bar the Committee, TPL, estate representatives, any other proponent of any confirmed plan of reorganization, and the Reorganized Company, and each of their respective successors and assigns, from taking any action to disrupt or otherwise invalidate or challenge the Licenses and the Licensees' rights, offsetting or recoupment claims, interests, property or defenses thereunder. Nothing in the Plan or in the Confirmation Order shall be deemed to restrain, enjoin, stay or otherwise obstruct the enforcement, exercise or defense by any party to a License after the Effective Date of any of their licenses, rights, offsetting or recoupment claims, interests, property or defenses.

E. **No Change For Patent Actions.** Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan and Confirmation Order shall have no effect on any party's rights, claims, including offsetting or recoupment claims, interests and defenses in any patent action or other litigation that has been or may be filed.

F. **Reserved Objections.** Licensees may defend an attack of their Licenses on any basis, including the protections afforded under this Article XIV, whether or not previously raised by a Licensee. Furthermore, nothing in the Plan or Confirmation Order shall constitute a waiver by any Licensee of such party's rights under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), or *Bellingham Ins. Agency, Inc. v. Arkin (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012), or subsequent precedents on this topic, to challenge the jurisdiction of the Bankruptcy Court to issue a final judgment.

JOINT PLAN OF REORGANIZATION
(DATED JANUARY 8, 2015)

G. **IP Owner Side Letters.** The IP Owners have provided written confirmation and consent, in substantially the forms of the side letters attached as **Exhibit "D"** hereto, which are incorporated herein, confirming such IP Owner's promise of non-disturbance of Licensees' rights under their existing Licenses.

## XV.  COMPROMISE OF CONTROVERY

Releases provided to the Released Parties under the Plan are being granted as compromises of controversy under which each party voting for the Plan and thereby receiving a release by and through his, her or its vote subordinates his, her, or its Claims in the Bankruptcy Case to the holders of Allowed Claims in Classes 6A through 6C.  TPL requests that the Court consider and approve such releases under Federal Rule of Bankruptcy Procedure 9019.

Dated:  January 8, 2015              **DORSEY & WHITNEY, LLP**


                                     By: /s/ *Robert A. Franklin*
                                         Robert A. Franklin
                                         Attorneys for Official
                                         Committee of Unsecured Creditors

Dated:  January 8, 2015              **Official Committee of Unsecured Creditors**


                                     By: /s/ *Marcie Brown*
                                         Marcie Brown
                                         Chairperson

Dated:  January 8, 2015              **BINDER & MALTER**


                                     By: /s/ *Robert G. Harris*
                                         Robert G. Harris
                                         Attorneys for Debtor Technology Properties
                                         Limited, LLC

Dated: January 8, 2015               **TECHNOLOGY PROPERTIES LIMITED, LLC**


                                     By: /s/Daniel E. Leckrone
                                         Daniel E. Leckrone
                                         Its: Responsible Corporate Individual